ELECTRONICALLY FILED - 2023 Mar 08 4:03 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** ) | **IN THE COURT OF COMMON PLEAS** |
| ) | |
| **COUNTY OF CHARLESTON** ) | **CIVIL ACTION 2023-CP-10-_____** |

| | |
|---|---|
| **NEKEYA JONES, As Special** ) | |
| **Administrator of the Estate of D'ANGELO** ) | |
| **D. BROWN,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **SUMMONS** |
| ) | **(Jury Trial Requested)** |
| **CHARLESTON COUNTY and** ) | |
| **CHARLESTON COUNTY SHERIFF'S** ) | |
| **OFFICE,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |

**TO THE DEFENDANTS ABOVE-NAMED:**

**YOU ARE HEREBY SUMMONED** and required to answer the Complaint in this action, of which a copy is herewith served upon you, and to serve a copy of your Answer to said Complaint in the subscribed to Scott C. Evans, EVANS MOORE, LLC, 121 SCREVEN STREET, GEORGETOWN, SOUTH CAROLINA, 29440 within THIRTY (30) DAYS after the service hereof, exclusive of the date of such service; and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

Respectfully Submitted,

s/ *James B. Moore III*
James B. Moore III, SC Bar #74268
Scott C. Evans, SC Bar #77684
Evans Moore, LLC
121 Screven Street
Georgetown, SC  29440
Telephone: (843) 995-5000

***Counsel for the Plaintiff***

March 8, 2023
Georgetown, SC 29440

ELECTRONICALLY FILED - 2023 Mar 08 4:03 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF CHARLESTON** | ) | **CIVIL ACTION 2023-CP-10-_____** |
| | ) | |
| **NEKEYA JONES, As Special** | ) | |
| **Administrator of the Estate of D'ANGELO** | ) | |
| **D. BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **COMPLAINT** |
| | ) | **(Jury Trial Requested)** |
| **CHARLESTON COUNTY and** | ) | |
| **CHARLESTON COUNTY SHERIFF'S** | ) | |
| **OFFICE,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

The Plaintiff, Nekeya Jones, as Special Administrator of the Estate of D'Angelo D. Brown, deceased, complaining of the Defendants, Charleston County and Charleston County Sheriff's Office, would respectfully show unto this Honorable Court:

## PARTIES, JURISDICTION, AND VENUE

1.    The Plaintiff, Nekeya Jones, is a citizen and resident of the County of Berkeley, State of South Carolina.  Additionally, Nekeya Jones is the duly appointed Special Administrator of the Estate of D'Angelo D. Brown, having been so appointed by the Berkeley County Probate Court on the 8th day of March, 2023, under case number 2023-ES-08-117.

2.    The Defendant, Charleston County, is a political subdivision of the State of South Carolina as defined in Section 15-78-10 et seq. of the Code of Laws of South Carolina (1985), as amended. At all times hereinafter mentioned in this complaint, this Defendant owned and/or operated the Charleston County Detention Center and it acted or carried on its business by and through its agents, servants, and/or employees.  Additionally, during the time period set out in the complaint,

ELECTRONICALLY FILED - 2023 Mar 08 4:03 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

these employees were operating within the scope of their officially assigned and/or compensated duties.

3.      The Defendant, Charleston County Sheriff's Office, is a governmental agency and/or political subdivision of the State of South Carolina, existing under the laws of the State of South Carolina (as defined by Section 15-78-10 of the Code of Laws of South Carolina (1985), as amended) and has facilities located in the County of Charleston, South Carolina.  At all times hereinafter mentioned in this complaint, the Defendant, Charleston County Sheriff's Office, owned and/or operated the Charleston County Detention Center and acted and carried on its business by and through its agents, servants, and/or employees, to include the officers working within the Charleston County Detention Center.  Additionally, during the time period set out in the complaint, these employees were operating within the scope of their officially assigned and/or compensated duties.

4.      This case is filed pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. 15-78-10.

5.      This Court has jurisdiction over this matter because the most substantial acts and omissions giving rise to liability occurred within Charleston County, South Carolina.

## FACTS

6.      The acts and occurrences which give rise to this action occurred while the Decedent was in the care and custody of the Defendants within the Charleston County Detention Center.

7.      The Plaintiff's decedent, D'Angelo Brown, a 28-year-old, was born and raised in Charleston, South Carolina.  Although physically healthy, Mr. Brown had a long and well documented history of mental illness, including diagnoses of schizophrenia and bipolar disorder, and had received associated treatment with antipsychotic medications (e.g., Risperdal, Haldol, and

ELECTRONICALLY FILED - 2023 Mar 08 4:03 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

Zyprexa), a mood-stabilizer (e.g., Depakote), an antidepressant (e.g., Mirtazapine), and medication to treat side-effects (e.g., Benztropine).

8.     The Plaintiff is informed and believes that prior to the events in question, Charleston County Detention Center had a history of failing to provide access to adequate medical services to pre-trial detainees housed within its facility. In fact, Mr. Brown has been identified as one of six pre-trial detainees who died at the Charleston County Detention Center in 2022 alone.

9.     Individuals who have a been charged with a crime but are presumed innocent, like Mr. Brown, possess a federal constitutional due process right to reasonable medical care and to be free of cruel, inhumane, and unusual punishment pursuant to the 14th Amendment of the United States Constitution.

10.     Pursuant to the Minimum Standards for Local Detention Facilities in South Carolina every detention center in South Carolina must have a written agreement with a licensed physician or medical authority to ensure that its detainees receive access to reasonable and adequate medical care.  During the time period of Mr. Brown's brief detainment, Defendants had contracted with Wellpath LLC to provide medical care to the approximately 1,000 detainees located within its facility.

11.     Upon information and belief, Wellpath LLC is the largest for-profit health care provider to jails and detention centers in the United States and is managed by a multibillion-dollar private equity firm based in Nashville, Tennessee. Upon information and belief, prior to the events in question Wellpath LLC had a well-known and well-documented history of providing allegedly unconstitutional and substandard medical services resulting in thousands of lawsuits throughout the country based on wrongful death, neglect, medical malpractice, and violations of constitutional rights.

ELECTRONICALLY FILED - 2023 Mar 08 4:03 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

12.     Upon information and belief, Wellpath LLC has a history of cutting costs at the expense of detainees' health and lives.  A CNN investigative report entitled "PLEASE HELP ME before it's too late," from 2019 reviews lawsuits filed between 2014 and 2018 which accuse Wellpath LLC of contributing to more than 70 deaths.  Furthermore, the Plaintiff is informed and believes Wellpath LLC has been the subject of a number of Department of Justice Civil Rights investigations.  This information was available to Defendants when it contracted with Wellpath LLC in 2022.

13.     The Plaintiff is informed and believes that it quickly became apparent to the Defendants that Wellpath LLC was not delivering adequate and reasonable medical care to the detainees housed at the Charleston County Detention Center, but Defendants neglected to take appropriate action to ensure its detainees were receiving the appropriate medical care as required by the Minimum Standards for Location Detention Centers in South Carolina and the United States Constitution.  Upon information and belief, Defendants should have terminated their agreement with Wellpath LLC well before Mr. Brown's untimely death.  In fact, Charleston County Sheriff Kristin Graziano has characterized the services provided by Wellpath LLC as "woefully inadequate."  The Plaintiff is informed and believes that despite this notice, Defendants have continued to contract with Wellpath LLC for delivery of medical services to the individuals currently housed within the Charleston County Detention Center.

14.     On August 10, 2022, Mr. Brown was arrested and booked at the Charleston County Detention Center.  At the time of his booking, Mr. Brown history of mental illness, which required extensive medication management for stabilization, was well-known to the Defendants.

15.     Upon information and belief, from the time period of Mr. Brown's arrest through his death on December 29, 2022, Mr. Brown was subject to inhumane treatment and deplorable living conditions by the Defendants which contributed to his death.

ELECTRONICALLY FILED - 2023 Mar 08 4:03 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

16.     On the fourth day of Mr. Brown's detainment, he specifically informed a correctional officer that he required his prescribed medication.  Upon information and belief, no one complied with his request and Mr. Brown was not prescribed, nor did he receive, any of his psychiatric medications.

17.     Additionally, it was reported that on August 14, 2022 Mr. Brown was "combative, paranoid, rambling, and nonsensical," and that he had been unable to eat "due to loss of balance and being unable to walk to reach his food."   Additionally, Mr. Brown submitted a "request to staff" wherein he informed staff that he was hungry and had not received a meal in 88 hours.  On August 25, 2022, Mr. Brown submitted another "request to staff" where he reported that he was "really scared for [his] life."

18.     Upon information and belief, Mr. Brown's physical and mental health continued to rapidly deteriorate while detained in an isolated cell within the Behavioral Management Unit at the Charleston County Detention Center.  On September 2, 2022 it was reported that he was refusing meals, was naked, and appeared agitated.  By September 6, 2022, a correctional officer noted that he was "smearing feces and exhibiting off and unusual behavior." It was further reported that his cell was "filled with water, urine, and feces."  On September 7, 2022, Mr. Brown was reported to be "yelling, uncooperative, paranoid" and was observed banging on the wall, yelling, and rambling "unintelligible words and phrases."  On September 8, 2022, correctional staff reported that Mr. Brown was "still in the same condition naked, yelling, banging on the door, cell filled with water/feces and urine."

19.     On September 9, 2022, correctional staff reported that Mr. Brown appeared to have "lost a lot weight" and "needs to be seen by mental health/medical badly."

20.     On September 10, 2022, it was noted that Mr. Brown's "hygiene and appearance have been declining tremendously," that he was refusing to eat, and that he "stands in his cell naked and plays with water."

21.      On September 11, 2022, Mr. Brown was observed to be "disorganized and disoriented" and lying in urine.  Additionally, he was continuing to refuse to eat and was had not been provided any access to his prescribed antipsychotic medications.

22.     Later that day on September 11, 2022, Mr. Brown was transported to MUSC via EMS due to "altered mental status."  Records confirmed that he was observed "laying in his urine, not eating or drinking, evidencing severe agitation, and picking paint off of the walls."  His skin was noted to be "covered in paint chips and dried feces."  While at MUSC, his agitation was controlled with Zyprexa and Klonopin (benzodiazepine sedative), and he was transitioned to Depakote in anticipation of discharge back to the Charleston County Detention Center.  He was also noted to evidence acute encephalopathy (brain disease that alters functions) and was treated with antibiotics.  Mr. Brown remained hospitalized at MUSC until September 29, 2022.  At the time of discharge, it was reported that his "agitation significantly improved," but that he still required "occasional intramuscular injections" as needed.  He was discharged with intramuscular injections, Depakote, remaining doses of Klonpin, and Trazadone.

23.     Although Mr. Brown was hospitalized from September 11 through September 29, 2022, correctional officers erroneously reported in his records that Mr. Brown received his "meal tray and juice," when in fact was not present at the detention center at all.

24.     Upon information and belief, Mr. Brown never received his prescribed medications once he was discharged back to the Charleston County Detention Center.  Without his medications, Mr. Brown's psychosis became unmanageable, and he again deteriorated.

ELECTRONICALLY FILED - 2023 Mar 08 4:03 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

ELECTRONICALLY FILED - 2023 Mar 08 4:03 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

25.     On September 29, 2022, Defendants placed Mr. Brown in restraint chair for roughly 130 minutes for being uncooperative.  On October 3, 2022, it was reported that he had urine and feces in his cell.  On October 30, October 31, and November 5, it was reported that his cell window was covered in feces. On November 6, 2022, Mr. Brown was extracted from his cell for cleaning as his cell had been "heavily soiled with feces."  On November 8, 2022, he was observed "naked, growling, disorganized with flight of ideas."  His cell was again described as being covered in urine and feces.  He was unable to provide answers to basic questions.  It was further noted that he was not sleeping, not eating, and had been smearing feces for several months.

26.     On November 11, 2022, it was reported that Mr. Brown had been observed "eating feces and he had it all in teeth." On November 12, 2022, he was reported to be yelling and "jumping around the cell all night shift."

27.     On December 11, 2022, it was reported that his cell was "covered with feces and urine." Additionally, correctional staff purportedly made a request that Mr. Brown be transferred to the "bubble" within the medical unit so he could be "housed in medical for observation."  Upon information and belief, this did not occur.

28.     On December 14, 2022, Mr. Brown underwent a "competency evaluation" by Sheresa Christopher, Ph.D. and Alicia Gibson, Psy.D. on behalf of the Department of Mental Health.  The competency evaluation was performed "virtually" due to Mr. Brown's condition.  During this virtual evaluation, Mr. Brown was reported to be rocking back and forth, opening his mouth and pulling on his ears, and striking the cell wall at times.  It was noted that Mr. Brown was covered in feces as were the walls of his cell.  The evaluation ended as the symptoms experienced by Mr. Brown "could not be fully assessed given his presentation."  It was ultimately determined that Mr. Brown lacked the mental capacity to stand trial due to his psychosis.  However, it was also determined that his symptoms were consistent with a diagnosis of schizophrenia yet "treatable

ELECTRONICALLY FILED - 2023 Mar 08 4:03 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

with psychiatric medication."  Although he was deemed incompetent, it was the opinion of the evaluators that Mr. Brown would "likely to be restored to competency with psychiatric medication in the foreseeable future."

29.     Shortly after the competency order was completed Mr. Brown was ordered to undergo treatment through the South Carolina Department of Mental Health for up to 180 days for observation and treatment to restore his competency to stand trial.   This order was executed on December 15, 2022.  Unfortunately, Mr. Brown never received this treatment prior to his death.

30.     On December 19, 2022, it was reported that Mr. Brown had "smeared feces and urine about his cell walls, doors, floor, ceiling, and body."  It was further reported that he continued to refuse medications.

31.     On December 21, 2022, at approximately 6:00 am, Sgt. Singleton and several nurses entered Mr. Brown's cell.   Mr. Brown was alive, but unresponsive, and was thereafter transferred to the emergency room at MUSC for life-saving medical intervention.

32.     Upon information and belief, Mr. Brown never regained consciousness and was pronounced dead at MUSC on December 29, 2022.

33.     The Defendants and its employees working during Mr. Brown's detainment had actual and constructive knowledge of his deteriorating condition and acted in blatant disregard of his health and life by failing to intervene on his behalf and ensuring he had access to reasonable medical attention. Defendants acted with conscious and deliberate indifference to the basic and serious medical needs of Mr. Brown, and as a result, he suffered numerous personal injuries, conscious pain and suffering, and eventually died.

ELECTRONICALLY FILED - 2023 Mar 08 4:03 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**FOR A FIRST CAUSE OF ACTION
AGAINST THE DEFENDANTS**
**(Negligence/Gross Negligence - Survival)**

34.     The Plaintiff reiterates each and every relevant allegation stated above as if repeated verbatim herein.

35.     The Defendants are liable to the Plaintiff as a result of its gross negligence, recklessness, willfulness, and wantonness in one or more of the following particulars:

(a)     In failing to secure proper care for the Decedent, when the Defendants and/or their personnel, agents, and/or employees knew or should have known that the Decedent was in open and obvious distress;

(b)     In failing to provide reasonable, necessary, and appropriate supervision, care, and access to medical treatment to the Decedent;

(c)     In disregarding the Decedent's complaints of distress;

(d)     In failing to monitor the Decedent while detained, and to take the proper steps to provide assistance to him when they knew or should have known that he was unable to care for himself;

(e)     In failing to take the proper steps to provide assistance to him when they knew or should have known that Wellpath LLC was not providing appropriate medical attention to him;

(f)     In failing to ensure that the Decedent had access to medical care;

(g)     In failing to seek emergency medical attention for the Decedent, when they knew he was suffering from an open, obvious, and serious medical need;

(h)     In failing to timely refer or transport the Decedent to a specialist and/or a hospital;

(i)     In failing to monitor the Decedent;

ELECTRONICALLY FILED - 2023 Mar 08 4:03 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

(j)    In failing to follow the mandates of the Minimum Standards for Local Detention Centers in South Carolina;

(k)    In contracting with Wellpath LLC when the Defendants knew or should have known that it was not providing reasonable and adequate medical services to its detainees, including the Decedent;

(l)    In failing to terminate its contract with Wellpath LLC when the Defendants knew or should have known that it was not providing reasonable and adequate medical services to its detainees, including the Decedent;

(m)    In failing to properly train and/or supervise its employees, agents, and/or staff, so as to ensure that detainees (including the Decedent) are provided with proper care and attention while detained;

(n)    In failing to have the proper policies and/or procedures in place regarding the administration of proper supervision;

(o)    In failing to take the appropriate steps to provide care and treatment to the Decedent when they had actual and constructive notice of the Decedent's open and obvious distress;

(p)    In failing to have the proper policies and procedures in place regarding recognition of medical needs of new detainees;

(q)    In failing to draft and/or institute proper policy and procedure necessary to ensure that detainees are provided basic and/or appropriate medical care and protection from abuse;

(r)    In failing to comply with national, state, and local standards and guidelines with regard to the provision of medical care in detention facilities;

ELECTRONICALLY FILED - 2023 Mar 08 4:03 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

(s)     In failing to train their employees, agents, and/or staff to recognize the medical needs of detainees;

(t)     In failing to properly treat and/or care for the Decedent, D'Angelo Brown;

(u)     In failing to provide, order, seek, and/or maintain emergency medical care;

(v)     In failing to promptly transfer the Decedent to a hospital when they knew or should have known that his physical and mental health was deteriorating;

(w)     In abandoning the Decedent when he was in desperate need of medical care; and

(x)     In failing to have proper communication by and between the detention center officers and the medical personnel contracted to provide medical assistance to the detainees.

36.     The above acts of gross negligence and gross breaches of the proper standard of care (by and through the employees, agents, and/or servants of these Defendants) have caused the Decedent to suffer conscious pain and suffering, leading to his death.  The Plaintiff has suffered the loss of the life of the Decedent, loss of his love and support, mental anguish, emotional distress, incurred funeral expenses, and undue grief, and Mr. Brown's heirs will likely suffer from the effects of the Defendants' actions now and in the future.  As such, the Plaintiff is entitled to ACTUAL AND CONSEQUENTIAL from the Defendants.

## FOR A SECOND CAUSE OF ACTION AGAINST THE DEFENDANTS
### (Wrongful Death)

37.     The Plaintiff reiterates each and every relevant allegation stated above as if repeated verbatim herein.

38.     This action is brought for the wrongful death of D'Angelo Brown, pursuant to the provisions of § 15-51-10 *et seq.*, Code of Laws of South Carolina (1976, as amended), and is brought for any statutory heirs of D'Angelo Brown, who died on the 29th day of December, 2022.

ELECTRONICALLY FILED - 2023 Mar 08 4:03 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

39.    The death of the Decedent was caused and occasioned by the grossly negligent acts on behalf of the Defendants as set forth above.

40.    Prior to his death, D'Angelo Brown was twenty-eight (28) years of age.  By reason of his untimely death, his heirs have been deprived of all the benefits of his society and companionship and have been caused great mental shock and suffering by reason of his death.  They have and will forever be caused grief and sorrow by the loss of Mr. Brown's love, society, and companionship. They have been deprived of his future experiences and judgments.  They have incurred expenses for his funeral and final expenses and, as a result of the foregoing, they have been damaged as follows:

    (a)    mental shock and suffering;
    (b)    wounded feelings;
    (c)    grief and sorrow;
    (d)    loss of his support;
    (e)    loss of companionship; and
    (f)    deprivation of the use and comfort of the Decedent's society and loss of his experience, knowledge, and judgment.

41.    As a further result, and because of the Defendants' reckless, willful, and grossly negligent conduct, which ultimately caused the wrongful death of D'Angelo Brown, this Plaintiff is entitled to ACTUAL and CONSEQUENTIAL damages in an amount to be determined by a jury in accordance with the law and evidence in this case.

## DEMAND FOR JURY TRIAL

**WHEREFORE**, the Plaintiff hereby requests a trial by jury on all of the issues that have been or may hereafter be raised in any of the pleadings.  Plaintiff further seeks judgment against Defendants for:

a.    actual and consequential damages as to each occurrence for each cause of action;

b.    the costs and disbursements of this action;

c.    such other and further relief as this Court deems just and proper.

Respectfully Submitted,

s/ *James B. Moore III*
James B. Moore III, SC Bar #74268
Scott C. Evans, SC Bar #77684
Evans Moore, LLC
121 Screven Street
Georgetown, SC  29440
Telephone: (843) 995-5000

**Counsel for the Plaintiff**

March 8, 2023
Georgetown, SC 29440

ELECTRONICALLY FILED - 2023 Mar 08 4:03 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | |
| | ) | |
| Nekeya Jones, as Special Administrator of the Estate of D'Angelo D. Brown, | ) | C/A No. 2023-CP-10-01166 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | **ACCEPTANCE OF SERVICE** |
| Versus | ) | |
| | ) | |
| Charleston County and Charleston County Sheriff's Office, | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

On behalf of the Defendants Charleston County and Charleston County Sheriff's Office, I hereby certify acknowledgement receipt of and accept service of the above-captioned Summons and Complaint, Plaintiff's First Interrogatories and Request for Production to Defendants this **29**th day of **March, 2023**.

Elloree A. Ganes (SC #70509)
elloree.ganes@hoodlaw.com
Evan M. Sobocinski (SC #104259)
evan.sobocinski@hoodlaw.com

HOOD LAW FIRM, LLC
172 Meeting Street
Post Office Box 1508
Charleston, SC  29402
Phone: (843) 577-4435
Facsimile: (843) 722-1630
Email: Info@hoodlaw.com

*Attorneys for the Defendants*
*Charleston County and Charleston County*
*Sheriff's Office*

ELECTRONICALLY FILED - 2023 Mar 29 4:25 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

ELECTRONICALLY FILED - 2023 Mar 29 4:28 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | |
| | ) | |
| Nekeya Jones, as Special Administrator of the Estate of D'Angelo D. Brown, | ) | C/A No. 2023-CP-10-01166 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | **ACCEPTANCE OF SERVICE** |
| Versus | ) | |
| | ) | |
| Charleston County and Charleston County Sheriff's Office, | ) | |
| | ) | |
| | ) | |
| *Defendants.* | ) | |

On behalf of the Defendants Charleston County and Charleston County Sheriff's Office, I hereby certify acknowledgement receipt of and accept service of the above-captioned Summons and Complaint, Plaintiff's First Interrogatories and Request for Production to Defendants this **29**th day of **March, 2023**.

Elloree A. Ganes (SC #70509)
elloree.ganes@hoodlaw.com
Evan M. Sobocinski (SC #104259)
evan.sobocinski@hoodlaw.com

HOOD LAW FIRM, LLC
172 Meeting Street
Post Office Box 1508
Charleston, SC 29402
Phone: (843) 577-4435
Facsimile: (843) 722-1630
Email: Info@hoodlaw.com

*Attorneys for the Defendants*
*Charleston County and Charleston County*
*Sheriff's Office*

ELECTRONICALLY FILED - 2023 May 03 2:22 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| COUNTY OF CHARLESTON | ) | |
| | ) | |
| Nekeya Jones, as Special Administrator of the Estate of D'Angelo D. Brown, | ) | C/A No. 2023-CP-10-01166 |
| *Plaintiff,* | ) | |
| | ) | **DEFENDANTS' ANSWER TO** |
| Versus | ) | **PLAINTIFF'S COMPLAINT** |
| | ) | (***Jury Trial Requested***) |
| Charleston County and Charleston County Sheriff's Office, | ) | |
| | ) | |
| *Defendants.* | ) | |

The Defendants, Charleston County and Charleston County Sheriff's Office (hereinafter "Defendants"), hereby answer the Plaintiff's Complaint, subject to any and all affirmative defenses, qualifications, motions and any other pleadings as follows:

1.     The Defendants deny each and every allegation contained in Plaintiff's Complaint which is not specifically admitted herein.

## AS TO PARTIES, JURISDICTION AND VENUE

2.     The Defendants lack sufficient knowledge or information at this time to form a belief as to the truth of the allegations contained in Paragraph 1 of Plaintiff's Complaint.

3.     The allegations contained in Paragraphs 2, 3, 4 and 5 of Plaintiff's Complaint state conclusions of law to which no response is required.

## AS TO FACTS

4.     In response to the allegations contained in Paragraphs 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, and 33 of the Plaintiff's Complaint, the Defendants admit, upon information and belief, only so much as alleges that D'Angelo Brown was housed at the Sheriff Al Cannon Detention Center beginning on or about August 10, 2022, that he passed away December 29, 2022 and that Wellpath LLC was contracted

for providing medical care to residents of Sheriff Al Cannon Detention Center at the time. Further responding, the Defendants refer to all records, documentation and evidence related to the D' Angelo Brown's detainment for a more detailed and complete description of his detainment and health history. All remaining and inconsistent allegations contained in Paragraphs 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32 and 33 of the Plaintiff's Complaint are denied as they are written.

### ANSWERING THE FIRST CAUSE OF ACTION
**(Negligence/ Gross - Survival)**

5.    In response to the allegations contained in Paragraph 34 of the Plaintiff's Complaint, the Defendants repeat and re-allege their responses contained in Paragraphs 1-4 above as if set forth fully herein.

6.    The Defendants deny the allegations contained in Paragraphs 35, (including subparts a, b, c, d, e, f, g, h, i, j, k, l, m, n, o, p, q, r, s, t, u, v, w, and x) and 36 of the Plaintiff's Complaint.

### ANSWERING THE SECOND CAUSE OF ACTION
**(Wrongful Death)**

7.    In response to the allegations contained in Paragraph 37 of the Plaintiff's Complaint, the Defendants repeat and re-allege their responses contained in Paragraphs 1-6 above as if set forth fully herein.

8.    The allegations contained in Paragraph 38 of the Plaintiff's Complaint state conclusions of law to which no response is required.

9.    The Defendants deny the allegations contained in Paragraphs 39, 40 (including subparts a, b, c, d, e and f) and 41 of the Plaintiff's Complaint.

ELECTRONICALLY FILED - 2023 May 03 2:22 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

ELECTRONICALLY FILED - 2023 May 03 2:22 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

## ANSWERING THE DEMAND FOR JURY TRIAL

10.      The Defendants deny the Plaintiff's WHEREFORE PARAGRAPH (including subparts a, b and c), being the remaining allegations, of the Plaintiff's Complaint.

### FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE, THE DEFENDANTS ALLEGE:
#### (No Proximate Cause)

11.      That, even if the Defendants were negligent, as alleged in the Complaint, which is specifically denied, the negligence of the Defendants was not the direct or proximate cause of any injury or damages alleged by Plaintiff and therefore the Defendants are not liable for any damages allegedly sustained by the Plaintiff.

### FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE, THE DEFENDANTS ALLEGE:
#### (Governmental Immunity/South Carolina Tort Claims Act)

12.      This action is governed by the terms, provisions and affirmative defenses set forth in the South Carolina Tort Claims Act which *inter alia* provide a limit on the amount of actual damages that can be recovered, a prohibition on the recovery of punitive damages and the Defendants plead these limitations as a cap on actual damages and a bar to any punitive damages.  S.C. Code Ann. §15-78-120.

### FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE, THE DEFENDANTS ALLEGE:
#### (Eleventh Amendment Immunity)

13.      Eleventh Amendment Immunity in accordance with the Constitution of the United States of America and the State of South Carolina bars Plaintiff's claims in totality against the Defendants.

ELECTRONICALLY FILED - 2023 May 03 2:22 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
THE DEFENDANTS ALLEGE:
(Comparative Negligence)**

14.     The Defendants allege that any injuries received by Plaintiff, as alleged in the Complaint, if any, were due to and caused by and were the direct and proximate result of acts of negligence on the part of the Plaintiff or a third party, over whom the Defendants had no control, so as to bar the claims of Plaintiff against the Defendants.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
THE DEFENDANTS ALLEGE:
(Lack of Foreseeability)**

15.     That upon information and belief, even if the damages alleged in Plaintiff's Complaint, if any, were proximately caused by the acts and/or omissions of the Defendants, which is otherwise denied except for the purpose of these affirmative defenses, the Defendants did not and could not have foreseen that Plaintiff's damages, if any, could have proximately resulted from the Defendants' alleged acts or omissions.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
THE DEFENDANTS ALLEGE:
(Reasonableness and Good Faith)**

16.     The Defendants allege that they acted reasonably and in good faith at all times material herein, based on all relevant facts and circumstances known by them at the time they so acted.  Accordingly, Plaintiff is not entitled to the recovery of any damages whatsoever.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
THE DEFENDANTS ALLEGE:
(Unforeseeable Intervening or Superseding Events)**

17.     The damages complained of were solely the result of unforeseeable intervening or superseding events over which the Defendants had no control.

ELECTRONICALLY FILED - 2023 May 03 2:22 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE**
**THE DEFENDANTS ALLEGE:**
**(No Breach)**

18.     The Defendants did not breach any purported duty owed to Plaintiff so as to bar the

Plaintiff from recovery against the Defendants.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,**
**THE DEFENDANTS ALLEGE:**
**(Assumption of the Risk)**

19.     The Defendants allege that the perils and dangers existing at the time of Plaintiff's

actions, if any, were open, obvious, and known to the Plaintiff, who nevertheless conducted herself

in such a manner so as to voluntarily assume all risks pertaining thereto.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,**
**THE DEFENDANTS ALLEGE:**
**(Pre-Existing Medical Condition)**

20.     Whatever injuries the Plaintiff sustained, which are specifically denied herein, were

the result of pre-existing medical conditions of the decedent, whether disclosed or undisclosed,

and were not related to the incidents complained of in the Complaint.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,**
**THE DEFENDANTS ALLEGE:**
**(Predisposition of Medical Condition)**

21.     Whatever injuries the Plaintiff sustained, which are specifically denied herein, were

the result of the decedent's predisposition to medical conditions, whether disclosed or undisclosed,

and were not related to the incidents complained of in the Complaint.

ELECTRONICALLY FILED - 2023 May 03 2:22 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

### FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE, THIS DEFENDANT ALLEGES:
#### (Natural Disease Process)

22.     That the Defendants would allege, upon information and belief, that any injuries or damages sustained by Plaintiff were due to, caused and occasioned by the natural disease process over which the Defendants had no control and as such, the Defendants plead such a natural disease process as a complete bar to this action.

### FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE, THE DEFENDANTS ALLEGE:
#### (Punitive Damages Unconstitutional)

23.     That any award or assessment of punitive damages as prayed for by the Plaintiff would violate this Defendant's Constitutional rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and comparable provisions of the South Carolina Constitution.

### FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE, THE DEFENDANTS ALLEGE:
#### (Reservation and Non-Waiver)

24.     The Defendants reserve any additional and further defenses as may be revealed by additional information during the course of discovery and investigation, as is consistent with the South Carolina Rules of Civil Procedure.

WHEREFORE, having fully answered the Plaintiff's Complaint, and having asserted these affirmative defenses, the Defendants, Charleston County and Charleston County Sheriff's Office, pray that the Plaintiff's Complaint be dismissed with prejudice and that they be awarded the costs and reasonable fees associated with this matter, and such other relief as the Court may deem just and proper.

ELECTRONICALLY FILED - 2023 May 03 2:22 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

HOOD LAW FIRM, LLC
172 Meeting Street
Post Office Box 1508
Charleston, SC  29402
Phone: (843) 577-4435
Facsimile: (843) 722-1630


**s/ Elloree A. Ganes**
Elloree A. Ganes (SC #70509)
elloree.ganes@hoodlaw.com
Evan M. Sobocinski (SC #104259)
evan.sobocinski@hoodlaw.com

*Attorneys for the Defendants*
*Charleston County and Charleston County*
*Sheriff's Office*

<u>**May 3, 2023**</u>
Charleston, South Carolina

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | CIVIL ACTION 2023-CP-10-01166 |
| | ) | |
| NEKEYA JONES, as Special Administrator of the Estate of D'ANGELO D. BROWN, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **AMENDED SUMMONS** |
| | ) | **(Jury Trial Requested)** |
| CHARLESTON COUNTY, CHARLESTON COUNTY SHERIFF'S OFFICE, and WELLPATH LLC, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**TO THE DEFENDANTS ABOVE-NAMED:**

**YOU ARE HEREBY SUMMONED** and required to answer the Amended Complaint in this action, of which a copy is herewith served upon you, and to serve a copy of your Answer to said Amended Complaint in the subscribed to James B. Moore III, EVANS MOORE, LLC, 121 SCREVEN STREET, GEORGETOWN, SOUTH CAROLINA, 29440 within THIRTY (30) DAYS after the service hereof, exclusive of the date of such service; and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

Respectfully Submitted,

s/ *James B. Moore III*
James B. Moore III, SC Bar #74268
Scott C. Evans, SC Bar #77684
Evans Moore, LLC
121 Screven Street
Georgetown, SC  29440
Telephone: (843) 995-5000

*Counsel for the Plaintiff*

May 24, 2023
Georgetown, SC 29440

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | CIVIL ACTION 2023-CP-10-01166 |
| | ) | |
| NEKEYA JONES, as Special | ) | |
| Administrator of the Estate of D'ANGELO | ) | |
| D. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **AMENDED COMPLAINT** |
| | ) | **(Jury Trial Requested)** |
| CHARLESTON COUNTY, | ) | |
| CHARLESTON COUNTY SHERIFF'S | ) | |
| OFFICE, and WELLPATH LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The Plaintiff, Nekeya Jones, as Special Administrator of the Estate of D'Angelo D. Brown, deceased, complaining of the Defendants, Charleston County, Charleston County Sheriff's Office, and Wellpath LLC would respectfully show unto this Honorable Court:

## PARTIES, JURISDICTION, AND VENUE

1.    The Plaintiff, Nekeya Jones, is a citizen and resident of the County of Berkeley, State of South Carolina.  Additionally, Nekeya Jones is the duly appointed Special Administrator of the Estate of D'Angelo D. Brown, having been so appointed by the Berkeley County Probate Court on the 8th day of March, 2023, under case number 2023-ES-08-117.

2.    The Defendant, Charleston County, is a political subdivision of the State of South Carolina as defined in Section 15-78-10 et seq. of the Code of Laws of South Carolina (1985), as amended.  At all times hereinafter mentioned in this Complaint, this Defendant owned and/or operated the Charleston County Detention Center and it acted or carried on its business by and through its agents, servants, and/or employees.  Additionally, during the time period set out in the Complaint, these employees were operating within the scope of their officially assigned

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

and/or compensated duties.

3.     The Defendant, Charleston County Sheriff's Office, is a governmental agency and/or political subdivision of the State of South Carolina, existing under the laws of the State of South Carolina (as defined by Section 15-78-10 of the <u>Code of Laws of South Carolina</u> (1985), as amended) and has facilities located in the County of Charleston, South Carolina.  At all times hereinafter mentioned in this Complaint, the Defendant, Charleston County Sheriff's Office, owned and/or operated the Charleston County Detention Center and acted and carried on its business by and through its agents, servants, and/or employees, to include the officers working within the Charleston County Detention Center.  Additionally, during the time period set out in the Complaint, these employees were operating within the scope of their officially assigned and/or compensated duties.

4.     The Defendant, Wellpath LLC, is a for-profit corporation existing under the laws of the State of Delaware with employees and agents stationed throughout South Carolina, including Charleston County, South Carolina, providing healthcare services within county detention facilities. At all times hereinafter mentioned in this Complaint, Defendant Wellpath LLC acted and carried on its business by and through its agents, servants, and/or employees at its various locations including the Charleston County Detention Center. Additionally, these agents, servants, and/or employees were operating within the scope of their officially assigned and/or compensation duties.

5.     The claims against Charleston County and Charleston County Sheriff's Office are filed pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. 15-78-10.

6.     With respect to the negligence and medical malpractice claims asserted against Wellpath, LLC, Plaintiff has complied with the pre-lawsuit procedural requirements provided for by the South Carolina Medical Malpractice Act, including those provided for in sections 15-79-120,

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

15-70-100, and 15-36-100 of the <u>South Carolina Code of Laws</u>.  Additionally, in order to comply with all statutory requirements, Plaintiff is attaching and incorporating by reference the affidavit of medical expert Edward C. O'Bryan III, MD, identified as <u>Exhibit 1</u>.

7.     This Court has jurisdiction over this matter because the most substantial acts and omissions giving rise to liability occurred within Charleston County, South Carolina.

**<u>FACTS</u>**

8.     The acts and occurrences which give rise to this action occurred while the Decedent was in the care and custody of the Defendants within the Charleston County Detention Center.

9.     The Plaintiff's decedent, D'Angelo Brown, a 28-year-old, was born and raised in Charleston, South Carolina.  Although physically healthy, Mr. Brown had a long and well documented history of mental illness, including diagnoses of schizophrenia and bipolar disorder, and had received associated treatment with antipsychotic medications (e.g., Risperdal, Haldol, and Zyprexa), a mood-stabilizer (e.g., Depakote), an antidepressant (e.g., Mirtazapine), and medication to treat side-effects (e.g., Benztropine).

10.    The Plaintiff is informed and believes that prior to the events in question, Charleston County Detention Center had a history of failing to provide access to adequate medical services to pre-trial detainees housed within its facility. In fact, Mr. Brown has been identified as one of six pre-trial detainees who died at the Charleston County Detention Center in 2022 alone.

11.    Individuals who have a been charged with a crime but are presumed innocent, like Mr. Brown, possess a federal constitutional due process right to reasonable medical care and to be free of cruel, inhumane, and unusual punishment pursuant to the 14th Amendment of the United States Constitution.

12.    Pursuant to the Minimum Standards for Local Detention Facilities in South Carolina every detention center in South Carolina must have a written agreement with a licensed

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

physician or medical authority to ensure that its detainees receive access to reasonable and adequate medical care. During the time period of Mr. Brown's brief detainment, Defendants had contracted with Defendant Wellpath LLC to provide medical care to the approximately 1,000 detainees located within its facility.

13.     Upon information and belief, Defendant Wellpath LLC is the largest for-profit health care provider to jails and detention centers in the United States and is managed by a multibillion-dollar private equity firm based in Nashville, Tennessee. Upon information and belief, prior to the events in question Wellpath LLC had a well-known and well-documented history of providing allegedly unconstitutional and substandard medical services resulting in thousands of lawsuits throughout the country based on wrongful death, neglect, medical malpractice, and violations of constitutional rights.

14.     Upon information and belief, Wellpath LLC has a history of cutting costs at the expense of detainees' health and lives. A CNN investigative report entitled "PLEASE HELP ME before it's too late," from 2019 reviews lawsuits filed between 2014 and 2018 which accuse Wellpath LLC of contributing to more than 70 deaths. Furthermore, the Plaintiff is informed and believes Wellpath LLC has been the subject of a number of Department of Justice Civil Rights investigations. This information was available to Defendants when it contracted with Wellpath LLC in 2022.

15.     The Plaintiff is informed and believes that it quickly became apparent to the Defendants Charleston County and Charleston County Sheriff's Office that Wellpath LLC was not delivering adequate and reasonable medical care to the detainees housed at the Charleston County Detention Center, but Defendants neglected to take appropriate action to ensure its detainees were receiving the appropriate medical care as required by the Minimum Standards for Location Detention Centers in South Carolina and the United States Constitution. Upon information and

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

belief, Defendants should have terminated their agreement with Wellpath LLC well before Mr. Brown's untimely death. In fact, Charleston County Sheriff Kristin Graziano has characterized the services provided by Wellpath LLC as "woefully inadequate."[1] The Plaintiff is informed and believes that despite this notice, Defendants continued to contract with Wellpath LLC for delivery of medical services to the individuals currently housed within the Charleston County Detention Center.

16.     On August 10, 2022, Mr. Brown was arrested and booked at the Charleston County Detention Center. At the time of his booking, Mr. Brown history of mental illness, which required extensive medication management for stabilization, was well-known to the Defendants.

17.     Upon information and belief, from the time period of Mr. Brown's arrest through his death on December 29, 2022, Mr. Brown was subject to inhumane treatment and deplorable living conditions by the Defendants which contributed to his death.

18.     On the fourth day of Mr. Brown's detainment, he specifically informed a correctional officer that he required his prescribed medication. Upon information and belief, no one complied with his request and Mr. Brown was not prescribed, nor did he receive, any of his psychiatric medications.

19.     Additionally, it was reported that on August 14, 2022 Mr. Brown was "combative, paranoid, rambling, and nonsensical," and that he had been unable to eat "due to loss of balance and being unable to walk to reach his food." Additionally, Mr. Brown submitted a "request to staff" wherein he informed staff that he was hungry and had not received a meal in 88 hours. On August 25, 2022, Mr. Brown submitted another "request to staff" where he reported that he was "really scared for [his] life."

---

[1] Ema Rose Schumer, *Charleston County jail documented schizophrenic man's decline. Was his death preventable?*, The Post and Courier (Feb. 18, 2023), https://www.postandcourier.com/news/charleston-county-jail-documented-schizophrenic-man-s-decline-was-his-death-preventable/article_feec0f46-926a-11ed-b8c3-4bb467abdfe7.html

20.     Upon information and belief, Mr. Brown's physical and mental health continued to rapidly deteriorate while detained in an isolated cell within the Behavioral Management Unit at the Charleston County Detention Center.  On September 2, 2022, it was reported that he was refusing meals, was naked, and appeared agitated.  By September 6, 2022, a correctional officer noted that he was "smearing feces and exhibiting off and unusual behavior." It was further reported that his cell was "filled with water, urine, and feces."  On September 7, 2022, Mr. Brown was reported to be "yelling, uncooperative, paranoid" and was observed banging on the wall, yelling, and rambling "unintelligible words and phrases."  On September 8, 2022, correctional staff reported that Mr. Brown was "still in the same condition naked, yelling, banging on the door, cell filled with water/feces and urine."

21.     On September 9, 2022, correctional staff reported that Mr. Brown appeared to have "lost a lot weight" and "needs to be seen by mental health/medical badly."

22.     On September 10, 2022, it was noted that Mr. Brown's "hygiene and appearance have been declining tremendously," that he was refusing to eat, and that he "stands in his cell naked and plays with water."

23.      On September 11, 2022, Mr. Brown was observed to be "disorganized and disoriented" and lying in urine.  Additionally, he was continuing to refuse to eat and was had not been provided any access to his prescribed antipsychotic medications.

24.     Later that day on September 11, 2022, Mr. Brown was transported to MUSC via EMS due to "altered mental status."  Records confirmed that he was observed "laying in his urine, not eating or drinking, evidencing severe agitation, and picking paint off of the walls."  His skin was noted to be "covered in paint chips and dried feces."  While at MUSC, his agitation was controlled with Zyprexa and Klonopin (benzodiazepine sedative), and he was transitioned to Depakote in anticipation of discharge back to the Charleston County Detention Center.  He was

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

also noted to evidence acute encephalopathy (brain disease that alters functions) and was treated with antibiotics. Mr. Brown remained hospitalized at MUSC until September 29, 2022. At the time of discharge, it was reported that his "agitation significantly improved," but that he still required "occasional intramuscular injections" as needed. He was discharged with intramuscular injections, Depakote, remaining doses of Klonpin, and Trazadone.

25.     Although Mr. Brown was hospitalized from September 11 through September 29, 2022, correctional officers erroneously reported in his records that Mr. Brown received his "meal tray and juice," when in fact was not present at the detention center at all.

26.     Additionally, during the time of Mr. Brown's hospitalization at MUSC, nursing staff employed by and through Defendant Wellpath LLC documented that Mr. Brown was "refusing" medical care to include wound care and vital assessments despite the fact that he was not present at the detention center, constituting a falsification of medical records by Defendant Wellpath LLC.

27.     Upon information and belief, Mr. Brown never received his prescribed medications once he was discharged back to the Charleston County Detention Center. Without his medications, Mr. Brown's psychosis became unmanageable, and he again deteriorated.

28.     On September 29, 2022, Defendants placed Mr. Brown in restraint chair for roughly 130 minutes for being uncooperative. On October 3, 2022, it was reported that he had urine and feces in his cell. On October 30, October 31, and November 5, it was reported that his cell window was covered in feces. On November 6, 2022, Mr. Brown was extracted from his cell for cleaning as his cell had been "heavily soiled with feces." On November 8, 2022, he was observed "naked, growling, disorganized with flight of ideas." His cell was again described as being covered in urine and feces. He was unable to provide answers to basic questions. It was further noted that he was not sleeping, not eating, and had been smearing feces for several

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

months.

29.     On November 11, 2022, it was reported that Mr. Brown had been observed "eating feces and he had it all in teeth." On November 12, 2022, he was reported to be yelling and "jumping around the cell all night shift."

30.     On December 11, 2022, it was reported that his cell was "covered with feces and urine." Additionally, correctional staff purportedly made a request that Mr. Brown be transferred to the "bubble" within the medical unit so he could be "housed in medical for observation." Upon information and belief, this did not occur.

31.     On December 14, 2022, Mr. Brown underwent a "competency evaluation" by Sheresa Christopher, Ph.D. and Alicia Gibson, Psy.D. on behalf of the Department of Mental Health. The competency evaluation was performed "virtually" due to Mr. Brown's condition. During this virtual evaluation, Mr. Brown was reported to be rocking back and forth, opening his mouth and pulling on his ears, and striking the cell wall at times. It was noted that Mr. Brown was covered in feces as were the walls of his cell. The evaluation ended as the symptoms experienced by Mr. Brown "could not be fully assessed given his presentation." It was ultimately determined that Mr. Brown lacked the mental capacity to stand trial due to his psychosis. However, it was also determined that his symptoms were consistent with a diagnosis of schizophrenia yet "treatable with psychiatric medication." Although he was deemed incompetent, it was the opinion of the evaluators that Mr. Brown would "likely to be restored to competency with psychiatric medication in the foreseeable future."

32.     Shortly after the competency order was completed Mr. Brown was ordered to undergo treatment through the South Carolina Department of Mental Health for up to 180 days for observation and treatment to restore his competency to stand trial. This order was executed on December 15, 2022. Unfortunately, Mr. Brown never received this treatment prior to his death.

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

33.     On December 19, 2022, it was reported that Mr. Brown had "smeared feces and urine about his cell walls, doors, floor, ceiling, and body."  It was further reported that he continued to refuse medications.

34.     On December 21, 2022, at approximately 6:00 am, Sgt. Singleton and several nurses entered Mr. Brown's cell.     Mr. Brown was alive, but unresponsive, and was thereafter transferred to the emergency room at MUSC for life-saving medical intervention.

35.     Upon information and belief, Mr. Brown never regained consciousness and was pronounced dead at MUSC on December 29, 2022.

36.     The Defendants and its employees working during Mr. Brown's detainment had actual and constructive knowledge of his deteriorating condition and acted in blatant disregard of his health and life by failing to intervene on his behalf and ensuring he had access to reasonable medical attention. Defendants acted with conscious and deliberate indifference to the basic, obvious, and serious medical needs of Mr. Brown, and as a result, he suffered numerous personal injuries, conscious pain and suffering, and eventually died.

37.     On March 20, 2023, Charleston County Coroner, Bobbi Jo O'Neal, released the cause and manner of Mr. Brown's death.   The cause of death was determined to be E. Coli EAEC sepsis with septic shock and multiple organ system failure due to "gross medical neglect."  The manner of death was deemed to be Homicide.

**FOR A FIRST CAUSE OF ACTION**
**AGAINST DEFENDANTS CHARLESTON COUNTY & CHARLESTON COUNTY**
**SHERIFF'S OFFICE**

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**(Negligence/Gross Negligence - Survival)**

38.     The Plaintiff reiterates each and every relevant allegation stated above as if repeated verbatim herein.

39.     The Defendants are liable to the Plaintiff as a result of its gross negligence, recklessness, willfulness, and wantonness in one or more of the following particulars:

(a)     In failing to secure proper care for the Decedent, when the Defendants and/or their personnel, agents, and/or employees knew or should have known that the Decedent was in open and obvious distress;

(b)     In failing to provide reasonable, necessary, and appropriate supervision, care, and access to medical treatment to the Decedent;

(c)     In disregarding the Decedent's complaints of distress;

(d)     In failing to monitor the Decedent while detained, and to take the proper steps to provide assistance to him when they knew or should have known that he was unable to care for himself;

(e)     In failing to take the proper steps to provide assistance to him when they knew or should have known that Wellpath LLC was not providing appropriate medical attention to him;

(f)     In failing to ensure that the Decedent had access to medical care;

(g)     In failing to seek emergency medical attention for the Decedent, when they knew he was suffering from an open, obvious, and serious medical need;

(h)     In failing to timely refer or transport the Decedent to a specialist and/or a hospital;

(i)     In failing to monitor the Decedent;

(j)     In failing to follow the mandates of the Minimum Standards for Local Detention Centers in South Carolina;

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

(k)     In contracting with Wellpath LLC when the Defendants knew or should have known that it was not providing reasonable and adequate medical services to its detainees, including the Decedent;

(l)     In failing to terminate its contract with Wellpath LLC when the Defendants knew or should have known that it was not providing reasonable and adequate medical services to its detainees, including the Decedent;

(m)    In failing to properly train and/or supervise its employees, agents, and/or staff, so as to ensure that detainees (including the Decedent) are provided with proper care and attention while detained;

(n)     In failing to have the proper policies and/or procedures in place regarding the administration of proper supervision;

(o)     In failing to take the appropriate steps to provide care and treatment to the Decedent when they had actual and constructive notice of the Decedent's open and obvious distress;

(p)     In failing to have the proper policies and procedures in place regarding recognition of medical needs of new detainees;

(q)     In failing to draft and/or institute proper policy and procedure necessary to ensure that detainees are provided basic and/or appropriate medical care and protection from abuse;

(r)     In failing to comply with national, state, and local standards and guidelines, including the standards set forth by the National Commission on Correctional Health Care, with regard to the provision of medical care in detention facilities;

(s)     In failing to train their employees, agents, and/or staff to recognize the medical needs of detainees;

(t)     In failing to properly treat and/or care for the Decedent, D'Angelo Brown;

(u)     In failing to provide, order, seek, and/or maintain emergency medical care;

(v)     In failing to promptly transfer the Decedent to a hospital when they knew or should have known that his physical and mental health was deteriorating;

(w)     In abandoning the Decedent when he was in desperate need of medical care; and

(x)     In failing to have proper communication by and between the detention center officers and the medical personnel contracted to provide medical assistance to the detainees.

40.     The above acts of gross negligence and gross breaches of the proper standard of care (by and through the employees, agents, and/or servants of these Defendants) have caused the Decedent to suffer conscious pain and suffering, leading to his death. The Plaintiff has suffered the loss of the life of the Decedent, loss of his love and support, mental anguish, emotional distress, incurred funeral expenses, and undue grief, and Mr. Brown's heirs will likely suffer from the effects of the Defendants' actions now and in the future. As such, the Plaintiff is entitled to ACTUAL AND CONSEQUENTIAL from these Defendants.

## FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS CHARLESTON COUNTY & CHARLESTON COUNTY SHERIFF'S OFFICE
### (Wrongful Death)

41.     The Plaintiff reiterates each and every relevant allegation stated above as if repeated verbatim herein.

42.     This action is brought for the wrongful death of D'Angelo Brown, pursuant to the provisions of § 15-51-10 *et seq.*, Code of Laws of South Carolina (1976, as amended), and is brought for any statutory heirs of D'Angelo Brown, who died on the 29th day of December, 2022.

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

43.     The death of the Decedent was caused and occasioned by the grossly negligent and reckless acts on behalf of the Defendants as set forth above.

44.     Prior to his death, D'Angelo Brown was twenty-eight (28) years of age.  By reason of his untimely death, his heirs have been deprived of all the benefits of his society and companionship and have been caused great mental shock and suffering by reason of his death.  They have and will forever be caused grief and sorrow by the loss of Mr. Brown's love, society, and companionship.  They have been deprived of his future experiences and judgments.  They have incurred expenses for his funeral and final expenses and, as a result of the foregoing, they have been damaged as follows:

    (a)     mental shock and suffering;
    (b)     wounded feelings;
    (c)     grief and sorrow;
    (d)     loss of his support;
    (e)     loss of companionship; and
    (f)     deprivation of the use and comfort of the Decedent's society and loss of his experience, knowledge, and judgment.

45.     As a further result, and because of the Defendants' reckless, willful, and grossly negligent conduct, which ultimately caused the wrongful death of D'Angelo Brown, this Plaintiff is entitled to ACTUAL and CONSEQUENTIAL damages in an amount to be determined by a jury in accordance with the law and evidence in this case.

**FOR A THIRD CAUSE OF ACTION
AGAINST DEFENDANT WELLPATH LLC
(Negligence/Medical Malpractice - Survival)**

46.     The Plaintiff reiterates each and every relevant allegation stated above as if repeated verbatim herein.

47.     Defendant Wellpath LLC is liable to the Plaintiff as a result of its negligence, gross negligence, recklessness, willfulness, and wantonness in one or more of the following particulars:

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

(a) In failing to secure proper care for the Decedent, when the Defendant and/or its personnel, agents, and/or employees knew or should have known that the Decedent was in open and obvious distress;

(b) In failing to conduct a thorough health assessment of the Decedent;

(c) In failing to exercise reasonable or slight care to administer the Decedent's necessary medications from September 29, 2022 until he was found unresponsive on December 21, 2022;

(d) In failing to exercise reasonable or slight care to administer stabilizing medications to the Decedent once it was reported to the medical staff by the correctional staff that it was "not advisable to open the flap" to his cell on October 22, 2022 due to behavior which was secondary to the Decedent's continued psychiatric and medical deterioration;

(e) In failing to recognize the Decedent's psychiatric decision making incompetence related to medication refusal;

(f) In falsifying the medical records of the Decedent;

(g) In failing to exercise reasonable or slight care to stabilize the Decedent's psychiatric condition when he was noted on November 8, 2022 to be actively psychotic and to have been "erratic and bizarre for several months," including the notation that he had been "smearing feces in cell" for several months;

(h) In failing to exercise reasonable or slight care to stabilize the Decedent's acute psychiatric and medical condition and/or transfer him to a facility capable of treating him when he was charged on December 12, 2022 to be suffering from "continued deterioration" including but not limited to "significant weight loss;"

15 of 20

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

(i)     In failing to exercise reasonable or slight care to intervene when it was documented that the Decedent was refusing to eat;

(j)     In failing to monitor the Decedent's nutrition and hydration intake;

(k)     In failing to exercise reasonable or slight care to intervene to prevent the Decedent from ingesting feces;

(l)     In failing to exercise reasonable or slight care to timely transfer the Decedent to an emergency department or outside medical facility for advanced medical care in light of his obvious and well-known deteriorating physical and mental conditions;

(m)     In failing to exercise reasonable or slight care to prevent and/or treat the Decedent's extreme malnutrition with temporal wasting;

(n)     In failing to exercise reasonable or slight care to prevent and/or treat the Decedent's dehydration;

(o)     In failing to exercise reasonable or slight care to prevent and/or treat the Decedent's decubitus ulcers;

(p)     In failing to exercise reasonable or slight care to treat the Decedent's multiorgan failure;

(q)     In failing to exercise reasonable or slight care to intervene whatsoever to provide any reasonable treatment for the Decedent's declining health;

(r)     In failing to provide reasonable, necessary, and appropriate supervision, care, and access to medical treatment to the Decedent;

(s)     In disregarding the Decedent's complaints of distress;

(t)     In failing to monitor the Decedent while detained, and to take the proper steps to provide assistance to him when it knew or should have known that he was unable to care for himself;

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

(u)     In failing to ensure that the Decedent had access to medical care;

(v)     In failing to seek emergency medical attention for the Decedent, when it knew he was suffering from an open, obvious, and serious medical need;

(w)     In failing to timely refer or transport the Decedent to a specialist and/or a hospital;

(x)     In failing to follow the mandates of the Minimum Standards for Local Detention Centers in South Carolina;

(y)     In failing to properly train and/or supervise its employees, agents, and/or staff, so as to ensure that detainees (including the Decedent) are provided with proper care and attention while detained;

(z)     In failing to have the proper policies and/or procedures in place regarding the administration of proper medical care;

(aa)    In failing to take the appropriate steps to provide care and treatment to the Decedent when it had actual and constructive notice of the Decedent's open and obvious distress;

(bb)    In failing to have the proper policies and procedures in place regarding recognition of medical needs of new detainees;

(cc)    In failing to draft and/or institute proper policy and procedure necessary to ensure that detainees are provided basic and/or appropriate medical care and protection from abuse;

(dd)    In failing to comply with national, state, and local standards and guidelines, including the standards set forth by the National Commission on Correctional Health Care, with regard to the provision of medical care in detention facilities;

(ee)    In failing to train their employees, agents, and/or staff to recognize the medical needs of detainees;

17 of 20

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

(ff)    In failing to properly treat and/or care for the Decedent, D'Angelo Brown;

(gg)    In failing to provide, order, seek, and/or maintain emergency medical care;

(hh)    In failing to promptly transfer the Decedent to a hospital when it knew or should have known that his physical and mental health was deteriorating;

(ii)    In abandoning the Decedent when he was in desperate need of medical care; and

(jj)    In failing to have proper communication by and between the detention center officers and the medical personnel contracted to provide medical assistance to the detainees.

48.    The above acts of negligence and gross negligence and breaches of the proper standard of care (by and through the employees, agents, and/or servants of Wellpath LLC) caused the Decedent to suffer conscious pain and suffering, leading to his death. The Plaintiff has suffered the loss of the life of the Decedent, loss of his love and support, mental anguish, emotional distress, incurred funeral expenses, and undue grief, and Mr. Brown's heirs will likely suffer from the effects of the Defendants' actions now and in the future. As such, the Plaintiff is entitled to ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES from Defendant Wellpath LLC.

## FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANT WELLPATH LLC
### (Wrongful Death)

49.    The Plaintiff reiterates each and every relevant allegation stated above as if repeated verbatim herein.

50.    This action is brought for the wrongful death of D'Angelo Brown, pursuant to the provisions of § 15-51-10 *et seq.*, Code of Laws of South Carolina (1976, as amended), and is brought for any statutory heirs of D'Angelo Brown, who died on the 29th day of December, 2022.

51.    The death of the Decedent was caused and occasioned by the negligent and grossly negligent acts on behalf of the Defendants as set forth above.

52.    Prior to his death, D'Angelo Brown was twenty-eight (28) years of age. By reason of his untimely death, his heirs have been deprived of all the benefits of his society and companionship and have been caused great mental shock and suffering by reason of his death. They have and will forever be caused grief and sorrow by the loss of Mr. Brown's love, society, and companionship. They have been deprived of his future experiences and judgments. They have incurred expenses for his funeral and final expenses and, as a result of the foregoing, they have been damaged as follows:

    (a)    mental shock and suffering;
    (b)    wounded feelings;
    (c)    grief and sorrow;
    (d)    loss of his support;
    (e)    loss of companionship; and
    (f)    deprivation of the use and comfort of the Decedent's society and loss of his experience, knowledge, and judgment.

53.    As a further result, and because of the Defendant Wellpath LLC's reckless, willful, and grossly negligent conduct, which ultimately caused the wrongful death of D'Angelo Brown, this Plaintiff is entitled to ACTUAL, CONSEQUENTIAL, AND PUNITIVE damages in an amount to be determined by a jury in accordance with the law and evidence in this case.

+

## DEMAND FOR JURY TRIAL

**WHEREFORE**, the Plaintiff hereby requests a trial by jury on all of the issues that have been or may hereafter be raised in any of the pleadings. Plaintiff further seeks judgment against

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

Defendants for:

a.  actual and consequential damages as to each occurrence for each cause of action against the Defendants;

b.  punitive damages as to Defendant Wellpath LLC;

c.  the costs and disbursements of this action;

d.  such other and further relief as this Court deems just and proper.

Respectfully Submitted,

s/ *James B. Moore III*
James B. Moore III, SC Bar #74268
Scott C. Evans, SC Bar #77684
Evans Moore, LLC
121 Screven Street
Georgetown, SC  29440
Telephone: (843) 995-5000

**Counsel for the Plaintiff**

May 24, 2023
Georgetown, SC 29440

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

# Exhibit 1

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

NEKEYA JONES, As Special Administrator ) 
of the Estate of D'ANGELO D. BROWN, )
                                )
            **Plaintiff,**      )     **AFFIDAVIT OF EXPERT WITNESS IN**
                                )       **MEDICAL MALPRACTICE CASE**
**v.**                                )           **§§ 15-36-100, 15-79-125**
                                )
**Wellpath, LLC, et al.**              )
                                )
            **Defendants.**        )
_____ )

I, Edward C. O'Bryan III, MD, being duly sworn depose and says:

1. I am a physician, licensed by the State of South Carolina and the appropriate regulatory agency having jurisdiction over the practice of my profession in the location in which I practice.

2. I am Board Certified by the American Board of Internal Medicine, a national association which administers written and/or oral examinations for certification in the area of practice and specialty about which this opinion on the standard of care is offered.

3. I have actual professional knowledge and experience in the specialty and area of practice in which this opinion is given, as a result of my having been regularly engaged in the active practice in the area of specialty and practice for at least three (3) of the last five (5) years immediately preceding this opinion, including serving as the Executive Vice President of Clinical Operations for Wellpath, LLC.

4. This affidavit is made pursuant §15-36-100 of the 1976 SC Code of Laws, which requires that this affidavit must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit.

5. The evidence made available to me, for my review, prior to the making of this affidavit, include the records for D'Angelo Brown from Wellpath, LLC, the Charleston County

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

Coroner's Office, Charleston Dorchester Mental Health, Charleston County EMS, the Medical University of South Carolina, and the Charleston County Detention Center. Additionally, I anticipate the opportunity to review additional medical records and documents pertaining to this matter and reserve the right to supplement my opinion.

6. Through my education, training, and experience as set forth above, I am familiar with the applicable standard of care practiced by health care providers generally, including nurses, nurse practitioners, and physicians who practice medicine and evaluate adult patients in a detention center setting.

7. I have reviewed the records as submitted to me, and based upon my expertise, as set forth above, it is my opinion to a reasonable degree of medical certainty that the medical staff, including nurses and physicians, employed by and through Wellpath, LLC working within the Charleston County Detention Center committed the following negligent, grossly negligent, willful, wanton and/or reckless acts and/or omissions, which constituted a failure to comply with the appropriate standard of care:

     a. In failing to conduct a thorough health assessment of Mr. Brown;

     b. In failing to exercise reasonable or slight care to administer Mr. Brown's necessary Trazodone, Depakote, or Zyprexa from September 29, 2022 until he was found unresponsive on December 21, 2022;

     c. In failing to exercise reasonable or slight care to administer stabilizing medications to Mr. Brown once it was reported to the medical staff by the correctional staff that it was "not advisable to open the flap" to his cell on October 22, 2022 due to behavior which was secondary to Mr. Brown's continued psychiatric and medical deterioration;

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

d. In failing to recognize Mr. Brown's psychiatric decision making incompetence related to medication refusal;

e. In failing to exercise reasonable or slight care to stabilize Mr. Brown's psychiatric condition when he was noted on November 8, 2022 to be actively psychotic and to have been "erratic and bizarre for several months," including the notation that he had been "smearing feces in cell" for several months;

f. In failing to exercise reasonable or slight care to stabilize Mr. Brown's acute psychiatric and medical condition and/or transfer him to a facility capable of treating Mr. Brown when he was charged on December 12, 2022 to be suffering from "continued deterioration" including but not limited to "significant weight loss." Mr. Brown was further observed to be "laying on the floor" and continuing to engage in "smearing feces." Mr. Brown was also observed on this date to be "exhibiting bizarre behavior, confused, delusions and disorganized thinking," and to be "currently in his cell that is covered with urine and feces;"

g. In failing to exercise reasonable or slight care to intervene when it was documented that Mr. Brown was refusing to eat;

h. In failing to exercise reasonable or slight care to intervene to prevent Mr. Brown from ingesting feces ("DURING A SECURITY CHECK INMATE WAS SEEN EATING FECES AND HE HAD IT ALL IN HIS TEETH");

i. In failing to exercise reasonable or slight care to timely transfer Mr. Brown to an emergency department or outside medical facility for advanced medical care in light of his obvious and well-known deteriorating physical and mental conditions;

j. In failing to exercise reasonable or slight care to prevent and/or treat Mr. Brown's extreme malnutrition with temporal wasting;

k.  In failing to exercise reasonable or slight care to prevent and/or treat Mr. Brown's dehydration;

l.  In failing to exercise reasonable or slight care to prevent and/or treat Mr. Brown's decubitus ulcer;

m.  In failing to exercise reasonable or slight care to treat Mr. Brown's multiorgan failure;

n.  In failing to exercise reasonable or slight care to intervene whatsoever to provide any reasonable treatment for Mr. Brown's declining health.

8.  It is my opinion that D'Angelo Brown's deterioration and death were proximately caused by the Defendants' gross deviations from the standard of care.

Edward C. O'Bryan III, MD, MBA

SWORN TO before me this
3 day of March , 2023

_____ (L.S.)
Notary Public for South Carolina
My commission expires: 2/7/2033

4 of 4

ELECTRONICALLY FILED - 2023 May 24 11:00 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

ELECTRONICALLY FILED - 2023 May 30 4:50 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**STATE OF SOUTH CAROLINA**    )    **IN THE COURT OF COMMON PLEAS**
                        )
**COUNTY OF CHARLESTON**        )    **CIVIL ACTION 2023-CP-10-01166**

|  |  |  |
|---|---|---|
| **NEKEYA JONES, As Personal Representative of the ESTATE OF D'ANGELO D. BROWN,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | **ACCEPTANCE OF SERVICE** |
| **CHARLESTON COUNTY; CHARLESTON COUNTY SHERIFF'S OFFICE; and WELLPATH, LLC,** | ) ) ) ) | |
| **Defendant.** | ) ) | |

I hereby certify acknowledge receipt of and accept service of the above captioned

**AMENDED SUMMONS & COMPLAINT** on behalf of the Defendant, **WELLPATH, LLC** on

this _3oth_ day of _____May_____, 2023.


                              *s/ Kristen Thompson*

                              Signature

                              Kristen Thompson, Attorney for Defendant Wellpath, LLC
                              Printed Name and Title

ELECTRONICALLY FILED - 2023 Jun 08 4:25 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | |
| | ) | |
| Nekeya Jones, as Special Administrator of the Estate of D'Angelo D. Brown, | ) | C/A No. 2023-CP-10-01166 |
| *Plaintiff,* | ) | |
| | ) | **DEFENDANTS CHARLESTON COUNTY** |
| Versus | ) | **AND CHARLESTON COUNTY** |
| | ) | **SHERIFF'S OFFICE'S ANSWER TO** |
| Charleston County, Charleston County | ) | **PLAINTIFF'S AMENDED COMPLAINT** |
| Sheriff's Office, and Wellpath LLC, | ) | (*Jury Trial Requested*) |
| | ) | |
| *Defendants.* | ) | |

The Defendants, Charleston County and Charleston County Sheriff's Office (hereinafter "these Defendants"), hereby answer the Plaintiff's Amended Complaint, subject to any and all affirmative defenses, qualifications, motions and any other pleadings as follows:

1.     These Defendants deny each and every allegation contained in Plaintiff's Amended Complaint which is not specifically admitted herein.

## AS TO PARTIES, JURISDICTION AND VENUE

2.     These Defendants lack sufficient knowledge or information at this time to form a belief as to the truth of the allegations contained in Paragraph 1 of Plaintiff's Amended Complaint.

3.     The allegations contained in Paragraphs 2, 3, 4, 5, 6 and 7 of Plaintiff's Amended Complaint state conclusions of law to which no response is required.

## AS TO FACTS

4.     In response to the allegations contained in Paragraphs 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36 and 37 of the Plaintiff's Amended Complaint, these Defendants admit, upon information and belief, only so much as alleges that D'Angelo Brown was housed at the Sheriff Al Cannon Detention Center beginning on or about August 10, 2022, that he passed away December 29, 2022 and that Wellpath

ELECTRONICALLY FILED - 2023 Jun 08 4:25 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

LLC was contracted for providing medical care to residents of Sheriff Al Cannon Detention Center at the time. Further responding, these Defendants refer to all records, documentation and evidence related to the D'Angelo Brown's detainment for a more detailed and complete description of his detainment and health history. All remaining and inconsistent allegations contained in Paragraphs 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36 and 37 of the Plaintiff's Amended Complaint are denied as they are written.

### ANSWERING THE FIRST CAUSE OF ACTION AGAINST DEFENDANTS CHARLESTON COUNTY AND CHARLESTON COUNTY SHERIFF'S OFFICE
**(Negligence/ Gross - Survival)**

5.      In response to the allegations contained in Paragraph 38 of the Plaintiff's Amended Complaint, these Defendants repeat and re-allege their responses contained in Paragraphs 1-4 above as if set forth fully herein.

6.      These Defendants deny the allegations contained in Paragraphs 39, (including subparts a, b, c, d, e, f, g, h, i, j, k, l, m, n, o, p, q, r, s, t, u, v, w, and x) and 40 of the Plaintiff's Amended Complaint.

### ANSWERING THE SECOND CAUSE OF ACTION AGAINST DEFENDANTS CHARLESTON COUNTY AND CHARLESTON COUNTY SHERIFF'S OFFICE
**(Wrongful Death)**

7.      In response to the allegations contained in Paragraph 41 of the Plaintiff's Amended Complaint, these Defendants repeat and re-allege their responses contained in Paragraphs 1-6 above as if set forth fully herein.

8.      The allegations contained in Paragraph 42 of the Plaintiff's Amended Complaint state conclusions of law to which no response is required.

9.      These Defendants deny the allegations contained in Paragraphs 43, 44 (including subparts a, b, c, d, e and f) and 45 of the Plaintiff's Amended Complaint.

ELECTRONICALLY FILED - 2023 Jun 08 4:25 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

### ANSWERING THE THIRD CAUSE OF ACTION AGAINST DEFENDANT WELLPATH LLC
#### (Negligence/ Medical Malpractice- Survival)

10.     In response to the allegations contained in Paragraph 46 of the Plaintiff's Amended Complaint, these Defendants repeat and re-allege their responses contained in Paragraphs 1-9 above as if set forth fully herein.

11.     The allegations contained in Paragraphs 47 (including subparts a, b, c, d, e, f, g, h, i, j, k, l, m, n, o, p, q, r, s, t, u, v, w, x, y, z, aa, bb, cc, dd, ee, ff, gg, hh, ii and jj) and 48 of the Plaintiff's Amended Complaint are not directed toward these Defendants and therefore no response is required.

### ANSWERING THE FOURTH CAUSE OF ACTION AGAINST DEFENDANT WELLPATH LLC
#### (Wrongful Death)

12.     In response to the allegations contained in Paragraph 49 of the Plaintiff's Amended Complaint, these Defendants repeat and re-allege their responses contained in Paragraphs 1-11 above as if set forth fully herein.

13.     The allegations contained in Paragraph 50 of the Plaintiff's Amended Complaint state conclusions of law to which no response is required.

14.     The allegations contained in Paragraphs 51, 52 (including subparts a, b, c, d, e and f) and 43 of the Plaintiff's Amended Complaint are not directed toward these Defendants and therefore no response is required.

### AS TO DEMAND FOR JURY TRIAL

15.     These Defendants also request a jury trial in this case. These Defendants deny the Plaintiff's WHEREFORE Paragraph (including subparts a, b, c and d), being the remaining allegations of the Plaintiff's Amended Complaint.

ELECTRONICALLY FILED - 2023 Jun 08 4:25 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
THESE DEFENDANTS ALLEGE:**
**(No Proximate Cause)**

16.     That, even if these Defendants were negligent, as alleged in the Complaint, which is specifically denied, the negligence of these Defendants was not the direct or proximate cause of any injury or damages alleged by Plaintiff and therefore these Defendants are not liable for any damages allegedly sustained by the Plaintiff.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
THESE DEFENDANTS ALLEGE:**
**(Governmental Immunity/South Carolina Tort Claims Act)**

17.     This action is governed by the terms, provisions and affirmative defenses set forth in the South Carolina Tort Claims Act which *inter alia* provide a limit on the amount of actual damages that can be recovered, a prohibition on the recovery of punitive damages and these Defendants plead these limitations as a cap on actual damages and a bar to any punitive damages. S.C. Code Ann. §15-78-120.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
THESE DEFENDANTS ALLEGE:**
**(Eleventh Amendment Immunity)**

18.     Eleventh Amendment Immunity in accordance with the Constitution of the United States of America and the State of South Carolina bars Plaintiff's claims in totality against these Defendants.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
THESE DEFENDANTS ALLEGE:**
**(Comparative Negligence)**

19.     These Defendants allege that any injuries received by Plaintiff, as alleged in the Complaint, if any, were due to and caused by and were the direct and proximate result of acts of negligence on the part of the Plaintiff or a third party, over whom these Defendants had no control, so as to bar the claims of Plaintiff against these Defendants.

ELECTRONICALLY FILED - 2023 Jun 08 4:25 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,**
**THESE DEFENDANTS ALLEGE:**
**(Lack of Foreseeability)**

20.     That upon information and belief, even if the damages alleged in Plaintiff's Complaint, if any, were proximately caused by the acts and/or omissions of these Defendants, which is otherwise denied except for the purpose of these affirmative defenses, these Defendants did not and could not have foreseen that Plaintiff's damages, if any, could have proximately resulted from these Defendants' alleged acts or omissions.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,**
**THESE DEFENDANTS ALLEGE:**
**(Reasonableness and Good Faith)**

21.     These Defendants allege that they acted reasonably and in good faith at all times material herein, based on all relevant facts and circumstances known by them at the time they so acted.  Accordingly, Plaintiff is not entitled to the recovery of any damages whatsoever.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,**
**THESE DEFENDANTS ALLEGE:**
**(Unforeseeable Intervening or Superseding Events)**

22.     The damages complained of were solely the result of unforeseeable intervening or superseding events over which these Defendants had no control.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE**
**THESE DEFENDANTS ALLEGE:**
**(No Breach)**

23.     These Defendants did not breach any purported duty owed to Plaintiff so as to bar the Plaintiff from recovery against these Defendants.

ELECTRONICALLY FILED - 2023 Jun 08 4:25 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

## FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE, THESE DEFENDANTS ALLEGE:
### (Assumption of the Risk)

24.     These Defendants allege that the perils and dangers existing at the time of Plaintiff's actions, if any, were open, obvious, and known to the Plaintiff, who nevertheless conducted herself in such a manner so as to voluntarily assume all risks pertaining thereto.

## FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE, THESE DEFENDANTS ALLEGE:
### (Pre-Existing Medical Condition)

25.     Whatever injuries the Plaintiff sustained, which are specifically denied herein, were the result of pre-existing medical conditions of the decedent, whether disclosed or undisclosed, and were not related to the incidents complained of in the Complaint.

## FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE, THESE DEFENDANTS ALLEGE:
### (Predisposition of Medical Condition)

21.     Whatever injuries the Plaintiff sustained, which are specifically denied herein, were the result of the decedent's predisposition to medical conditions, whether disclosed or undisclosed, and were not related to the incidents complained of in the Complaint.

## FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE, THIS DEFENDANT ALLEGES:
### (Natural Disease Process)

22.     That these Defendants would allege, upon information and belief, that any injuries or damages sustained by Plaintiff were due to, caused and occasioned by the natural disease process over which these Defendants had no control and as such, these Defendants plead such a natural disease process as a complete bar to this action.

ELECTRONICALLY FILED - 2023 Jun 08 4:25 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
THESE DEFENDANTS ALLEGE:
(Punitive Damages Unconstitutional)**

23.     That any award or assessment of punitive damages as prayed for by the Plaintiff would violate this Defendant's Constitutional rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and comparable provisions of the South Carolina Constitution.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
THESE DEFENDANTS ALLEGE:
(Application of S.C. Code Ann. § 15-38-15)**

24.     That, upon information and belief, even if this Defendant was negligent as described in the Amended Complaint, which is specifically denied, this Defendant was less than fifty percent liable for the total fault alleged.  Accordingly, joint and several liability should not apply to this action as it relates to this Defendant and this Defendant should be held liable only for the percentage of fault, which is specifically denied, to be determined by the trier of fact.  Additionally, the answering defendant hereby reserves the right to seek all remedies, rights and privileges available to them pursuant to S.C. Code Ann. §15-38-15.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
THESE DEFENDANTS ALLEGE:
(Reservation and Non-Waiver)**

25.     These Defendants reserve any additional and further defenses as may be revealed by additional information during the course of discovery and investigation, as is consistent with the South Carolina Rules of Civil Procedure.

WHEREFORE, having fully answered the Plaintiff's Amended Complaint, and having asserted these affirmative defenses, the Defendants, Charleston County and Charleston County Sheriff's Office, pray that the Plaintiff's Amended Complaint be dismissed with prejudice and that they be awarded the costs and reasonable fees associated with this matter, and such other relief as the Court may deem just and proper.

HOOD LAW FIRM, LLC
172 Meeting Street
Post Office Box 1508
Charleston, SC  29402
Phone: (843) 577-4435
Facsimile: (843) 722-1630

June 8, 2023                          **/s/ Elloree A. Ganes**
Charleston, South Carolina           Elloree A. Ganes (SC #70509)
                                     elloree.ganes@hoodlaw.com
                                     Evan M. Sobocinski (SC #104259)
                                     evan.sobocinski@hoodlaw.com

                                     *Attorneys for the Defendants*
                                     *Charleston County and Charleston County*
                                     *Sheriff's Office*

ELECTRONICALLY FILED - 2023 Jun 08 4:25 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

ELECTRONICALLY FILED - 2023 Jun 29 5:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF CHARLESTON | THE NINTH JUDICIAL CIRCUIT |
| | CASE NO.: 2023-CP-10-01166 |
| Nekeya Jones, as Special Administrator of the Estate of D'Angelo D. Brown, | |
| Plaintiff, | **DEFENDANT WELLPATH, LLC'S ANSWER TO AMENDED COMPLAINT (JURY TRIAL DEMANDED)** |
| v. | |
| Charleston County; Charleston County Sheriff's Office; and Wellpath, LLC, | |
| Defendants. | |

COMES NOW, Defendant Wellpath, LLC (this Defendant), by and through its undersigned counsel, and hereby Answers Plaintiff's Amended Complaint, and shows the Court as follows:

## FIRST DEFENSE

Plaintiff has failed to state a claim upon which relief may be granted by this Court and this Defendant should be dismissed pursuant to SCRCP 12(b)(6).

## SECOND DEFENSE

This Defendant exercised that degree of skill and care required of it by law at all times relevant to the matters complained of in the Amended Complaint. This Defendant and its employees did not deviate from any generally-accepted standards, practices, and procedures exercised by competent professionals in their respective fields of correctional medicine acting under the same or similar circumstances.

## THIRD DEFENSE

Any recovery by Plaintiff must be reduced or offset by amounts Plaintiff has received or will receive from others for the same injuries/damages claimed in this lawsuit.

ELECTRONICALLY FILED - 2023 Jun 29 5:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

## FOURTH DEFENSE

This Defendant did not deviate from any generally-accepted standards, practices, and procedures exercised by similar competent professionals in the field acting under the same or similar circumstances.

## FIFTH DEFENSE

Any alleged negligence or deviations from the standard of care (which are expressly denied) were not a direct, proximate, or legal cause of some or all of the injuries or death of Plaintiff's decedent or damages claimed by Plaintiff.

## SIXTH DEFENSE

Plaintiff's claims for non-economic damages are limited in amount under South Carolina law by the statutory limits contained in the Noneconomic Damages Awards Act of 2005, South Carolina Code Ann. §15-32-200, *et. seq.* as amended, specifically including South Carolina Code Ann. §15-32-220.

## SEVENTH DEFENSE

Any punitive damages awarded in this case would be subject to the limitations described in S.C. Code §15-32-530, or otherwise as limited under South Carolina statutory and case law, and this Defendant specifically plead these limitations as a defense and request a bifurcation of the punitive damages phase of trial.

## EIGHTH DEFENSE

The claims for punitive damages, and the statutes of the State of South Carolina purporting to authorize imposition of those damages, violate this Defendant's rights under the United States Constitution and South Carolina Constitution. Furthermore, those damages are limited in amount under South Carolina law.

ELECTRONICALLY FILED - 2023 Jun 29 5:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**NINTH DEFENSE**

Any alleged error by this Defendant and/or its employees (which are expressly denied), were *bona fide* errors of professional judgment for which this Defendant cannot be liable.

**TENTH DEFENSE**

This Defendant exercised reasonable judgment and followed reasonable courses of care and/or treatment if and when required.

**ELEVENTH DEFENSE**

There is no causal connection between any alleged act or omission on the part of this Defendant and the injuries and damages claimed by Plaintiff.

**TWELFTH DEFENSE**

To the extent any or all Defendants may be considered state agents and to the extent that they are sued in any official capacity, they are immune from suit under the doctrine of sovereign immunity and under the Eleventh Amendment of the United States Constitution.

**THIRTEENTH DEFENSE**

This Defendant did not perform any acts or fail to perform acts in bad faith, in a malicious manner, or with corrupt motives. This Defendant acted in good faith and is immune from suit.

**FOURTEENTH DEFENSE**

This Defendant shows that at all times alleged in the Amended Complaint, this Defendant and its employees acted reasonably under the circumstances, in good faith, had no knowledge that any of the alleged acts or omissions were illegal and/or unconstitutional, nor in violation of Plaintiff's decedent's clearly established federal, statutory, or constitutional rights at the time they were allegedly committed. Therefore, this Defendant is immune from liability under the doctrine of qualified immunity.

ELECTRONICALLY FILED - 2023 Jun 29 5:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

## FIFTEENTH  DEFENSE

The claims for punitive damages, and the statutes of the State of South Carolina purporting to authorize imposition of those damages, violate this Defendant's rights under the United States Constitution and South Carolina Constitution, as well as the holding of State Farm Mutual Automobile Insurance Company v. Campbell, 538 U.S. 408 (2003), and its progeny.

## SIXTEENTH DEFENSE

To the extent shown by the evidence and law, this Defendant and its employees acted as governmental officials performing discretionary functions and actions which could reasonably have been thought consistent with the rights of Plaintiff's decedent, for which they are alleged to have violated. Therefore, they are entitled to immunity as a matter of law.

## SEVENTEENTH DEFENSE

The acts of a person other than this Defendant and/or its employees may be the sole and proximate cause of the injuries complained of in the Amended Complaint. If this Defendant is deemed responsible to the Plaintiff for any damages or injuries, which is strictly denied, then this Defendant is entitled to contribution from all joint tortfeasors pursuant to the South Carolina Contribution Among Joint Tortfeasors Act, South Carolina Code of Laws § 15-38-10 et, Seq. (Cum. Supp. 1989).  The acts or omissions of a person, persons, or entity other than this Defendant is at least the partial, and may be the sole and proximate cause of the incident complained of in the Amended Complaint.  This Defendant's negligence, if any, was less than fifty percent of the total fault for the Plaintiff's alleged damages as compared with the total fault of all the Defendants, named or un-named.  As such, this Defendant should only be responsible for that percentage of the Plaintiff's alleged damages, to be determined by the jury or trier of fact

## EIGHTEENTH DEFENSE

The acts of a person other than this Defendant are the sole and proximate cause of the incident complained of in the Amended Complaint.

ELECTRONICALLY FILED - 2023 Jun 29 5:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

## NINETEENTH DEFENSE

In the event that Plaintiff is awarded punitive or exemplary damages and to the extent that such an award is not in violation of this Defendant's rights under the United States Constitution and the South Carolina Constitution, an award of punitive or exemplary damages is subject to the limitations as set forth in South Carolina Code Ann. § 15-32-530(A).

## TWENTIETH DEFENSE

The acts of a third party wholly unrelated to this Defendant were the sole cause of Plaintiff's decedent's injuries and these acts were not foreseeable. Therefore, this matter should be dismissed as a matter of law.

## TWENTY FIRST DEFENSE

Any claims for non-economic damages are limited in amount under South Carolina law.

## TWENTY SECOND DEFENSE

If this Defendant was negligent in the manner described in the Amended Complaint, which negligence is specifically denied, the injuries allegedly suffered by Plaintiff's decedent and damages claimed by Plaintiff were the direct and proximate result of the intervening and superseding negligence of third parties, for whose conduct this Defendant bears no responsibility. Therefore, Plaintiff is barred from recovery against this Defendant.

## TWENTY THIRD DEFENSE

The medical condition and illness of Plaintiff's decedent was the result of disease processes and/or medical conditions not negligently caused, contributed to, aggravated or exacerbated by any act or omission on the part of this Defendant.

## TWENTY FOURTH DEFENSE

To the extent the evidence shows Plaintiff's decedent did not follow the reasonable medical instructions of his respective healthcare providers, then some or all of Plaintiff's claims are barred in whole or in part by the doctrines of comparative negligence and failure to mitigate damages.

ELECTRONICALLY FILED - 2023 Jun 29 5:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

Further, to the extent shown by the evidence, that negligence may be the sole and proximate cause of the alleged injuries suffered.

## TWENTY FIFTH DEFENSE

This Defendant respond to the numbered allegations of the Amended Complaint as follows:

1.      This Defendant lacks sufficient information to form a belief as to the truthfulness of the allegations of Paragraphs 1, 2 and 3 of the Complaint. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

2.      In response to Paragraph 4, this Defendant admits that Wellpath, LLC is an entity organized under the laws of Delaware with a principal place of business in Nashville, Tennessee and maintains a registered agent in South Carolina as set forth in the South Carolina Secretary of State's business filings. This Defendant further shows that Wellpath, LLC is a private correctional healthcare provider that had a contract to operate certain aspects of the provision of medical care at the Al Cannon Detention Center located at 3841 Leeds Avenue, North Charleston, and pursuant to that contract employs medical personnel at the Detention Center. All other allegations of Paragraph 4 inconsistent herewith are denied.

3.      The allegations contained in Paragraphs 5, 6 and 7 of the Amended Complaint are legal conclusions and no response is required.  Answering further as to Paragraph 6, this Defendant admits that it and Plaintiff participated in the mandatory South Carolina pre-suit requirements for medical malpractice actions but denies the contents, allegations and conclusions of Dr. O'Bryan's affidavit attached as Exhibit 1, especially the allegations of negligence. In as much as any further response is required by this Defendant as to Paragraphs 5, 6 and 7, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages or failed to comply with the standard of care.

ELECTRONICALLY FILED - 2023 Jun 29 5:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

4.      In responding to Paragraph 8, this Defendant denies that Plaintiff's decedent was in its custody, but admits that certain aspects of Plaintiff's decedent's medical care was under its healthcare provider's purview while Mr. Brown was incarcerated by the Charleston County Sheriff's Office at the Al Cannon Detention Center. All other allegations of Paragraph 8 are denied as stated.

5.      This Defendant lacks sufficient information to form a belief as to the truthfulness of the allegations of Paragraphs 9 and 10 of the Amended Complaint. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

6.      The allegations contained in Paragraph 11 of the Amended Complaint are legal conclusions and no response is required.  In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

7.      In responding to Paragraph 12 of the Amended Complaint, this Defendant admits that Wellpath, LLC had a contract to operate certain aspects of the provision of medical care at the Al Cannon Detention Center located at 3841 Leeds Avenue, North Charleston, and pursuant to that contract employed medical personnel at the Detention Center. This Defendant lacks sufficient information to form a belief as to the truthfulness of the remaining allegations of Paragraph 12 of the Amended Complaint. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

8.      In response to Paragraph 13, this Defendant admits that Wellpath, LLC is a private, correctional healthcare provider organized under the laws of Delaware with a principal place of business in Nashville, Tennessee. This Defendant further shows that Wellpath, LLC has contracts

ELECTRONICALLY FILED - 2023 Jun 29 5:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

to operate certain aspects of the provision of medical care at multiple detention center facilities across the nation. This Defendant shows that in carrying out its contractual duties, Wellpath, LLC has been involved in disputed, contested litigation. All other allegations of Paragraph 13 inconsistent herewith are denied.

9.      In response to Paragraph 14, this Defendant admits that CNN wrote an online article from the perspective of various plaintiffs in disputed litigation. This Defendant further shows that it has contracts to operate certain aspects of the provision of medical care at multiple detention center facilities across the nation, and in carrying out its contractual duties, it has been involved in disputed, contested litigation. This Defendant is unable to answer what information was available to Co-Defendants when it contracted with it in 2022. All other allegations of Paragraph 14 inconsistent herewith are denied.

10.     In response to Paragraph 15, this Defendant lacks sufficient information to respond as to what "became apparent" to Co-Defendants, but this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care. This Defendant also denies any allegations or implications contained within Paragraph 15 that this Defendant and/or its employees were not providing appropriate medical care to inmates at the Charleston County Detention Center or that its contract with the County should have been terminated due to allegedly inappropriate care. All other allegations of Paragraph 15 inconsistent herewith are denied.

11.     In response to the allegations of Paragraphs 16, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, and 35 of the Amended Complaint, this Defendant shows that the medical records, jail records, video footage, and the testimony of the healthcare providers and detention center staff involved in Mr. Brown's care and incarceration will more accurately set forth the circumstances and events surrounding his incarceration. Therefore, the allegations of

ELECTRONICALLY FILED - 2023 Jun 29 5:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

Paragraphs 16, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, and 35 are denied at this time.

12.     This Defendant denies Paragraphs 17 and 36 of the Amended Complaint.

13.     In response to Paragraph 37, this Defendant admits that Charleston County Coroner Bobbi Jo O'Neal released a report stating the items delineated in Paragraph 37, but denies the accuracy of the report, including the cause and manner of death.

14.     In response to the allegations of Paragraph 38, this Defendant incorporates as if fully set forth herein its responses to Paragraphs 1 – 37.

15.     The allegations contained in Paragraphs 39 and 40, including their subparts, are not directed at this Defendant and therefore no response is required. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

16.     In response to the allegations of Paragraph 41, this Defendant incorporates as if fully set forth herein its responses to Paragraphs 1 – 40.

17.     The allegations contained in Paragraphs 42, 43, 44 and 45, including their subparts, are not directed at this Defendant and therefore no response is required. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

18.     In response to the allegations of Paragraph 46, this Defendant incorporates as if fully set forth herein its responses to Paragraphs 1 – 45.

19.     This Defendant denies the allegations of Paragraphs 47 and 48, including all subparts.

ELECTRONICALLY FILED - 2023 Jun 29 5:43 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

20.     In response to the allegations of Paragraph 49, this Defendant incorporates as if fully set forth herein its responses to Paragraphs 1 – 48.

21.     The allegations contained in Paragraph 50 of the Amended Complaint are legal conclusions and no response is required.  In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

22.     This Defendant denies the allegations of Paragraphs 51, 52 and 53, including all subparts.

23.     This Defendant denies the "WHEREFORE" Paragraph of Plaintiff's Amended Complaint.

WHEREFORE, having fully answered the Amended Complaint, this Defendant demands to be dismissed with costs taxed against the Plaintiff.

This 29th day of June 2023.

Respectfully submitted,

COPELAND, STAIR, VALZ & LOVELL, LLP

By: *s/Kristen K. Thompson*
    KRISTEN K. THOMPSON
    State Bar No.: 100659
    NELSON POST
    State Bar No.: 106080
    *Attorneys for Defendant Wellpath, LLC*

40 Calhoun Street, Suite 400
Charleston, SC 29401
*kthompson@csvl.law*
*npost@csvl.law*
Ph: (843) 727-0307

ELECTRONICALLY FILED - 2023 Aug 08 11:18 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | |
| | ) | |
| Nekeya Jones, as Special Administrator of the Estate of D'Angelo D. Brown, | ) | C/A No. 2023-CP-10-01166 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | **STIPULATION AND PROTECTIVE** |
| Versus | ) | **ORDER OF CONFIDENTIALITY** |
| | ) | |
| Charleston County, Charleston County Sheriff's Office, and Wellpath LLC, | ) | |
| | ) | |
| *Defendants.* | ) | |

WHEREAS, the parties to this Consent Confidentiality Order ("parties"), have stipulated that certain discovery material is and should be treated as confidential, and have agreed to the terms of this order; accordingly, it is this _____ day of _____, 2023, ORDERED:

1.     **Scope.**   All documents produced in the course of discovery, all responses to discovery requests and all deposition testimony and deposition exhibits and any other materials which may be subject to discovery (hereinafter collectively "documents") shall be subject to this Order concerning confidential information as set forth below.

2.     **Form and Timing of Designation.**   Confidential documents shall be so designated by placing or affixing the word "CONFIDENTIAL" on the document in a manner which will not interfere with the legibility of the document and which will permit complete removal of the Confidential designation. Documents shall be designated CONFIDENTIAL prior to, or contemporaneously with, the production or disclosure of the documents.   Inadvertent or unintentional production of documents without prior designation as confidential shall not be deemed a waiver, in whole or in part, of the right to designate documents as confidential as otherwise allowed by this Order.

ELECTRONICALLY FILED - 2023 Aug 08 11:18 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

3.      **Documents Which May be Designated Confidential.**  Any party may designate documents as confidential but only after review of the documents by an attorney[1] who has, in good faith, determined that the documents contain information protected from disclosure by statute, sensitive personal information, trade secrets, or confidential research, development, or commercial information.  The certification shall be made concurrently with the disclosure of the documents, using the form attached hereto at Attachment A which shall be executed subject to the standards of Rule 11 of the Federal Rules of Civil Procedure.  Information or documents which are available in the public sector may not be designated as confidential.

4.      **Depositions.**    Portions of depositions shall be deemed confidential only if designated as such when the deposition is taken or within seven business days after receipt of the transcript.  Such designation shall be specific as to the portions to be protected. Portions of Depositions that address documents or other materials marked as confidential shall be deemed Confidential.

5.      **Protection of Confidential Material.**

    a.      **General Protections.**  Documents designated CONFIDENTIAL under this Order shall not be used or disclosed by the parties or counsel for the parties or any other persons identified below (¶ 6.b.) for any purposes whatsoever other than preparing for and conducting the litigation in which the documents were disclosed (including any appeal of that litigation).  The parties shall not disclose documents designated as confidential to putative class members not named as plaintiffs in putative class litigation unless and until one or more classes have been certified.

---

[1]  The attorney who reviews the documents and certifies them to be CONFIDENTIAL must be admitted to the Bar of at least one state but need not be admitted to practice in the District of South Carolina and need not apply for *pro hac vice* admission. By signing the certification, counsel submits to the jurisdiction of this court in regard to the certification.

b.    **Limited Third Party Disclosures.**  The parties and counsel for the parties shall not disclose or permit the disclosure of any documents designated CONFIDENTIAL under the terms of this Order to any other person or entity except as set forth in subparagraphs (1)-(5) below, and then only after the person to whom disclosure is to be made has executed an acknowledgment (in the form set forth at Attachment B hereto), that he or she has read and understands the terms of this Order and is bound by it. Subject to these requirements, the following categories of persons may be allowed to review documents which have been designated CONFIDENTIAL pursuant to this Order:

(1)    counsel and employees of counsel for the parties who have responsibility for the preparation and trial of the lawsuit;

(2)    parties and employees of a party to this Order but only to the extent counsel shall certify that the specifically named individual party or employee's assistance is necessary to the conduct of the litigation in which the information is disclosed[2];

(3)    court reporters engaged for depositions and those persons, if any, specifically engaged for the limited purpose of making photocopies of documents;

(4)    consultants, investigators, or experts (hereinafter referred to collectively as "experts") employed by the parties or counsel for the parties to assist in the preparation and trial of the lawsuit; and

(5)    other persons only upon consent of the producing party or upon order of the court and on such conditions as are agreed to or ordered.

c.    **Control of Documents.**   Counsel for the parties shall take reasonable efforts to prevent unauthorized disclosure of documents designated as Confidential pursuant to the terms of this order.  Counsel shall maintain a record of those persons, including employees of counsel, who have reviewed or been given access to the documents along with the originals of the forms signed by those persons acknowledging their obligations under this Order.

---

[2]  At or prior to the time such party or employee completes his or her acknowledgment of review of this Order and agreement to be bound by it (Attachment B hereto), counsel shall complete a certification in the form shown at Attachment C hereto.  Counsel shall retain the certification together with the form signed by the party or employee.

ELECTRONICALLY FILED - 2023 Aug 08 11:18 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

ELECTRONICALLY FILED - 2023 Aug 08 11:18 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

      d.     **Copies.**    All copies, duplicates, extracts, summaries or descriptions (hereinafter referred to collectively as "copies"), of documents designated as Confidential under this Order or any portion of such a document, shall be immediately affixed with the designation "CONFIDENTIAL" if the word does not already appear on the copy. All such copies shall be afforded the full protection of this Order.

6.     **Filing of Confidential Materials.**   In the event a party seeks to file any material that is subject to protection under this Order with the court, that party shall take appropriate action to insure that the documents receive proper protection from public disclosure including: (1) filing a redacted document with the consent of the party who designated the document as confidential; (2) where appropriate (*e.g.* in relation to discovery and evidentiary motions), submitting the documents solely for *in camera* review; or (3) where the preceding measures are not adequate, seeking permission to file the document under seal pursuant to the procedural steps set forth in Local Civil Rule 5.03, DSC, or such other rule or procedure as may apply in the relevant jurisdiction.   Absent extraordinary circumstances making prior consultation impractical or inappropriate, the party seeking to submit the document to the court shall first consult with counsel for the party who designated the document as confidential to determine if some measure less restrictive than filing the document under seal may serve to provide adequate protection. This duty exists irrespective of the duty to consult on the underlying motion. Nothing in this Order shall be construed as a prior directive to the Clerk of Court to allow any document be filed under seal. The parties understand that documents may be filed under seal only with the permission of the court after proper motion pursuant to Local Civil Rule 5.03.

7.     **Greater Protection of Specific Documents.**   No party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an Order providing such special protection.

ELECTRONICALLY FILED - 2023 Aug 08 11:18 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

8. **Challenges to Designation as Confidential.** Any CONFIDENTIAL designation is subject to challenge. The following procedures shall apply to any such challenge.

     a.     The burden of proving the necessity of a Confidential designation remains with the party asserting confidentiality.

     b.     A party who contends that documents designated CONFIDENTIAL are not entitled to confidential treatment shall give written notice to the party who affixed the designation of the specific basis for the challenge. The party who so designated the documents shall have fifteen (15) days from service of the written notice to determine if the dispute can be resolved without judicial intervention and, if not, to move for an Order confirming the Confidential designation.

     c.     Notwithstanding any challenge to the designation of documents as confidential, all material previously designated CONFIDENTIAL shall continue to be treated as subject to the full protections of this Order until one of the following occurs:

         (1)     the party who claims that the documents are confidential withdraws such designation in writing;

         (2)     the party who claims that the documents are confidential fails to move timely for an Order designating the documents as confidential as set forth in paragraph 9.b. above; or

         (3)     the court rules that the documents should no longer be designated as confidential information.

     d.     Challenges to the confidentiality of documents may be made at any time and are not waived by the failure to raise the challenge at the time of initial disclosure or designation.

9. **Treatment on Conclusion of Litigation.**

     a.     **Order Remains in Effect.** All provisions of this Order restricting the use of documents designated CONFIDENTIAL shall continue to be binding after the conclusion of the litigation unless otherwise agreed or ordered.

     b.     **Return of CONFIDENTIAL Documents.** Within thirty (30) days after the conclusion of the litigation, including conclusion of any appeal, all documents treated as confidential under this Order, including copies as defined above (¶6.d.) shall be returned to the producing party unless: (1) the document has been entered as evidence or filed (unless introduced or filed under seal); (2) the parties stipulate to destruction in lieu of return; or (3) as to documents containing the notations, summations, or other mental impressions of the receiving party, that party elects destruction. Notwithstanding the above requirements to return or destroy documents,

ELECTRONICALLY FILED - 2023 Aug 08 11:18 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

counsel may retain attorney work product including an index which refers or relates to information designated CONFIDENTIAL so long as that work product does not duplicate verbatim substantial portions of the text of confidential documents. This work product continues to be Confidential under the terms of this Order. An attorney may use his or her work product in a subsequent litigation provided that its use does not disclose the confidential documents.

10. **Order Subject to Modification.** This Order shall be subject to modification on motion of any party or any other person who may show an adequate interest in the matter to intervene for purposes of addressing the scope and terms of this Order. The Order shall not, however, be modified until the parties shall have been given notice and an opportunity to be heard on the proposed modification.

11. **No Judicial Determination.** This Order is entered based on the representations and agreements of the parties and for the purpose of facilitating discovery. Nothing herein shall be construed or presented as a judicial determination that any specific document or item of information designated as CONFIDENTIAL by counsel is subject to protection under Rule 26(c) of the Federal Rules of Civil Procedure or otherwise until such time as a document-specific ruling shall have been made.

12. **[If by consent] Persons Bound.** This Order shall take effect when entered and shall be binding upon: (1) counsel who signed below and their respective law firms; and (2) their respective clients.

**[if not by consent] Persons Bound.** This Order shall take effect when entered and shall be binding upon all counsel in this action and their respective law firms and clients.

IT IS SO ORDERED.

*ELECTRONIC SIGNATURE PAGE TO FOLLOW.*

**WE MOVE for Defendants,** Charleston County, and Charleston County Sheriff's Office:

**/s/ Elloree A. Ganes**
Elloree A. Ganes (SC #70509)
elloree.ganes@hoodlaw.com
Evan M. Sobocinski (SC #104259)
evan.sobocinski@hoodlaw.com
HOOD LAW FIRM, LLC
172 Meeting Street
Post Office Box 1508
Charleston, SC  29402
Ph: (843) 577-4435 / Fax: (843) 722-1630
Email: Info@hoodlaw.com

**WE CONSENT for Defendant,**
Wellpath LLC:

**/s/ Kristen K. Thompson**
Kristen K. Thompson (State Bar No.: 100659)
kthompson@csvl.law
Nelson Post, Esquire (State Bar No.: 106080)
npost@csvl.law
COPELAND, STAIR, VALZ & LOVELL, LLP
40 Calhoun Street, Suite 400
Charleston, SC 29401
Ph: (843) 727-0307

**WE CONSENT for the Plaintiff,**
Nekeya Jones, as Special Administrator of the Estate of D'Angelo D. Brown:

**/s/ James B. Moore, III**
James B. Moore III, SC Bar #74268
james@evansmoorelaw.com
Scott C. Evans, SC Bar #77684
scott@evansmoorelaw.com
Evans Moore, LLC
121 Screven Street
Georgetown, SC  29440
Telephone: (843) 995-5000

ELECTRONICALLY FILED - 2023 Aug 08 11:18 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**ATTACHMENT A**
**CERTIFICATION BY COUNSEL OF DESIGNATION**
**OF INFORMATION AS CONFIDENTIAL**

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | |
| | ) | |
| Nekeya Jones, as Special Administrator of the Estate of D'Angelo D. Brown, | ) | C/A No. 2023-CP-10-01166 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| Versus | ) | **CERTIFICATION BY COUNSEL OF** |
| | ) | **DESIGNATION OF INFORMATION AS** |
| Charleston County, Charleston County | ) | **CONFIDENTIAL** |
| Sheriff's Office, and Wellpath LLC, | ) | |
| | ) | |
| *Defendants.* | ) | |

Documents produced herewith **[whose bates numbers are listed below (or) which are listed on the attached index]** have been marked as CONFIDENTIAL subject to the Confidentiality Order entered in this action which Order is dated [confidentiality order date].

By signing below, I am certifying that I have personally reviewed the marked documents and believe, based on that review, that they are properly subject to protection under the terms of Paragraph 3 of the Confidentiality Order.

Check and complete one of the two options below.

❑     I am a member of the Bar of the United States District Court for the District of South Carolina. My District Court Bar number is [District Court Bar #].

❑     I am not a member of the Bar of the United States District Court for the District of South Carolina but am admitted to the bar of one or more states. The state in which I conduct the majority of my practice is [state in which I practice most] where my Bar number is [that state's Bar #]. I understand that by completing this certification I am submitting to the jurisdiction of the United States District Court for the District of South Carolina as to any matter relating to this certification.

Date:   [date attachment A signed]                    [Signature of Counsel [s/name]]
                                                       Signature of Counsel

                                                       [Printed Name of Counsel [A]]
                                                       Printed Name of Counsel

ELECTRONICALLY FILED - 2023 Aug 08 11:18 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

ELECTRONICALLY FILED - 2023 Aug 08 11:18 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**ATTACHMENT B**

**ACKNOWLEDGMENT OF UNDERSTANDING
AND
AGREEMENT TO BE BOUND**

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | |
| | ) | |
| Nekeya Jones, as Special Administrator of the Estate of D'Angelo D. Brown, | ) ) | C/A No. 2023-CP-10-01166 |
| *Plaintiff,* | ) ) | **ACKNOWLEDGMENT OF** |
| | ) | **UNDERSTANDING AND AGREEMENT** |
| Versus | ) | **TO BE BOUND** |
| | ) | |
| Charleston County, Charleston County Sheriff's Office, and Wellpath LLC, | ) ) | |
| *Defendants.* | ) | |

The undersigned hereby acknowledges that he or she has read the Confidentiality Order dated [confidentiality order date], in the above captioned action, understands the terms thereof, and agrees to be bound by such terms. The undersigned submits to the jurisdiction of the United States District Court for the District of South Carolina in matters relating to the Confidentiality Order and understands that the terms of said Order obligate him/her to use discovery materials designated CONFIDENTIAL solely for the purposes of the above-captioned action, and not to disclose any such confidential information to any other person, firm or concern.

The undersigned acknowledges that violation of the Stipulated Confidentiality Order may result in penalties for contempt of court.

Name:            [undersigned name [att B]]

Job Title:        [Job Title [att B]]

Employer:        [Employer [att B]]

Business Address:    [Business Address [att B]]

Date:  **[date attachment B signed]**            [Signature [attachment B]]
                                Signature

ELECTRONICALLY FILED - 2023 Aug 08 11:18 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**ATTACHMENT C**

**CERTIFICATION OF COUNSEL OF NEED
FOR ASSISTANCE OF PARTY/EMPLOYEE**

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | |
| | ) | |
| Nekeya Jones, as Special Administrator of the Estate of D'Angelo D. Brown, | ) ) | C/A No. 2023-CP-10-01166 |
| *Plaintiff*, | ) ) | **CERTIFICATION OF COUNSEL OF** |
| Versus | ) ) | **NEED FOR ASSISTANCE OF** **PARTY/EMPLOYEE** |
| Charleston County, Charleston County Sheriff's Office, and Wellpath LLC, | ) ) | |
| *Defendants.* | ) | |

Pursuant to the Confidentiality Order entered in this action, most particularly the provisions of Paragraph 5.b.2., I certify that the assistance of [name of assistant [att C]] is reasonably necessary to the conduct of this litigation and that this assistance requires the disclosure to this individual of information which has been designated as CONFIDENTIAL.

I have explained the terms of the Confidentiality Order to the individual named above and will obtain his or her signature on an "Acknowledgment of Understanding and Agreement to be Bound" prior to releasing any confidential documents to the named individual and I will release only such confidential documents as are reasonably necessary to the conduct of the litigation.

The individual named above is:

❏     A named party;

❏     An employee of named party [employee of named party]. This employee's job title is [employee's job title] and work address is [employee's work address].


Date:  **[date attachment C signed]**          [Signature [attachment C]]
                                                                 Signature

ELECTRONICALLY FILED - 2023 Aug 08 11:18 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166



Charleston Common Pleas

**Case Caption:**      Nekeya  Jones , plaintiff, et al VS   Charleston County , defendant, et al

**Case Number:**      2023CP1001166

**Type:**      Order/Protective Order


It is so ordered.

/s Roger M. Young, Sr. S.C. Circuit Judge 2134


Electronically signed on 2023-08-08 11:07:22     page 11 of 11

ELECTRONICALLY FILED - 2024 Jan 19 2:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | CASE NO.: 2023-CP-10-01166 |
| | ) | |
| NEKEYA JONES, As Special Administrator of the Estate of D'ANGELO D. BROWN, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER ON PLAINTIFF'S MOTION TO COMPEL DISCOVERY RESPONSES |
| | ) | |
| CHARLESTON COUNTY, CHARLESTON COUNTY SHERIFF'S OFFICE, and WELLPATH LLC, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

THIS MATTER came before the Court for a hearing on December 14, 2023 on Plaintiff's Motion to Compel Discovery Responses from Defendants Charleston County and Charleston County Sheriff's Office ("County Defendants"), filed June 2, 2023 ("Motion to Compel").

THE COURT, having considered the Motion to Compel, the briefs of the parties, the arguments of counsel at the hearing, the applicable law, and other appropriate matters of record finds that the Motion to Compel should be GRANTED, in part, for the reasons and in the manner set forth below.

Prior to the December 14, 2023 hearing, the parties were able to resolve several of the open discovery disputes. The only remaining disagreements pertain to Plaintiff's First Set of Request for Production Nos. 5, 12, 16, 17, and 18 and Plaintiff's First Set of Interrogatories No. 11. The Court addresses each discovery dispute below.

With respect to Request for Production Nos. 5 and 12 seeking communications referencing Decedent, the Court finds the requested correspondence discoverable. Therefore, the Court orders the County Defendants to produce all written communications (electronically submitted or

1

ELECTRONICALLY FILED - 2024 Jan 19 2:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

otherwise) that are responsive to Request for Production Nos. 5 and 12. These communications can be searched by utilizing the Decedent's name, including D'Angelo Brown, Dangelo Brown, Deangelo Brown, DeAngelo Brown, and D Brown, his date of birth, inmate number, social security number, and his booking number. For any communications that County Defendants claim privilege, the Court orders the County Defendants to identify said communications on a properly formatted privilege log.

With respect to Request for Production 16, seeking County Defendants policies and procedures, County Defendants are ordered to produce a complete copy of its policy and procedure manual, including any post orders, in effect at the Charleston County Detention Center between August 10, 2022 and December 21, 2022. This Court does not opine on this information's admissibility, but only as to relevant discoverable material.

Regarding Request for Production No. 17, which seeks Decedent's Charleston County Sheriff's Office records, the Court finds that such materials should be produced in full. Therefore, County Defendants are ordered to produce all of Decedent's records in their possession or control, including but not limited to, all medical records from any prior detainments at the Charleston County Detention Center.

In Request for Production No. 18, Plaintiff seeks copies of any materials used in County Defendant's internal investigation into this incident and any documents or reports generated as a result of any internal investigation. Counsel for the County Defendants indicated at the hearing that the Internal Investigation into Decedent's death is currently open and any supporting documentation regarding the internal investigation had previously been produced. As such, there is currently no Investigative Report to produce. Once the investigation is completed, the County

ELECTRONICALLY FILED - 2024 Jan 19 2:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

Defendants are hereby ordered to produce its investigatory file including but not limited to the investigative report and any findings or conclusions.

In Interrogatory No. 11, Plaintiff seeks a list of all inmates housed in the same housing unit as Decedent during his incarceration. The Court finds that the inmates housed in Decedent's housing unit are potential witnesses to this action, and may have observed the decedent's interactions with correctional and medical staff. Therefore, County Defendants are ordered to respond to Interrogatory No. 11 by providing a list of the names of all inmates, along with their dates of birth, detained within Decedent's housing unit (BMU) during the time period of November 1, 2022 through December 21, 2022. The inmates' names and dates of birth shall be produced pursuant to the confidentiality order in place.

## CONCLUSION

**THEREFORE**, for the reasons set forth herein, Plaintiff's Motion to Compel is GRANTED, in part, and Defendants Charleston County and Charleston County Sheriff's Office is ORDERED to produce all responsive information and materials to Plaintiff within thirty (30) days. At the hearing, Counsel indicated that the Plaintiff was not pursuing costs related to the filing or prosecution of this Motion, as such, costs will not be awarded.

IT IS SO ORDERED.

_____
Mikell R. Scarborough

ELECTRONICALLY FILED - 2024 Jan 19 2:01 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166



Charleston Common Pleas

**Case Caption:**        Nekeya  Jones , plaintiff, et al VS   Charleston County , defendant, et al

**Case Number:**        2023CP1001166

**Type:**                Order/Compel

                    So Ordered

                    s/Mikell R Scarborough

Electronically signed on 2024-01-19 13:58:25     page 4 of 4

ELECTRONICALLY FILED - 2024 Jan 19 2:03 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF CHARLESTON** | ) | **CASE NO.:  2023-CP-10-01166** |

| | | |
|---|---|---|
| **NEKEYA JONES, As Special** | ) | |
| **Administrator of the Estate of D'ANGELO** | ) | |
| **D. BROWN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **ORDER ON PLAINTIFF'S MOTION** |
| | ) | **TO COMPEL DISCOVERY** |
| **v.** | ) | **RESPONSES FROM DEFENDANT** |
| | ) | **WELLPATH, LLC** |
| **CHARLESTON COUNTY,** | ) | |
| **CHARLESTON COUNTY SHERIFF'S** | ) | |
| **OFFICE, and WELLPATH, LLC** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

THIS MATTER came before the Court for a hearing on December 14, 2023 on Plaintiff's Motion to Compel Discovery Responses from Defendant Wellpath, LLC, filed on October 3, 2023. Plaintiff seeks an Order Compelling Defendant Wellpath, LLC ("Wellpath") to produce documents requested in Plaintiff's First Request for Production Nos. 21, 22, 23, 24, 26, 27, 28, and 30, and to properly respond to Plaintiff's First Interrogatories Nos. 5, 6, 8, 9, 11, 12, 14, 15, 22, 23, 24, 25, 26, and 27.

Prior to the December 14, 2023 hearing, the parties were able to resolve many of the open discovery disputes. Specifically, Wellpath agreed to supplement its responses and produce all documents responsive to Request for Production Nos. 24, 27, 28, and 30. Specifically, with respect to Request for Production Nos. 24 and 30, Defendant Wellpath has agreed to produce the personnel files, training logs, and December 2022 time sheets of former Wellpath employees Dr. Paul Drago, Donna Scuderi, NP, Cathy Mazyck, RN, Nekisha Winbush, LPN, Debbie Igwilo, NP, William Pursley, NP, Natalie Bell, Kathleen Potter, NP, Kamilah Dukes, Nathaniel Harris, RN, Sheryl

1

ELECTRONICALLY FILED - 2024 Jan 19 2:03 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

Stump, RN, LaKeisha Cohen, and Pamela McGrew pursuant to the confidentiality order currently in place. With respect to Requests for Production Nos. 27 and 28, Defendant Wellpath has agreed to produce a complete copy of the Wellpath Policy and Procedure Manual.

Plaintiff has agreed to withdraw its Motion to Compel as to Interrogatories 8, 9, 12, 14, and 15. Additionally, Wellpath has agreed to provide complete and satisfactory answers to Integratory Nos. 11, 23, 24, 25, 26, and 27. Specifically, pursuant to Interrogatory No. 11, Wellpath has agreed to identify any and all liability insurance coverage, including any umbrella or excess coverage, which may be applicable to the claims in this case. As to Interrogatory No. 22, Wellpath has agreed to produce the personnel files of the former Wellpath employees identified above. As to Interrogatory Nos. 23 and 24, Wellpath has produced the Litigation Report provided to Charleston County during the 2020 RFP process. As to Interrogatory Nos. 25 and 26, Wellpath has agreed to produce the training logs for the former Wellpath employees identified above. Finally, as to Interrogatory No. 27, Wellpath has agreed to produce a complete copy of the Wellpath Policy and Procedure Manual in place during the time period of Mr. Brown's 2022 incarceration.

**THEREFORE,** the Court hereby Orders that Defendant Wellpath shall provide its supplemental discovery responses to Request for Production Nos. 24, 27, 28, 30 and Interrogatory Nos. 11, 22, 23, 24, 25, 26, and 27 within thirty (30) days after issuance of this Order.

While the parties were able to resolve several matters raised in the Motion to Compel, there are still outstanding discovery disputes that the Court must rule on. Defendant Wellpath maintains its objections to Plaintiff's First Requests for Production Nos. 21, 22, 23, and 26. Defendant Wellpath also maintains its objections to Plaintiff's First Interrogatories Nos. 5 and 6. The Court will address each of these discovery requests in turn.

ELECTRONICALLY FILED - 2024 Jan 19 2:03 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

The Court finds the following with respect to Request for Production No. 21 concerning any incident report prepared in connection with Decedent's medical treatment and/or death, and Plaintiff's Request for Production No. 22 requesting all correspondence, reports, memoranda, documents, or other materials received by Wellpath in connection with its investigation of this case prior to the institution of this lawsuit. For any document that Wellpath is withholding and claims the PSQI privilege, the Court hereby compels Wellpath to provide Plaintiff an affidavit with the following information: (1) the date the document(s) were created; (2) whether the documents were prepared for reporting to a Patient Safety Organization; (3) when the documents were reported to a PSO; and (4) whether the records are required by Federal or state health regulatory agencies. The Court orders Wellpath to produce any document that does not qualify for the PSQI privilege. Finally, for any document to which Wellpath claims the attorney-client privilege, the Court orders Wellpath to produce a privilege log identifying each document.

With respect to Request for Production No. 23 concerning incident reports and/or reports of inmate deaths during the limited time period of Wellpath's tenure at CCDC, the Court finds that the mortality reports regarding inmate deaths sought in this Request for Production are discoverable. Therefore, the Court hereby compels Wellpath to produce all Part I and Part II Mortality Reports/Reviews responsive to Request for Production 23 relevant to this time period.

With respect to Request for Production No. 26 concerning any presentation and materials submitted to Charleston County during Wellpath's bid to provide medical services, the Court finds the information sought is discoverable. Therefore, to the extent this documentation has not been previously produced, the Court orders Wellpath to produce the materials requested in Request for Production No. 26. Any proprietary information should be marked as such and will be protected by the parties' Confidentiality Order.

3

ELECTRONICALLY FILED - 2024 Jan 19 2:03 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

With respect to Interrogatory Nos. 5 and 6, for any document that Wellpath claims the PSQI privilege, the Court orders Wellpath to provide Plaintiff an affidavit with: (1) the date documents were created; (2) whether the documents were prepared for reporting to a Patient Safety Organization; (3) when the documents were reported to a PSO; and (3) whether the records are required by Federal or state health regulatory agencies. For any document that Wellpath claims attorney-client or work-product privilege, the Court orders Wellpath to produce a privilege log identifying the same, sufficient for the Court to review and determine if the information is privileged.

## CONCLUSION

**THEREFORE**, for the reasons set forth herein, Plaintiff's Motion to Compel is GRANTED, and Defendant Wellpath is ORDERED to produce all responsive materials to Plaintiff within thirty (30) days.

IT IS SO ORDERED.

_____
Mikell R. Scarborough

ELECTRONICALLY FILED - 2024 Jan 19 2:03 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166



Charleston Common Pleas

**Case Caption:**      Nekeya  Jones , plaintiff, et al VS   Charleston County , defendant, et al

**Case Number:**      2023CP1001166

**Type:**      Order/Compel

So Ordered

s/Mikell R Scarborough

Electronically signed on 2024-01-19 13:58:45    page 5 of 5

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | CIVIL ACTION 2023-CP-10-01166 |
| | ) | |
| NEKEYA JONES, as Special | ) | |
| Administrator of the Estate of D'ANGELO | ) | |
| D. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLESTON COUNTY, | ) | |
| CHARLESTON COUNTY SHERIFF'S | ) | |
| OFFICE, WELLPATH LLC, PAUL | ) | SECOND AMENDED SUMMONS |
| DRAGO, MD, PRIYA PATEL, MD, | ) | (Jury Trial Requested) |
| WILLIAM MALCOLM, KATHLEEN H. | ) | |
| POTTER, NP, ROXANNE SEROHI, NP, | ) | |
| TAMISHA JOHNS, CATHY MAZYCK, | ) | |
| JAMAL M. SINGLETON, SHANNELL T. | ) | |
| MCKELLAR, LAKEESHA M. PALMER, | ) | |
| TRENT M. EVANS, and MERETE | ) | |
| ENBUSK, | ) | |
| | ) | |
| Defendants. | ) | |

**TO THE DEFENDANTS ABOVE-NAMED:**

**YOU ARE HEREBY SUMMONED** and required to answer the Second Amended Complaint in this action, of which a copy is herewith served upon you, and to serve a copy of your Answer to said Second Amended Complaint in the subscribed to James B. Moore III, EVANS MOORE, LLC, 121 SCREVEN STREET, GEORGETOWN, SOUTH CAROLINA, 29440 within THIRTY (30) DAYS after the service hereof, exclusive of the date of such service; and if you fail to answer the Complaint within the time aforesaid, judgment by default will be rendered against you for the relief demanded in the Complaint.

Respectfully Submitted,

s/ *James B. Moore III*
James B. Moore III, SC Bar #74268
Scott C. Evans, SC Bar #77684
George W. Bryan III, SC Bar #104088
Evans Moore, LLC
121 Screven Street
Georgetown, SC  29440

1 of 38

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

Telephone: (843) 995-5000

***Counsel for the Plaintiff***

March 28, 2024
Georgetown, SC 29440

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| | ) | |
| COUNTY OF CHARLESTON | ) | CIVIL ACTION 2023-CP-10-01166 |
| | ) | |
| NEKEYA JONES, as Special Administrator of the Estate of D'ANGELO D. BROWN, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLESTON COUNTY, CHARLESTON COUNTY SHERIFF'S OFFICE, WELLPATH LLC, PAUL DRAGO, MD, PRIYA PATEL, MD, WILLIAM MALCOLM, KATHLEEN H. POTTER, NP, ROXANNE SEROHI, NP, TAMISHA JOHNS, CATHY MAZYCK, JAMAL M. SINGLETON, SHANNELL T. MCKELLAR, LAKEESHA M. PALMER, TRENT M. EVANS, and MERETE ENBUSK, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | SECOND AMENDED COMPLAINT (Jury Trial Requested) |
| | ) | |
| Defendants. | ) | |

The Plaintiff, Nekeya Jones, as Special Administrator of the Estate of D'Angelo D. Brown, deceased, complaining of the Defendants would respectfully show unto this Honorable Court:

**PARTIES, JURISDICTION, AND VENUE**

1.      The Plaintiff, Nekeya Jones, is a citizen and resident of the County of Berkeley, State of South Carolina.  Additionally, Nekeya Jones is the duly-appointed Special Administrator of the Estate of D'Angelo D. Brown, having been so appointed by the Berkeley County Probate Court on the 8th day of March, 2023, under case number 2023-ES-08-117.

2.      The Defendant, Charleston County, is a political subdivision of the State of South Carolina as defined in Section 15-78-10 et seq. of the Code of Laws of South Carolina (1985), as amended. At all times hereinafter mentioned in this Complaint, this Defendant owned and/or operated the

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

Charleston County Detention Center and it acted or carried on its business by and through its agents, servants, and/or employees. Additionally, during the time period set forth in the Complaint, Defendant Charleston County had entered into a contract with Wellpath LLC to provide mandated and constitutionally required healthcare services to all incarcerated individuals at the Charleston County Detention Center. During the time period set out in the Complaint, these employees were operating within the scope of their officially assigned and/or compensated duties.

3.      The Defendant, Charleston County Sheriff's Office, is a governmental agency and/or political subdivision of the State of South Carolina, existing under the laws of the State of South Carolina (as defined by Section 15-78-10 of the Code of Laws of South Carolina (1985), as amended) and has facilities located in the County of Charleston, South Carolina. At all times hereinafter mentioned in this Complaint, the Defendant, Charleston County Sheriff's Office, owned and/or operated the Charleston County Detention Center and acted and carried on its business by and through its agents, servants, and/or employees, to include the officers working within the Charleston County Detention Center. Additionally, during the time period set out in the Complaint, these employees were operating within the scope of their officially assigned and/or compensated duties.

4.      The Defendant, Wellpath LLC, is a for-profit corporation existing under the laws of the State of Delaware with employees and agents stationed throughout South Carolina, including Charleston County, South Carolina, providing healthcare services within county detention facilities. At all times hereinafter mentioned in this Complaint, Defendant Wellpath LLC acted and carried on its business by and through its agents, servants, and/or employees at its various locations including the Charleston County Detention Center. Additionally, these agents, servants, and/or employees were operating within the scope of their officially assigned and/or compensation duties.

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

5.      Defendant Paul Drago, MD, a resident of South Carolina, was a physician employed with Defendant Wellpath LLC as a medical director.  At all times mentioned herein, Defendant Drago was an employee and/or independent contractor of Wellpath LLC and possessed a physician-patient relationship with the decedent, D'Angelo Brown.

6.      Defendant Priya Patel, MD, a resident of South Carolina, was a licensed psychiatrist providing psychiatric services at the Charleston County Detention Center.  At all times mentioned herein, Dr. Patel was an employee and/or independent contractor of Wellpath LLC and possessed a physician-patient relationship with the decedent, D'Angelo Brown.

7.      Upon information and belief, William Malcolm, LISW-CP is a resident of South Carolina and was an agent, servant and/or employee of the Charleston County Sheriff's Office working as the Director of Mental Health at the Charleston County Detention Center during the time period set forth in this Complaint. For the purposes of this action, Defendant Malcolm is being sued solely in his individual capacity under the color of state law.

8.      Upon information and belief, Kathleen Potter, NP, a resident of South Carolina, is a psychiatric nurse practitioner formerly employed with Wellpath LLC. At all times mentioned herein, Defendant Potter was acting in the course and scope of her employment, and under color of state law.  Defendant Potter is being sued in her individual capacity under the color of state law.

9.      Upon information and belief, Roxanne Serohi, NP, a resident of South Carolina, is a nurse practitioner formerly employed with Wellpath LLC. At all times mentioned herein, Defendant Serohi was acting in the course and scope of her employment, and under color of state law. Defendant Serohi is being sued in her individual capacity under the color of state law.

10.     Upon information and belief, Tamisha Johns, a resident of South Carolina, is a nurse formerly employed with Wellpath LLC. At all times mentioned herein, Defendant Johns was

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

acting in the course and scope of her employment, and under color of state law. Defendant Johns is being sued in her individual capacity under the color of state law.

11.     Upon information and belief, Cathy Mazyck, a resident of South Carolina, is a nurse practitioner formerly employed with Wellpath LLC. At all times mentioned herein, Defendant Mazyck was acting in the course and scope of her employment, and under color of state law. Defendant Mazyck is being sued in her individual capacity under the color of state law.

12.     Upon information and belief, Sgt. Jamal M. Singleton is a resident of South Carolina, and was an agent, servant and/or employee of Charleston County Sheriff's Office working as a correctional officer at the Charleston County Detention Center during the time period set forth in this Complaint. For purposes of this action, Defendant Singleton is being sued solely in his individual capacity under the color of state law

13.     Upon information and belief, Shannell T. McKellar is a resident of South Carolina, and was an agent, servant and/or employee of Charleston County Sheriff's Office working as a correctional officer at the Charleston County Detention Center during the time period set forth in this Complaint. For purposes of this action, Defendant McKellar is being sued solely in her individual capacity under the color of state law.

14.     Upon information and belief, Lakeesha M. Palmer is a resident of South Carolina, and was an agent, servant and/or employee of Charleston County Sheriff's Office working as a correctional officer at the Charleston County Detention Center during the time period set forth in this Complaint. For purposes of this action, Defendant Palmer is being sued solely in her individual capacity under the color of state law.

15.     Upon information and belief, Trent M. Evans is a resident of South Carolina, and was an agent, servant and/or employee of Charleston County Sheriff's Office working as a correctional officer at the Charleston County Detention Center during the time period set forth in this

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

Complaint. For purposes of this action, Defendant Evans is being sued solely in his individual capacity under the color of state law.

16.     Upon information and belief, Merete Enbusk is a resident of South Carolina, and was an agent, servant and/or employee of Charleston County Sheriff's Office working as a correctional officer at the Charleston County Detention Center during the time period set forth in this Complaint. For the purposes of this action, Defendant Enbusk is being sued solely in his individual capacity under the color of state law.

17.     The claims against Charleston County and Charleston County Sheriff's Office are filed pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. 15-78-10.

18.     With respect to the negligence and medical malpractice claims asserted against Wellpath, LLC, Paul Drago, MD, and Priya Patel, MD, Plaintiff has complied with the pre-lawsuit procedural requirements provided for by the South Carolina Medical Malpractice Act, including those provided for in sections 15-79-120, 15-70-100, and 15-36-100 of the South Carolina Code of Laws. Additionally, in order to comply with all statutory requirements, Plaintiff is attaching and incorporating by reference the affidavit of medical expert Edward C. O'Bryan III, MD, identified as Exhibit 1, and the affidavit of medical expert Davis S. Husted, MD, identified as Exhibit 2.

19.     This Court has jurisdiction over this matter because the most substantial acts and omissions giving rise to liability occurred within Charleston County, South Carolina.

## FACTS

20.     The acts and occurrences which give rise to this action occurred while the Decedent was in the care and custody of the Defendants within the Charleston County Detention Center.

21.     The Plaintiff's decedent, D'Angelo Brown, a 28-year-old man, was born and raised in Charleston, South Carolina.  Although physically healthy, Mr. Brown had a long and well documented history of mental illness, including diagnoses of schizophrenia and bipolar disorder,

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

and had received associated treatment with antipsychotic medications (e.g., Risperdal, Haldol, and Zyprexa), a mood-stabilizer (e.g., Depakote), an antidepressant (e.g., Mirtazapine), and medication to treat side-effects (e.g., Benztropine).

22.     The Plaintiff is informed and believes that prior to the events in question, Charleston County Detention Center had a history of failing to provide access to adequate medical services to pre-trial detainees housed within its facility. In fact, Mr. Brown has been identified as one of six pre-trial detainees who died at the Charleston County Detention Center in 2022 alone.

23.     Individuals who have a been charged with a crime but are presumed innocent, like Mr. Brown, possess a federal constitutional due process right to reasonable medical care and to be free of cruel, inhumane, and unusual punishment pursuant to the 14th Amendment of the United States Constitution.

24.     Pursuant to the Minimum Standards for Local Detention Facilities in South Carolina, every detention center in South Carolina must have a written agreement with a licensed physician or medical authority to ensure that its detainees receive access to reasonable and adequate medical care. During the time period of Mr. Brown's brief detainment, Defendants had contracted with Defendant Wellpath LLC to provide medical care to the approximately 1,000 detainees located within its facility.

25.     Upon information and belief, Defendant Wellpath LLC is the largest for-profit health care provider to jails and detention centers in the United States and is managed by a multibillion-dollar private equity firm based in Nashville, Tennessee. Upon information and belief, prior to the events in question Wellpath LLC had a well-known and well-documented history of providing allegedly unconstitutional and substandard medical services resulting in thousands of lawsuits throughout the country based on wrongful death, neglect, medical malpractice, and violations of constitutional

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

rights. This information was available to Defendants Charleston County and Charleston County Sheriff's Office when it contracted with Wellpath LLC in 2020.

26.      Upon information and belief, Wellpath LLC has a well-documented history of cutting costs at the expense of detainees' health and lives. A CNN investigative report entitled "PLEASE HELP ME before it's too late," from 2019 reviews lawsuits filed between 2014 and 2018 which accuse Wellpath LLC of contributing to more than 70 deaths. Furthermore, the Plaintiff is informed and believes Wellpath LLC has been the subject of a number of Department of Justice Civil Rights investigations.[1] This information was available to Defendants Charleston County and Charleston County Sheriff's Office when it contracted with Wellpath LLC in 2020.

27.      The Plaintiff is informed and believes that it quickly became apparent to the Defendants Charleston County and Charleston County Sheriff's Office that Wellpath LLC was not delivering adequate and reasonable medical care to the detainees housed at the Charleston County Detention Center, but Defendants neglected to take appropriate action to ensure its detainees were receiving the appropriate medical care as required by the Minimum Standards for Location Detention Centers in South Carolina and the United States Constitution. Upon information and belief, Defendants should have terminated their agreement with Wellpath LLC well before Mr. Brown's untimely death. For example, in May of 2022, Chief Abigail Duffy, Charleston County Detention Center's Director, warned numerous employees and representatives of Charleston County and Charleston County Sheriff's Department of her "grave concerns" with continuing to contract with Wellpath LLC:

---

[1] On November 2, 2023, the U.S. Department of Justice opened a civil investigation into the conditions inside of the Charleston County Detention Center. The current investigation is focused on the detention center's failure to provide constitutionally adequate medical and mental health care to its incarcerated population.

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

From: Abigail Duffy <ADuffy@charlestoncounty.org>
Sent: Monday, May 02, 2022 9:23 AM
To: LaShanda W. Hicks <LWHicks@charlestoncounty.org>; Anna Weston <AWeston@charlestoncounty.org>; Rebina Haselden <rhaselden@charlestoncounty.org>; Michael Halley <mhalley@charlestoncounty.org>; Daniela Zyskowski <DZyskowski@charlestoncounty.org>
Cc: Charles L. Wiggins <CWiggins@charlestoncounty.org>; LaZana D.Evans <LPorter@charlestoncounty.org>; Kristin Graziano <kgraziano@charlestoncounty.org>; Nicole L. Paluzzi <NPaluzzi@charlestoncounty.org>
Subject: RE: 5443-- Procurement Contract is going to Expire in 60 days.

All,

I have grave concerns about continuing with Wellpath. They have been in the news for dereliction resulting in a death in February (I believe) and we continue to have repetitive problems with them. Regardless of right to cure notices, their reputation has significantly decreased in the last year alone, and it wasn't high to start with. I believe that we should have a discussion on this matter and bring legal to the table as well. I know that time is short, but a contract extension may be in order while we rebid this contract. In short, they have done nothing to alleviate the concern that they are a liability generally.

Abbey

28.     In fact, Charleston County Sheriff Kristin Graziano has characterized the services provided by Wellpath LLC as "woefully inadequate."[2]

29.     Defendant Dr. Paul Drago served as the Medical Director for Wellpath LLC at the Charleston County Detention Center during the time period of Mr. Brown's detainment.  Upon information and belief, prior to being hired in this capacity, Defendant Drago had been the subject of multiple disciplinary actions by the North Carolina and South Carolina Medical Boards.  For example, Defendant Drago's medical license was "indefinitely suspended" in North Carolina based on the Board's finding that he had a "physical inability to practice safely" and for "substandard care, among other misconduct."  He was thereafter publicly reprimanded by the South Carolina Medical Board on February 22, 2010 and was restricted to only working at "sites within the South Carolina Department of Corrections."  His license was suspended again on November 30, 2015.  According to public records, the 2015 suspension was as a result of

---

[2] Ema Rose Schumer, *Charleston County jail documented schizophrenic man's decline.  Was his death preventable?*, The Post and Courier (Feb. 18, 2023), https://www.postandcourier.com/news/charleston-county-jail-documented-schizophrenic-man-s-decline-was-his-death-preventable/article_feec0f46-926a-11ed-b8c3-4bb467abdfe7.html

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

Defendant Drago being arrested and charged with Kidnapping and Criminal Domestic Violence of a High and Aggravated Nature. It was also revealed that Defendant Drago had engaged in domestic violence during his first marriage, which resulted in a misdemeanor criminal charge. The South Carolina Medical Board determined that Defendant Drago "engaged in the habitual or excessive use or abuse of drugs, alcohol, or other substances that impair[ed] his ability to practice Medicine safely and/or competently." It was further determined by the Board that Defendant Drago "engaged in dishonorable, unethical, or unprofessional conduct that is likely either to deceive, defraud, and harm the public." As a result, on May 15, 2017, Defendant Drago's medical license in South Carolina was once again suspended, this time for a period of five years. Defendant Drago's medical license was reinstated on July 13, 2022, and he was promptly hired by Defendant Wellpath and Defendant Charleston County Sheriff's Department to serve as a medical director at the Charleston County Detention Center. According to the South Carolina Medical Board's reinstatement order, Defendant Wellpath was required to submit a report to the Board of Medical Examiner every thirty (30) days regarding Defendant Drago's medical knowledge, his clinical skills, and his record keeping skills. Upon information and belief, this did not occur.

30.     The Plaintiff is informed and believes that despite this notice, Defendants Charleston County, Charleston County Sheriff's Office, and Wellpath LLC hired Defendant Drago as a medical director and continued to contract with Wellpath LLC for delivery of medical services to the individuals currently housed within the Charleston County Detention Center.

31.     On August 10, 2022, Mr. Brown was arrested and booked at the Charleston County Detention Center. At the time of his booking, Mr. Brown's history of mental illness, which required extensive medication management for stabilization, was well-known to the Defendants.

32.     Upon information and belief, from the time period of Mr. Brown's arrest through his death on December 29, 2022, Mr. Brown was subject to inhumane treatment and deplorable living conditions by the Defendants which contributed to his death.

33.     On the fourth day of Mr. Brown's detainment, he specifically informed a correctional officer that he required his prescribed medication.  Upon information and belief, no one complied with his request and Mr. Brown was not prescribed, nor did he receive, any of his psychiatric medications while detained at the Charleston County Detention Center.

34.     Additionally, it was reported that on August 14, 2022, Mr. Brown was "combative, paranoid, rambling, and nonsensical," and that he had been unable to eat "due to loss of balance and being unable to walk to reach his food."  Additionally, Mr. Brown submitted a "request to staff" wherein he informed staff that he was hungry and had not received a meal in 88 hours.  On August 25, 2022, Mr. Brown submitted another "request to staff" where he reported that he was "really scared for [his] life."

35.     Upon information and belief, Mr. Brown's physical and mental health continued to rapidly deteriorate while detained in an isolated cell within the Behavioral Management Unit (hereinafter referred to as "BMU") at the Charleston County Detention Center.  On September 2, 2022, it was reported that he was refusing meals, was naked, and appeared agitated.  By September 6, 2022, a correctional officer noted that he was "smearing feces and exhibiting off and unusual behavior." It was further reported that his cell was "filled with water, urine, and feces."  On September 7, 2022, Mr. Brown was reported to be "yelling, uncooperative, paranoid" and was observed banging on the wall, yelling, and rambling "unintelligible words and phrases."  On September 8, 2022, correctional staff reported that Mr. Brown was "still in the same condition naked, yelling, banging on the door, cell filled with water/feces and urine."

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

36.     On September 9, 2022, correctional staff reported that Mr. Brown appeared to have "lost a lot weight" and "needs to be seen by mental health/medical badly."

37.     On September 10, 2022, it was noted that Mr. Brown's "hygiene and appearance have been declining tremendously," that he was refusing to eat, and that he "stands in his cell naked and plays with water."

38.      On September 11, 2022, Mr. Brown was observed to be "disorganized and disoriented" and lying in urine.  Additionally, he was continuing to refuse to eat and had not been provided any access to his prescribed antipsychotic medications.

39.     Later that day on September 11, 2022, Mr. Brown was transported to MUSC via EMS due to "altered mental status."  Records confirmed that he was observed "laying in his urine, not eating or drinking, evidencing severe agitation, and picking paint off of the walls."  His skin was noted to be "covered in paint chips and dried feces."  He was diagnosed with several serious medical conditions consistent with prolonged abuse and neglect, to include but not be limited to, acute encephalopathy, leukocytosis, starvation ketoacidosis, rhabdomyolysis, and a urinary tract infection.

40.     While at MUSC, his agitation was controlled with Zyprexa and Klonopin (benzodiazepine sedative), and he was transitioned to Depakote in anticipation of discharge back to the Charleston County Detention Center.

41.     Realizing the seriousness of Mr. Brown's condition, on September 20, 2022, MUSC obtained an Order from the Charleston County Probate Court, that decreed, among other things, that Mr. Brown was to receive involuntary outpatient treatment for a period not to exceed 12 months.

42.     On September 20, a psychiatrist at MUSC, Dr. David Beckert, spoke with Defendant Dr. Paul Drago, informing him the Charleston County Probate Court ordered continued hospitalization

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

and ongoing involuntary medication treatment. Upon information and belief, Defendant Drago assured Dr. Beckert and MUSC that Mr. Brown's medication regimen, which included intramuscular injections, would continue once Mr. Brown returned to the Charleston County Detention Center.

43.     Defendant Wellpath has written policies, procedures, and protocols that give Wellpath employees authority to administer involuntary emergency psychotropic medications in the event that a psychiatric emergency exists and further authorizes the administration of involuntary psychotropic medications if a court order allowing said involuntary administration has been issued.

44.     Defendant Charleston County Sheriff's Office also has a specific policy allowing for the involuntary administration of psychotropic medications even in the absence of a court order.

45.     Mr. Brown remained hospitalized at MUSC until September 29, 2022.  At the time of discharge, it was reported that his "agitation significantly improved," but that he still required "occasional intramuscular injections" as needed.  He was discharged with intramuscular injections, Depakote, remaining doses of Klonpin, and Trazadone.

46.     Upon information and belief, medical staff at MUSC devoted significant time, effort, resources, and dedicated themselves to stabilizing Mr. Brown.

47.     Although Mr. Brown was hospitalized from September 11 through September 29, 2022, correctional officers erroneously reported in his records that Mr. Brown received his "meal tray and juice," when in fact was not present at the detention center at all.

48.     Additionally, during the time of Mr. Brown's hospitalization at MUSC, nursing staff employed by and through Defendant Wellpath LLC documented that Mr. Brown was "refusing" medical care to include wound care and vital assessments despite the fact that he was not present at the detention center, constituting a falsification of medical records by Defendant Wellpath LLC.

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

49.     Upon information and belief, Mr. Brown never received his prescribed psychiatric medications once he was discharged back to the Charleston County Detention Center despite the Charleston County Probate Court's Involuntary Commitment Order, Wellpath LLC and Dr. Drago's acknowledgement of Mr. Brown's need for intramuscular medications, along with Charleston County Detention Center and Wellpath protocols and state and federal law permitting involuntary administration of medications.

50.     Without his medications, Mr. Brown's psychosis became increasingly unmanageable, and he again deteriorated.

51.     Defendant Potter evaluated Mr. Brown upon his return from being hospitalized at MUSC and promptly mislabeled his primary illness to be a personality disorder; an assertion that was contradicted by well-documented manic and psychotic symptoms and the diagnoses of the MUSC psychiatric and medical team.  Upon information and belief, this mislabeling of Mr. Brown's severe psychiatric condition was intentional, as individuals diagnosed with simply a "personality disorder" do not benefit from psychotropic medications.  Upon information and belief, Defendant Potter's dismissive approach was emblematic of the overall dismissive approach the entire Wellpath and Charleston County Detention Center staff took as to Mr. Brown's condition.

52.     On September 29, 2022, Defendants placed Mr. Brown in restraint chair for roughly 130 minutes for being uncooperative.  On October 3, 2022, it was reported that he had urine and feces in his cell.  On October 30, October 31, and November 5, it was reported that his cell window was covered in feces. On November 6, 2022, Mr. Brown was extracted from his cell for cleaning as his cell had been "heavily soiled with feces."  On November 8, 2022, he was observed "naked, growling, disorganized with flight of ideas."  His cell was again described as being covered in urine and feces.  He was unable to provide answers to basic questions.  It was further noted that he was not sleeping, not eating, and had been smearing feces for several months.

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

53.     On November 8, 2022, Defendant Patel noted he had been in the BMU for several months due to bizarre behavior. Defendant Patel noted intramuscular Zyprexa had been ordered if he refused oral medication, but intramuscular Zyprexa was not in the medicine administration records and a second opinion from a physician had not been obtained. She recommended involuntary commitment to the state hospital. Defendant Patel made no mention that Mr. Brown had been involuntarily committed to MUSC in September due to his severe mental illness and there was a prior order for him to receive involuntary intramuscular medications.  Additionally, despite making an "emergent referral," which never occurred, and policies requiring that he be assessed on at least a weekly basis, Defendants Patel and Potter failed to re-assess Mr. Brown's condition for over a month.

54.     On November 11, 2022, it was reported, and entered into Mr. Brown's records, that he had been observed "eating feces and he had it all in teeth." On November 12, 2022, he was reported to be yelling and "jumping around the cell all night shift." The ingestion of feces by a mental health patient is openly life-threatening behavior, and this behavior ultimately contributed to Mr. Brown's preventable death.  Despite Defendants' knowledge that he was ingesting feces, no actions were taken to provide him with medical attention or care.

55.     On November 30, 2022, Defendant Malcolm, the Director of Mental Health at the Charleston County Detention Center, was notified by Mr. Brown's public defender, Megal Ehrlich, Esq., that Mr. Brown remained detained within his isolated cell, naked and covered in feces.  He was also advised that Mr. Brown had been in this condition "for quite some time" and that he had not been evaluated by a psychiatrist since returning to the detention center from MUSC.

56.     On December 11, 2022, it was again charted that his cell was "covered with feces and urine." It was also reported that he appeared emaciated in appearance. Additionally, correctional staff purportedly made multiple requests to Defendant Roxanne Serohi that Mr. Brown be

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

transferred to the "bubble" or infirmary within the medical unit so he could be "housed in medical for observation." It was reported to Defendant Serohi that Mr. Brown had suffered "extreme weight loss" and that the entire BMU correctional staff "was very concerned for his health." Despite multiple reports regarding concerns regarding Mr. Brown's deteriorating condition to Defendant Wellpath and Defendant Serohi, no reasonable actions were taken to ensure that his open, obvious, and serious medical needs, including starvation, were addressed.

57.     On December 13, 2022, Defendant Malcolm notified Mr. Brown's public defender, Attorney Ehrlich, that Mr. Brown remained "in the same cell and the condition" as she described on November 30, 2022. As the Director of Mental Health at the Charleston County Detention Center, Defendant Malcolm certainly had the authority to take some action to ensure that Mr. Brown was receiving access to reasonable medical and mental health services; however, upon information and belief, no actions were taken by Defendant Malcolm.

58.     Upon information and belief, Defendant Malcolm, Defendant Patel, and Defendant Potter participated in "Weekly Mental Health" meetings regarding mentally ill detainees housed with the Behavioral Management Unit. Mr. Brown was the focus of the discussion during each weekly meeting starting in October of 2022 through December 20, 2022. During each meeting it was discussed that Mr. Brown was not on his prescribed medications, that he needed intramuscular medications, that his "problems" were escalating, that he was smearing feces, and that his "last documented shower" was on August 26. 2022. Upon information and belief, the last "Weekly Mental Health" meeting took place on December 20, 2022. Despite Defendants Malcolm, Patel, and Potter's actual knowledge that Mr. Brown was deteriorating, no necessary medical and mental health intervention was provided to him.

59.     On December 14, 2022, Mr. Brown underwent a "competency evaluation" by Sheresa Christopher, Ph.D. and Alicia Gibson, Psy.D. on behalf of the Department of Mental Health. The

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

competency evaluation was performed "virtually" due to Mr. Brown's condition.  During this virtual evaluation, Mr. Brown was reported to be rocking back and forth, opening his mouth and pulling on his ears, and striking the cell wall at times.  It was noted that Mr. Brown was covered in feces as were the walls of his cell.  The evaluation ended as the symptoms experienced by Mr. Brown "could not be fully assessed given his presentation."  It was ultimately determined that Mr. Brown lacked the mental capacity to stand trial due to his psychosis.  However, it was also determined that his symptoms were consistent with a diagnosis of schizophrenia yet "treatable with psychiatric medication."  Although he was deemed incompetent, it was the opinion of the evaluators that Mr. Brown would "likely to be restored to competency with psychiatric medication in the foreseeable future."

60.     Shortly after the competency hearing was completed, Mr. Brown was ordered to undergo treatment through the South Carolina Department of Mental Health for up to 180 days for observation and treatment to restore his competency to stand trial.   This Order was executed on December 15, 2022.  Unfortunately, Mr. Brown never received this treatment prior to his death.

61.     On December 19, 2022, it was reported that Mr. Brown had "smeared feces and urine about his cell walls, doors, floor, ceiling, and body."  It was further reported that he continued to refuse medications.

62.     Upon information and belief, Defendants Singleton, McKellar, Palmer, Evans, and Enbusk all had numerous interactions with Mr. Brown during his detainment and possessed actual knowledge of his open and obvious serious medical needs; however, took no action to ensure he was provided access to reasonable and necessary medical care.  For example, records indicate that Defendant Palmer interacted with Mr. Brown on at least 70 occasions during the time period in which he was in open and obvious medical distress, starting on August 15, 2022 and ending on December 19, 2022.  During an internal affairs investigation, Defendant Palmer indicated that she

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

notified her supervisor and Wellpath of Mr. Brown's poor condition, but "nothing was ever done." She further reported that she noticed a "huge decline in his weight" but "those in charge never reacted" and all she "could was document." Upon information and belief, this purported documentation is nowhere to be found in the records.

63.     Likewise, Defendant McKellar interacted with Mr. Brown on at least 70 occasions during the time period in which he was in open and obvious medical distress, starting on August 15, 2022 and ending on December 19, 2022. Defendant Evans interacted with Mr. Brown on at least 90 occasions during the time period in which he was in open and obvious medical distress, starting on August 28, 2022 and ending on December 16, 2022. Defendant Enbusk interacted with Mr. Brown on at least 100 occasions during the time period in which he was in open and obvious medical distress, starting on August 24, 2022 and ending on December 13, 2022. These officers, who served as the "eyes and ears" for Mr. Brown, all recognized that he was not eating, was suffering from extreme weight loss (documented as 100lb weight loss), was lethargic and not moving (as evidenced by his bed sores and rhabdomyolysis), was reportedly ingesting feces, and needed medical intervention.

64.     On December 20, 2022, Defendant Jamal Singleton was working within the BMU. Upon information and belief, Defendant Singleton observed Mr. Brown in a psychotic state and knew or should have known that he was critically ill. He observed Mr. Brown located in a filthy cell, covered in feces. He noted that Mr. Brown was experiencing extreme weight loss and was not eating. According to Defendant Singleton, Mr. Brown appeared "very confused" through the night of December 20, 2022, but was "breathing."

65.     At approximately 6:00 am on December 21, 2022, Sgt. Michelle Walker-Ryner entered BMU to relieve Defendant Singleton. Defendant Singleton informed Sgt. Walker-Ryner that he had been watching Mr. Brown "through the night" and that "something did not seem right about

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

him."  Upon information and belief, Defendant Singleton was mandated, pursuant to Charleston County Detention Center's policies and procedures, to observe Mr. Brown at least every thirty (30) minutes.  Mr. Brown's medical needs were open and obvious, and any reasonable correctional officer would have known that he needed medical intervention.  In fact, as soon as Sgt. Walker-Ryner observed Mr. Brown during her initial security check, she immediately noticed that he was unresponsive and called for emergency medical intervention.

66.     Shortly thereafter, Sgt. Singleton and several nurses entered Mr. Brown's cell.  Mr. Brown was alive but unresponsive and was thereafter transferred to the emergency room at MUSC for life-saving medical intervention.

67.     Mr. Brown was documented as weighing 220 lbs at the time of his booking on August 19, 2022. According to EMS records on December 21, 2022, his weight was documented as 120 lbs. This extreme weight loss is consistent with his appearance, the multiple reports to the Defendants of "extreme weight loss," and the fact that he had been refusing meals for several months.

68.     Upon admission to MUSC, Mr. Brown was hypotensive and "cold to touch." It was reported to MUSC that Mr. Brown was "found down in solitary confinement," "slumped over and unresponsive" in his "cell for an unknown period of time."  It was further charted that the "officer at bedside reports that he was "acting different since last Friday (December 16, 2022)."

69.     In the emergency room, Mr. Brown remained bradycardic and unresponsive.  He was also very hypothermic (temperature low at 82.4 degrees F), and his breathing was "very shallow" and "slow" between 4-6 breaths/minute with need for urgent intubation and ventilation due to apnea/respiratory failure and altered mental status.

70.     In addition to his acute airway insufficiency, Mr. Brown's initial lab studies reflected multiple abnormalities, which were consistent with life-threatening conditions caused by abuse extreme neglect, including:

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

    a.   Hypothermia;

    b.   Severe dehydration;

    c.   Acute kidney injury (AKI); his elevated Cre (1.8) was reflective of AKI, which was likely due to "hypovolemia" (depleted fluid volume secondary to dehydration);

    d.   Acute liver injury, as his AST/SGOT (1,110), AFT/SGPT (873), and ammonia (91.4) levels were all elevated with this injury "likely" being due to his being in hypovolemic shock;

    e.   Severe malnutrition, as demonstrated dramatic weight loss[3] and lowered levels of total protein (5.2) and albumin (2.3);

    f.   Lactic acidosis and septic versus hypovolemic shock were also felt to be present due to his increased lactate (6.7) level and "+E.coli enteritis and +BDG";

    g.   Other conditions noted on arrival included encephalopathy, thrombocytopenia (lowered platelet count @ 65), which was likely caused by "septic shock," and anemia (low Hgb (12.1). Mr. Brown also tested positive for MSSA.

71.   Upon information and belief, Mr. Brown never regained consciousness and was pronounced dead at MUSC on December 29, 2022. Given the clear signs of neglect, an autopsy was ordered.

72.   Upon information and belief, despite Defendant Charleston County and Charleston County Sheriff's Department's knowledge that Mr. Brown died from complications of neglect, it refrained from notifying authorities, including the South Carolina Law Enforcement Division, for a criminal investigation.

---

[3] Correctional staff indicated that it was not known how long Mr. Brown had been without food.

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

73.     The independent autopsy reflected that Mr. Brown's death was a homicide and that "neglect played a role in the decedent's deteriorating health which led to his death." Review of the "period in custody prior to his last presentation reveals that the decedent did not receive psychiatric treatment (medications) and the decline in his health was not adequately addressed."

74.     The Defendants and its employees working during Mr. Brown's detainment had actual and constructive knowledge of his deteriorating condition and acted in blatant disregard of his health and life by failing to intervene on his behalf and ensuring he had access to reasonable medical attention. Defendants acted with conscious and deliberate indifference to the basic, obvious, and serious medical needs of Mr. Brown, and as a result, he suffered numerous personal injuries, conscious pain and suffering, and eventually died.

75.     On March 20, 2023, Charleston County Coroner, Bobbi Jo O'Neal, released the cause and manner of Mr. Brown's death.   The cause of death was determined to be E. Coli EAEC sepsis with septic shock and multiple organ system failure due to "gross medical neglect." The manner of death was deemed to be Homicide.

**FOR A FIRST CAUSE OF ACTION**
**AGAINST DEFENDANTS CHARLESTON COUNTY & CHARLESTON COUNTY**
**SHERIFF'S OFFICE**
**(Negligence/Gross Negligence - Survival)**

76.     The Plaintiff reiterates each and every relevant allegation stated above as if repeated verbatim herein.

77.     The Defendants are liable to the Plaintiff as a result of its gross negligence, recklessness, willfulness, and wantonness in one or more of the following particulars:

(a)     In failing to secure proper care for the Decedent when the Defendants and/or their personnel, agents, and/or employees knew or should have known that the Decedent was in open and obvious distress;

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

(b)     In failing to provide reasonable, necessary, and appropriate supervision, care, and access to medical treatment to the Decedent;

(c)     In disregarding the Decedent's complaints of distress;

(d)     In failing to monitor the Decedent while detained, and to take the proper steps to provide assistance to him when they knew or should have known that he was unable to care for himself;

(e)     In failing to take the proper steps to provide assistance to the Decedent when they knew or should have known that Wellpath LLC was not providing appropriate medical attention to him;

(f)     In failing to ensure that the Decedent had access to medical care;

(g)     In failing to seek emergency medical attention for the Decedent, when they knew he was suffering from an open, obvious, and serious medical need;

(h)     In failing to timely refer or transport the Decedent to a specialist and/or a hospital;

(i)     In failing to monitor the Decedent;

(j)     In failing to follow the mandates of the Minimum Standards for Local Detention Centers in South Carolina;

(k)     In contracting with Wellpath LLC when the Defendants knew or should have known that it was not providing reasonable and adequate medical services to its detainees, including the Decedent;

(l)     In failing to terminate its contract with Wellpath LLC when the Defendants knew or should have known that it was not providing reasonable and adequate medical services to its detainees, including the Decedent;

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

(m)    In failing to properly train and/or supervise its employees, agents, and/or staff, so as to ensure that detainees (including the Decedent) are provided with proper care and attention while detained;

(n)    In failing to have the proper policies and/or procedures in place regarding the administration of proper supervision;

(o)    In failing to follow its Hunger Strike procedures, despite knowledge that Mr. Brown starving to death and refusing multiple, consecutive meals;

(p)    In failing to take the appropriate steps to provide care and treatment to the Decedent when they had actual and constructive notice of the Decedent's open and obvious distress;

(q)    In failing to draft and/or institute proper policy and procedure necessary to ensure that detainees are provided basic and/or appropriate medical care and protection from abuse;

(r)    In failing to comply with national, state, and local standards and guidelines, including the standards set forth by the National Commission on Correctional Health Care, with regard to the provision of medical care in detention facilities;

(s)    In failing to train their employees, agents, and/or staff to recognize the medical needs of detainees;

(t)    In failing to properly treat and/or care for the Decedent, D'Angelo Brown;

(u)    In failing to provide, order, seek, and/or maintain emergency medical care;

(v)    In failing to promptly transfer the Decedent to a hospital when they knew or should have known that his physical and mental health was deteriorating;

(w)    In abandoning the Decedent when he was in desperate need of medical care; and

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

(x)     In failing to have proper communication by and between the detention center officers and the medical personnel contracted to provide medical assistance to the detainees.

78.     The above acts of gross negligence and gross breaches of the proper standard of care (by and through the employees, agents, and/or servants of these Defendants) have caused the Decedent to suffer conscious pain and suffering, leading to his death.  The Plaintiff has suffered the loss of the life of the Decedent, loss of his love and support, mental anguish, emotional distress, incurred funeral expenses, and undue grief, and Mr. Brown's heirs will likely suffer from the effects of the Defendants' actions now and in the future.  As such, the Plaintiff is entitled to ACTUAL AND CONSEQUENTIAL from these Defendants.

## FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS CHARLESTON COUNTY & CHARLESTON COUNTY SHERIFF'S OFFICE
### (Wrongful Death)

79.     The Plaintiff reiterates each and every relevant allegation stated above as if repeated verbatim herein.

80.     This action is brought for the wrongful death of D'Angelo Brown, pursuant to the provisions of § 15-51-10 *et seq.*, Code of Laws of South Carolina (1976, as amended), and is brought for any statutory heirs of D'Angelo Brown, who died on the 29th day of December, 2022.

81.     The death of the Decedent was caused and occasioned by the grossly negligent and reckless acts on behalf of the Defendants as set forth above.

82.     Prior to his death, D'Angelo Brown was twenty-eight (28) years of age.  By reason of his untimely death, his heirs have been deprived of all the benefits of his society and companionship and have been caused great mental shock and suffering by reason of his death.  They have and will forever be caused grief and sorrow by the loss of Mr. Brown's love, society, and companionship. They have been deprived of his future experiences and judgments.  They have incurred expenses

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

for his funeral and final expenses and, as a result of the foregoing, they have been damaged as follows:

    (a)    mental shock and suffering;
    (b)    wounded feelings;
    (c)    grief and sorrow;
    (d)    loss of his support;
    (e)    loss of companionship; and
    (f)    deprivation of the use and comfort of the Decedent's society and loss of his experience, knowledge, and judgment.

83.    As a further result, and because of the Defendants' reckless, willful, and grossly negligent conduct, which ultimately caused the wrongful death of D'Angelo Brown, this Plaintiff is entitled to ACTUAL and CONSEQUENTIAL damages in an amount to be determined by a jury in accordance with the law and evidence in this case.

### FOR A THIRD CAUSE OF ACTION
### AGAINST DEFENDANTS WELLPATH LLC, PAUL DRAGO, MD AND PRIYA PATEL, MD
### (Negligence/Medical Malpractice - Survival)

84.    The Plaintiff reiterates each and every relevant allegation stated above as if repeated verbatim herein.

85.    Defendants Wellpath LLC, Drago, and Patel are liable to the Plaintiff as a result of their negligence, gross negligence, recklessness, willfulness, and wantonness in one or more of the following particulars:

    (a)    In failing to secure proper care for the Decedent, when the Defendant and/or its personnel, agents, and/or employees knew or should have known that the Decedent was in open and obvious distress;

    (b)    In hiring Defendant Drago to serve as a physician at the detention center, despite knowledge that he had been repeatedly disciplined for criminal actions and cited as unable to provide safe medical care to patient;

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

(c)     In failing to conduct a thorough health assessment of the Decedent;

(d)     In failing to perform a thorough review of DSM criteria pertaining to Mr. Brown;

(e)     In accepting Mr. Brown back to the detention center from MUSC but failing to continue what was effective and necessary treatment, including crucially close, careful assessment of Mr. Brown's condition and the administration of intramuscular Zyprexa if he refused oral Zyprexa;

(f)     In failing to appropriately communicate or work effectively and collaboratively with medical and correctional staff, to the detriment of Mr. Brown's health;

(g)     In discontinuing Mr. Brown's medications, including antipsychotic medications;

(h)     In failing to exercise reasonable or slight care to administer the Decedent's necessary medications from September 29, 2022 until he was found unresponsive on December 21, 2022;

(i)     In failing to exercise reasonable or slight care to administer stabilizing medications, including forced medications, to the Decedent;

(j)     In failing to recognize the Decedent's psychiatric decision making incompetence related to medication refusal;

(k)     In falsifying the medical records of the Decedent;

(l)     In failing to exercise reasonable or slight care to stabilize the Decedent's psychiatric condition when he was noted on November 8, 2022 to be actively psychotic and to have been "erratic and bizarre for several months," including the notation that he had been "smearing feces in cell" for several months;

(m)     In failing to exercise reasonable or slight care to stabilize the Decedent's acute psychiatric and medical condition and/or transfer him to a facility capable of

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

treating him when he was charged on December 12, 2022 to be suffering from "continued deterioration" including but not limited to "significant weight loss;"

(n)     In failing to exercise reasonable or slight care to intervene when it was documented that the Decedent was refusing to eat;

(o)     In failing to monitor the Decedent's nutrition and hydration intake;

(p)     In failing to exercise reasonable or slight care to intervene to prevent the Decedent from ingesting feces;

(q)     In failing to exercise reasonable or slight care to timely transfer the Decedent to an emergency department or outside medical facility for advanced medical care in light of his obvious and well-known deteriorating physical and mental conditions;

(r)     In failing to exercise reasonable or slight care to prevent and/or treat the Decedent's extreme malnutrition with temporal wasting;

(s)     In failing to exercise reasonable or slight care to prevent and/or treat the Decedent's dehydration;

(t)     In failing to exercise reasonable or slight care to prevent and/or treat the Decedent's decubitus ulcers;

(u)     In failing to exercise reasonable or slight care to treat the Decedent's multiorgan failure;

(v)     In failing to exercise reasonable or slight care to intervene whatsoever to provide any reasonable treatment for the Decedent's declining health;

(w)     In failing to provide reasonable, necessary, and appropriate supervision, care, and access to medical treatment to the Decedent;

(x)     In disregarding the Decedent's complaints of distress;

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

(y)     In failing to monitor the Decedent while detained, and to take the proper steps to provide assistance to him when it knew or should have known that he was unable to care for himself;

(z)     In failing to ensure that the Decedent had access to medical care;

(aa)    In failing to seek emergency medical attention for the Decedent, when it knew he was suffering from an open, obvious, and serious medical need;

(bb)    In failing to timely refer or transport the Decedent to a specialist and/or a hospital;

(cc)    In failing to follow the mandates of the Minimum Standards for Local Detention Centers in South Carolina;

(dd)    In failing to properly train and/or supervise its employees, agents, and/or staff, so as to ensure that detainees (including the Decedent) are provided with proper care and attention while detained;

(ee)    In failing to take the appropriate steps to provide care and treatment to the Decedent when it had actual and constructive notice of the Decedent's open and obvious distress;

(ff)    In failing to have the proper policies and procedures in place regarding recognition of medical needs of new detainees;

(gg)    In failing to comply with national, state, and local standards and guidelines, including the standards set forth by the National Commission on Correctional Health Care, with regard to the provision of medical care in detention facilities;

(hh)    In failing to train their employees, agents, and/or staff to recognize the medical needs of detainees;

(ii)    In failing to properly treat and/or care for the Decedent, D'Angelo Brown;

(jj)    In failing to provide, order, seek, and/or maintain emergency medical care;

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

(kk)   In failing to promptly transfer the Decedent to a hospital when it knew or should have known that his physical and mental health was deteriorating;

(ll)   In abandoning the Decedent when he was in desperate need of medical care; and

(mm)  In failing to have proper communication by and between the detention center officers and the medical personnel contracted to provide medical assistance to the detainees.

86.   The above acts of negligence and gross negligence and breaches of the proper standard of care caused the Decedent to suffer conscious pain and suffering, leading to his death. The Plaintiff has suffered the loss of the life of the Decedent, loss of his love and support, mental anguish, emotional distress, incurred funeral expenses, and undue grief, and Mr. Brown's heirs will likely suffer from the effects of the Defendants' actions now and in the future. As such, the Plaintiff is entitled to ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES from Defendants Wellpath LLC, Drago, and Patel.

**FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS WELLPATH LLC, PAUL DRAGO, MD AND PRIYA PATEL, MD**
**(Wrongful Death)**

87.   The Plaintiff reiterates each and every relevant allegation stated above as if repeated verbatim herein.

88.   This action is brought for the wrongful death of D'Angelo Brown, pursuant to the provisions of § 15-51-10 *et seq.*, Code of Laws of South Carolina (1976, as amended), and is brought for any statutory heirs of D'Angelo Brown, who died on the 29th day of December, 2022.

89.   The death of the Decedent was caused and occasioned by the negligent and grossly negligent acts on behalf of the Defendants as set forth above.

90.   Prior to his death, D'Angelo Brown was twenty-eight (28) years of age. By reason of his untimely death, his heirs have been deprived of all the benefits of his society and companionship

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

and have been caused great mental shock and suffering by reason of his death. They have and will forever be caused grief and sorrow by the loss of Mr. Brown's love, society, and companionship. They have been deprived of his future experiences and judgments. They have incurred expenses for his funeral and final expenses and, as a result of the foregoing, they have been damaged as follows:

    (a)    mental shock and suffering;
    (b)    wounded feelings;
    (c)    grief and sorrow;
    (d)    loss of his support;
    (e)    loss of companionship; and
    (f)    deprivation of the use and comfort of the Decedent's society and loss of his experience, knowledge, and judgment.

91.    As a further result, and because of the reckless, willful, and grossly negligent conduct of Defendants Wellpath LLC, Drago, and Patel, which ultimately caused the wrongful death of D'Angelo Brown, this Plaintiff is entitled to ACTUAL, CONSEQUENTIAL, AND PUNITIVE damages in an amount to be determined by a jury in accordance with the law and evidence in this case.

### FOR A FIFTH CAUSE OF ACTION
### AGAINST DEFENDANTS WILLIAM MALCOM, JAMAL SINGLETON, SHANNEL T. MCKELLER, LAKEESHA M. PALMER, TRENT M. EVANS AND MERETE ENBUSK, *each in their individual capacity*
**(Violation of Federal Civil Rights 42 U.S.C. §1983 - Violation of Due Process / Failure to Provide Medical Care for a Serious Medical Need / Cruel and Unusual Punishment)**

92.    The Plaintiff reiterates each and every relevant allegation stated above as if repeated verbatim herein.

93.    During the time period in question, Defendants William Malcom, Jamal Singleton, Shannel T. McKellar, Lakeesha M. Palmer, Trent M. Evans, and Merete Enbusk were acting under the color or pretense of state law, customs, practices, usage or policy as employees of Charleston County and the Charleston County Sherriff's Office working within the Charleston County

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

Detention Center and had certain duties imposed upon them with regard to Mr. Brown. Additionally, during the time period in question, Defendants William Malcom, Jamal Singleton, Shannel T. McKellar, Lakeesha M. Palmer, Trent M. Evans, and Merete Enbusk were well-aware that Mr. Brown suffered from serious medical conditions and rapidly declining health, requiring close and frequent monitoring and supervision. Additionally, Defendants William Malcom, Jamal Singleton, Shannel T. McKellar, Lakeesha M. Palmer, Trent M. Evans, and Merete Enbusk were aware of Mr. Brown's constitutional rights, including his right to due process and access to proper and adequate medical care for his open and obvious, serious medical needs.

94.        At all relevant times, Mr. Brown had clearly established rights under the United States Constitution which included: (a) to be free from any punishment; (b) to be free from government conduct that shocks the conscience; (c) to be free from cruel and unusual punishment; (d) to be free from deliberate indifference to a substantial risk of serious harm; (e) to be free from state created danger; (f) to bodily integrity; and (g) to receive adequate medical care and to be free from deliberate indifference to medical needs.

95.        Defendants William Malcom, Jamal Singleton, Shannel T. McKellar, Lakeesha M. Palmer, Trent M. Evans, and Merete Enbusk violated these clearly established rights in the ways described in summary form herein, and in ways that will be uncovered through discovery and at trial.

96.        Defendants William Malcom, Jamal Singleton, Shannel T. McKellar, Lakeesha M. Palmer, Trent M. Evans, and Merete Enbusk were consciously indifferent and deliberately indifferent to Mr. Brown in the following particulars:

        a.    In knowingly, deliberately, and consciously failing to secure the necessary and/or appropriate medical attention, treatment or medications to Mr. Brown when doing so could have been easily accomplished;

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

b.  In knowingly, deliberately and consciously failing to use even slight care and caution in safekeeping Mr. Brown;

c.  In knowingly, deliberately, and consciously failing to secure reasonable, necessary and appropriate medical care to Mr. Brown - who had serious medical conditions which were open and obvious;

d.  In knowingly, deliberately and consciously failing to sufficiently monitor Mr. Brown while he was detained despite knowledge of the severity of his condition;

e.  In knowingly, deliberately and consciously failing to obtain adequate hydration and nutrition for Mr. Brown while he was detained despite knowledge of the severity of his condition, including knowledge that he was emaciated and starving;

f.  In knowingly, deliberately and consciously failing to transfer and/or refer Mr. Brown for emergency medical assistance at the appropriate time;

g.  In knowingly, deliberately and consciously failing to follow the Charleston County Sherriff Office's own policies, procedures, and protocols;

h.  In knowingly, deliberately and consciously failing to protect Mr. Brown from harm;

i.  In failing to exercise reasonable or slight care to intervene when it was known that Mr. Brown was refusing to eat and it was openly obvious that he was experiencing extreme weight loss;

j.  In knowingly, deliberately and consciously failing to intervene or protect Mr. Brown from self-harm despite knowing that Mr. Brown was in a state of escalating psychosis, living in cell that was perpetually painted with feces and urine, and that Mr. Brown was eating his own feces;

k.  In knowingly, deliberately and consciously failing to administer forced medications to Mr. Brown;

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

l.   In failing to exercise reasonable or slight care to timely transfer Mr. Brown to an emergency department or outside medical facility for advanced medical care in light of his obvious and well-known deteriorating physical and mental conditions;

m.   In failing to exercise reasonable or slight care to prevent Mr. Brown's obvious emaciation; and

n.   In failing to exercise reasonable or slight care to intervene whatsoever to provide access to treatment for Mr. Brown.

97.   The unconstitutional misconduct described herein was objectively unreasonable and was undertaken deliberately, with malice and knowing disregard for Mr. Brown's clearly established constitutional rights.

98.   As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, Mr. Brown suffered deprivations of his rights secured by the Fourteenth Amendment to the United States Constitution.

99.   As a result, Mr. Brown suffered conscious pain, suffering, indignity, and loss of his aforementioned federal rights.  Mr. Brown's family has suffered the loss of Mr. Brown's life, loss of his love and support, mental anguish, emotional distress, attorney fees, and undue grief, and will likely suffer from the effects of the Defendants' actions now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL AND PUNITIVE DAMAGES from Defendants William Malcom, Jamal Singleton, Shannel T. McKellar, Lakeesha M. Palmer, Trent M. Evans, and Merete Enbusk.

100.   The Plaintiff is informed and believes that the Estate of D'Angelo Brown is entitled to ACTUAL, CONSEQUENTIAL AND PUNITIVE DAMAGES against Defendants William Malcom, Jamal Singleton, Shannel T. McKellar, Lakeesha M. Palmer, Trent M. Evans, and Merete Enbusk pursuant to their violation of Federal Civil Rights 42 U.S.C. 1983.

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

### FOR A SIXTH CAUSE OF ACTION
### AGAINST DEFENDANTS KATHLEEN POTTER, NP, ROXANNE SEROHI, NP, TAMISHA JOHNS, AND CATHY MAZYCK, *each in their individual capacity*
### (Violation of Federal Civil Rights 42 U.S.C. §1983 - Violation of Due Process / Failure to Provide Medical Care for a Serious Medical Need / Cruel and Unusual Punishment)

101.    The Plaintiff reiterates each and every relevant allegation stated above as if repeated verbatim herein.

102.    During the time period in question, Defendants Kathleen H. Potter, NP, Roxanne Serohi, NP, Tamisha Johns, and Cathy Mazyck were acting under the color or pretense of state law, customs, practices, usage or policy as nurses or nurse practitioners employed through Defendant Wellpath LLC to provide medical care within the Charleston County Detention Center and had certain duties imposed upon them with regard to Mr. Brown.  Additionally, during the time period in question, Defendants Kathleen H. Potter, NP, Roxanne Serohi, NP, Tamisha Johns, and Cathy Mazyck were well-aware that Mr. Brown suffered from serious medical conditions and rapidly declining health, requiring close and frequent monitoring, supervision, and medical intervention.  Additionally, Defendants Kathleen H. Potter, NP, Roxanne Serohi, NP, Tamisha Johns, and Cathy Mazyck were aware of Mr. Brown's constitutional rights, including his right to due process and access to proper and adequate medical care.

103.    At all relevant times, Mr. Brown had clearly established rights under the United States Constitution which included: (a) to be free from any punishment; (b) to be free from government conduct that shocks the conscience; (c) to be free from cruel and unusual punishment; (d) to be free from deliberate indifference to a substantial risk of serious harm; (e) to be free from state created danger; (f) to bodily integrity; and (g) to receive adequate medical care and to be free from deliberate indifference to medical needs.

104.    Defendants Kathleen H. Potter, NP, Roxanne Serohi, NP, Tamisha Johns, and Cathy Mazyck violated these clearly established rights in the ways described in summary form herein,

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

and in ways that will be uncovered through discovery and at trial.

105.     Defendants Kathleen H. Potter, NP, Roxanne Serohi, NP, Tamisha Johns, and Cathy Mazyck, were consciously indifferent and deliberately indifferent to Mr. Brown in the following particulars:

   a.  In knowingly, deliberately, and consciously failing to secure the necessary and/or appropriate medical attention, treatment or medications to Mr. Brown when doing so could have been easily accomplished;

   b.  In knowingly, deliberately and consciously failing to use even slight care and caution in safekeeping Mr. Brown;

   c.  In knowingly, deliberately, and consciously failing to secure reasonable, necessary and appropriate medical care to Mr. Brown - who had serious medical conditions which were open and obvious;

   d.  In knowingly, deliberately and consciously failing to sufficiently monitor Mr. Brown while he was detained despite knowledge of the severity of his condition;

   e.  In knowingly, deliberately and consciously failing to obtain adequate hydration and nutrition for Mr. Brown while he was detained despite knowledge of the severity of his condition, which included documented emaciation and starvation;

   f.  In knowingly, deliberately and consciously failing to transfer and/or refer Mr. Brown for emergency medical assistance at the appropriate time;

   g.  In knowingly, deliberately and consciously failing to protect Mr. Brown from harm;

   h.  In knowingly, deliberately and consciously failing to intervene or protect Mr. Brown from self-harm despite knowing that Mr. Brown was in a state of escalating psychosis, living in cell that was perpetually painted with feces and urine, and that Mr. Brown was eating his own feces; and

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

i.   In knowingly, deliberately and consciously failing to administer forced medications to Mr. Brown.

106.    The unconstitutional misconduct described herein was objectively unreasonable and was undertaken intentionally, with malice and a knowing disregard for Mr. Brown's clearly established constitutional rights.

107.    As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, Mr. Brown suffered deprivations of his rights secured by the Fourteenth Amendment to the <u>United States Constitution</u>.

108.    As a result, Mr. Brown suffered conscious pain, suffering, indignity, and loss of his aforementioned federal rights.  Mr. Brown's family has suffered the loss of Mr. Brown's life, loss of his love and support, mental anguish, emotional distress, attorney fees, and undue grief, and will likely suffer from the effects of the Defendants' actions now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL AND PUNITIVE DAMAGES from Defendants Kathleen H. Potter, NP, Roxanne Serohi, NP, Tamisha Johns, and Cathy Mazyck.

109.    The Plaintiff is informed and believes that the Estate of D'Angelo Brown is entitled to ACTUAL, CONSEQUENTIAL AND PUNITIVE DAMAGES against Defendants Kathleen H. Potter, NP, Roxanne Serohi, NP, Tamisha Johns, and Cathy Mazyck, pursuant to their violation of Federal Civil Rights 42 U.S.C. 1983.

## **<u>DEMAND FOR JURY TRIAL</u>**

**WHEREFORE**, the Plaintiff hereby requests a trial by jury on all of the issues that have been or may hereafter be raised in any of the pleadings.  Plaintiff further seeks judgment against Defendants for:

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

a.  actual and consequential damages as to each independent cause of action actual and consequential damages, per occurrence, as defined by the South Carolina Tort Claims Act as to Defendants Charleston County and Charleston County Sheriff's Office;

b.  actual and consequential damages as to Defendants Wellpath LLC, Drago, Patel, Malcolm, Potter, Serohi, Johns, Mazyck, Singelton, McKellar, Palmer, Evans, and Enbusk;

c.  punitive damages as to Defendants Wellpath LLC, Drago, Patel, Malcolm, Potter, Serohi, Johns, Mazyck, Singelton, McKellar, Palmer, Evans, and Enbusk;

d.  reasonable attorney fees, costs, and expenses as to the claims asserted against Defendants Malcolm, Potter, Serohi, Johns, Mazyck, Singelton, McKellar, Palmer, Evans, and Enbusk; pursuant to 42 U.S.C. § 1988 and other applicable law;

e.  the costs and disbursements of this action;

f.  such other and further relief as this Court deems just and proper.

> Respectfully Submitted,
>
> s/ *James B. Moore III*
> James B. Moore III, SC Bar #74268
> Scott C. Evans, SC Bar #77684
> George W. Bryan III, SC Bar #104088
> Evans Moore, LLC
> 121 Screven Street
> Georgetown, SC  29440
> Telephone: (843) 995-5000
>
> **Counsel for the Plaintiff**

March 28, 2024
Georgetown, SC 29440

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

# Exhibit 1

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

NEKEYA JONES, As Special Administrator )
of the Estate of D'ANGELO D. BROWN, )
                                         )
               **Plaintiff,**        )    **AFFIDAVIT OF EXPERT WITNESS IN**
                                           )     **MEDICAL MALPRACTICE CASE**
**v.**                                      )       **§§ 15-36-100, 15-79-125**
                                           )
**Wellpath, LLC, et al.**             )
                                           )
            **Defendants.**     )
_____ )

I, Edward C. O'Bryan III, MD, being duly sworn depose and says:

1. I am a physician, licensed by the State of South Carolina and the appropriate regulatory agency having jurisdiction over the practice of my profession in the location in which I practice.

2. I am Board Certified by the American Board of Internal Medicine, a national association which administers written and/or oral examinations for certification in the area of practice and specialty about which this opinion on the standard of care is offered.

3. I have actual professional knowledge and experience in the specialty and area of practice in which this opinion is given, as a result of my having been regularly engaged in the active practice in the area of specialty and practice for at least three (3) of the last five (5) years immediately preceding this opinion, including serving as the Executive Vice President of Clinical Operations for Wellpath, LLC.

4. This affidavit is made pursuant §15-36-100 of the 1976 SC Code of Laws, which requires that this affidavit must specify at least one negligent act or omission claimed to exist and the factual basis for each claim based on the available evidence at the time of the filing of the affidavit.

5. The evidence made available to me, for my review, prior to the making of this affidavit, include the records for D'Angelo Brown from Wellpath, LLC, the Charleston County

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

Coroner's Office, Charleston Dorchester Mental Health, Charleston County EMS, the Medical University of South Carolina, and the Charleston County Detention Center. Additionally, I anticipate the opportunity to review additional medical records and documents pertaining to this matter and reserve the right to supplement my opinion.

6. Through my education, training, and experience as set forth above, I am familiar with the applicable standard of care practiced by health care providers generally, including nurses, nurse practitioners, and physicians who practice medicine and evaluate adult patients in a detention center setting.

7. I have reviewed the records as submitted to me, and based upon my expertise, as set forth above, it is my opinion to a reasonable degree of medical certainty that the medical staff, including nurses and physicians, employed by and through Wellpath, LLC working within the Charleston County Detention Center committed the following negligent, grossly negligent, willful, wanton and/or reckless acts and/or omissions, which constituted a failure to comply with the appropriate standard of care:

    a. In failing to conduct a thorough health assessment of Mr. Brown;

    b. In failing to exercise reasonable or slight care to administer Mr. Brown's necessary Trazodone, Depakote, or Zyprexa from September 29, 2022 until he was found unresponsive on December 21, 2022;

    c. In failing to exercise reasonable or slight care to administer stabilizing medications to Mr. Brown once it was reported to the medical staff by the correctional staff that it was "not advisable to open the flap" to his cell on October 22, 2022 due to behavior which was secondary to Mr. Brown's continued psychiatric and medical deterioration;

2 of 4

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

d. In failing to recognize Mr. Brown's psychiatric decision making incompetence related to medication refusal;

e. In failing to exercise reasonable or slight care to stabilize Mr. Brown's psychiatric condition when he was noted on November 8, 2022 to be actively psychotic and to have been "erratic and bizarre for several months," including the notation that he had been "smearing feces in cell" for several months;

f. In failing to exercise reasonable or slight care to stabilize Mr. Brown's acute psychiatric and medical condition and/or transfer him to a facility capable of treating Mr. Brown when he was charged on December 12, 2022 to be suffering from "continued deterioration" including but not limited to "significant weight loss." Mr. Brown was further observed to be "laying on the floor" and continuing to engage in "smearing feces." Mr. Brown was also observed on this date to be "exhibiting bizarre behavior, confused, delusions and disorganized thinking," and to be "currently in his cell that is covered with urine and feces;"

g. In failing to exercise reasonable or slight care to intervene when it was documented that Mr. Brown was refusing to eat;

h. In failing to exercise reasonable or slight care to intervene to prevent Mr. Brown from ingesting feces ("DURING A SECURITY CHECK INMATE WAS SEEN EATING FECES AND HE HAD IT ALL IN HIS TEETH");

i. In failing to exercise reasonable or slight care to timely transfer Mr. Brown to an emergency department or outside medical facility for advanced medical care in light of his obvious and well-known deteriorating physical and mental conditions;

j. In failing to exercise reasonable or slight care to prevent and/or treat Mr. Brown's extreme malnutrition with temporal wasting;

3 of 4

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

k.  In failing to exercise reasonable or slight care to prevent and/or treat Mr. Brown's dehydration;

l.  In failing to exercise reasonable or slight care to prevent and/or treat Mr. Brown's decubitus ulcer;

m.  In failing to exercise reasonable or slight care to treat Mr. Brown's multiorgan failure;

n.  In failing to exercise reasonable or slight care to intervene whatsoever to provide any reasonable treatment for Mr. Brown's declining health.

8.  It is my opinion that D'Angelo Brown's deterioration and death were proximately caused by the Defendants' gross deviations from the standard of care.

Edward C. O'Bryan III, MD, MBA

SWORN TO before me this
**3** day of **March**, 2023

_____ (L.S.)
Notary Public for South Carolina
My commission expires: **2/7/2033**

4 of 4

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

# Exhibit 2

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

# PSYCHIATRIC REPORT

**NAME OF DECEDENT:** D'Angelo Brown
**DATE OF BIRTH:** February 8, 1994
**DATE OF DEATH:** December 29, 2022
**AGE AT DEATH:** 28 years-old
**DATE OF REPORT:** November 5, 2023

**INTRODUCTION:** D'Angelo Brown was a male with a known history of severe mental illness, diagnosed previously with Schizophrenia and subsequently with Schizoaffective Disorder, who was incarcerated in the Charleston County Detention Center from August 10, 2022 until December 21, 2022. He was found unresponsive in his cell on December 21, 2022 and taken emergently to Medical University of South Carolina, where he was hospitalized for treatment of sepsis. He died of severe brain injury and multiple organ failure. His death was ruled by the coroner to be a homicide. I am asked by James Moore and Scott Evans with the firm Evans Moore, attorneys hired by Mr. Brown's family, to review his records to determine if Charleston County, Charleston County Sheriff's Office, and Wellpath staff deviated from the standard of care and, if so, whether this deviation directly led to Mr. Brown's demise.

**CONFIDENTIALITY:** The nature, purpose and non-confidential aspects of this report are clear to the plaintiffs and their attorneys. I have been asked to prepare a report and might be called upon to testify about my findings. It is clear that my involvement constitutes solely a record review and expert testimony and, thus, a physician-patient relationship, including treatment, shall not exist.

**SOURCES OF DATA:**

1. Amended complaint for estate of D'Angelo Brown v. Charleston County, Charleston County Sheriff's Office, and Wellpath.
2. Charleston County EMS record, dated October 7, 2021 to December 21, 2022.
3. Charleston Dorchester Mental Health records for D'Angelo Browne, dated May 6, 2022 to August 5, 2022.
4. Coroner's report for the D'Angelo Brown, date of death, December 29, 2022, investigator Stacey Toto.
5. Amended autopsy report for D'Angelo Brown, signed by Angelina Phillips, MD, dated February 2, 2023.
6. Correspondence with Charleston County regarding D'Angelo Brown.
7. Al Cannon Detention Center incident report records for D'Angelo Brown.

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

8. Wellpath medical records for D'Angelo Brown, dated October 8, 2021 to December 29, 2022.
9. Medical University of South Carolina competency evaluation by Sheresa Christopher, Ph.D., and Alicia Gibson, Psy.D., dated December 15, 2022.
10.     Medical University of South Carolina records for D'Angelo Brown, dated September 9, 2021 to September 29, 2022.
11.     Wellpath mortality report for D'Angelo Brown, dated January 17, 2023.
12.     Wellpath mental health nursing protocol, dated April 2022.
13.     Wellpath hospital and specialty care policy, dated May 13, 2021.
14.     Wellpath informed consent and rights to refuse policy, dated November 16, 2020.
15.     Wellpath emergency services policy, dated November 16, 2020.
16.     Wellpath emergency psychotropic medication policy, dated November 16, 2020.
17.     Wellpath medication services policy, dated December 29, 2021.
18.     Kaplan and Sadock's Synopsis of Psychiatry: Behavioral Sciences/Clinical Psychiatry, Eleventh Edition, 2015.

**BRIEF REVIEW OF COLLATERAL DATA:**

**Amended complaint for estate of D'Angelo Brown v. Charleston County, Charleston County Sheriff's Office, and Wellpath**:

Mr. Brown was born and raised in Charleston, South Carolina. He had a long and well documented history of mental illness, including schizophrenia and bipolar disorder and had received antipsychotic medications, including Risperdal, Haldol, and Zyprexa, a mood stabilizer, Depakote, an antidepressant, mirtazapine, and medication to treat side effects, Benztropine. Wellpath was contracted to provide medical care to be approximately 1000 detainees located within the jail facility. The plaintiff alleged, defendant, Charleston County, and Charleston County sheriff's office were aware Wellpath provides substandard cares to inmates at the time they contracted with Wellpath and were aware they were providing "woefully inadequate" care to their inmates yet maintained their relationship with Wellpath. On August 10, 2022, Mr. Brown was arrested and booked at the Charleston County Detention Center. At the time of his booking, his history of mental illness which required extensive medication management for stabilization was well known to the defendants. On August 14, 2022, he asked to be placed on his mental health medication, but this request was not heeded. On August 14, 2022. He was noted to be "combative, paranoid, rambling, and nonsensical." On August 25, 2022 he reported to staff he was "really scared for [his] life." His physical and mental health rapidly

2

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

deteriorated while he was detained in an isolated cell within the Behavioral Management Unit. On September 2, 2022, it was reported he was refusing meals, naked, and agitated. On September 6, 2022, it was noted he was "smearing feces, and exhibiting off and unusual behavior" and his cell was "filled with water, urine, and feces." On September 7, 2022 he was reported to be "yelling, uncooperative, paranoid" and was observed banging on the wall of his cell yelling "unintelligible words and phrases." On September 8, 2022, correctional staff noted he was "still in the same condition, naked, yelling, banging on the door, cell filled with water/feces, and urine." On September 9 staff noted he appeared to have "lost a lot of weight" and "needs to be seen by mental health/medical badly." On September 10, 2022, it was noted his "hygiene and appearance have been declining tremendously" and that he was refusing to eat and "stands in his cell naked and plays with water." on September 11, it was observed he was "disorganized and disoriented" and lying in urine. He was continuing to refuse to eat and had not been provided any access to prescribe antipsychotic medication. That same day he was transported to MUSC via EMS due to altered mental status. It was reported to MUSC staff that he had been "laying in his urine, not eating, or drinking, evidenced severe agitation, and picking paint off the walls." His skin was noted to be "covered in paint chips, and dried feces."

Mr. Brown was hospitalized at MUSC from September 11 to September 29, 2022. He was provided Zyprexa, Klonopin, Depakote. He was also prescribed antibiotics. At the time of discharge, it was reported his agitation was significantly improved, but he would require occasional intramuscular injections as needed, and was discharged with Depakote, Klonopin, Trazodone, and recommended intramuscular injections of antipsychotics. He never received these prescribe medications once he returned to Charleston County Detention Center.

It is alleged Wellpath falsely documented his presence at the detention center during the time he was in MUSC. Nursing staff would document daily he received he was refusing medical care, even though he was not present at the detention center. It is also alleged the correctional officers falsely documented the records, stating he received his meal tray and juice daily when, in fact, he was not present in the detention center during that time.

Without his medications, Mr. Brown significantly deteriorated. On September 29, 2022, Mr. Brown was placed in a restraint chair for roughly 130 minutes for being uncooperative, on October 3, 2022. He had urine and feces in his cell, on October 30, October 31, and November 5, it was noted his cell

3

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

window was covered in feces, on November 6 he was extracted from his cell for cleaning as his cell had been "heavily soiled with feces." On November 8, 2022 he was observed "naked, growling, disorganized with flight of ideas." His cell was again described as being covered in urine and feces. He was unable to provide answers to basic questions. It was noted he was not sleeping, not eating, and smearing feces for several months. On November 11, 2022 it was reported that he had been observed "eating feces, and he had it all in teeth." On November 12 it was reported he was yelling and "jumping around the cell all night shift." On December 11, 2022 it was reported his cell was covered with feces and urine and correctional staff purportedly made a request to be transferred to the medical unit so he could be housed in medical for observation. This did not occur.

On December 14, 2022, Mr. Brown underwent a competency evaluation by Sheresa Christopher, Ph.D., and Alicia Gibson, Psy.D. It was performed virtually due to his condition. During this evaluation, he was noted to be rocking back-and-forth, opening his mouth and pulling on his ears, and striking the cell wall. They noted he and his cell were covered in feces. They ended the evaluation early as they could not fully assess him given his presentation and determined that he lacked mental capacity to stand trial due to psychosis. They determined his symptoms were consistent with schizophrenia and treatable with psychiatric medication. On December 15, 2022, Mr. Brown was ordered to undergo treatment through the South Carolina department of mental health for up to 180 days to restore his competency to stand trial.

On December 19, 2022, it was noted that Mr. Brown had "smeared feces and urine about his cell walls, doors, floor, ceiling, and body" and was refusing medication. On December 21, 2022, at approximately 6 AM, Sergeant Singleton and several nurses entered his cell where he was found unresponsive and he was transferred to the emergency room at MUSC for life-saving intervention. He never regained consciousness and was pronounced dead at MUSC on December 29, 2022. On March 20, 2023, the Charleston County coroner, Bobbi Jo O'Neal, determined Mr. Brown died by sepsis from E. coli, septic shock, and multiple organ failure due to "gross medical neglect" and the manner of death was deemed to be homicide.

The plaintiffs allege, the defendants acted with conscious and deliberate, indifference, blatantly, disregarding his health and life, by failing to intervene on his behalf, and ensure he had access to reasonable medical condition. As a result, he suffered numerous personal injuries, conscious pain, and suffering, and eventually died.

4

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

**Charleston County EMS record, dated October 7, 2021 to December 21, 2022**:

EMS called for Behavioral/Psychiatric episode. Chief complaint, excited delirium and secondary complaint violent behavior. Delusional and combative. When EMS arrived, police informed them he had been verbally and physically combative when they detained him during a possible armed robbery and **due to his behavior and statements, they had requested EMS as it appeared he might have delusions and possibly be drug intoxicated.** While in restraints, he attempted to break free and was **viewed flailing about and screaming. His temperature was markedly elevated at 101.6 as was his blood pressure and respiratory rate**. EMS applied ice packs bilaterally to his carotid and utilize the rear cab air conditioning system. He was transported to the ER. While transported he was "**extremely verbally combative," screaming racial obscenities, spitting, and declaring, "he was the devil."** He was taken to Trident ED.

On December 21, 2022, EMS was called to the Charleston County Detention Center for Mr. Brown being bradycardic and hypotensive and unresponsive. He was noted to have a history of rhabdomyolysis and schizophrenia and hypertension. When they arrived at 6:35 he was nonverbal but conscious, lying on an exam table and trying to sit up. **He was not acknowledging anyone's presence and was unable to follow commands. Nursing reported they found him unresponsive in bed, covered in feces. "Not one individual at the prison was able to inform EMS when the last time they saw the patient normal." They reported he had not been compliant with his medication for schizophrenia. He coded in the ambulance, and they had to do advanced cardiac life support.** Femoral pulses returned, and were thready but present when they arrived at MUSC ED. **"While at the hospital, the police changed story again, stating that he was not found on the ground but leading on the bed."**

**Charleston Dorchester Mental Health records for D'Angelo Browne, dated May 6, 2022 to August 5, 2022**:

Mr. Brown was noted to be of a family of five, with four children in the family. He was never married. He was homeless, living on the streets or in the park. He was unemployed. When he was initially evaluated on May 6, 2022 he reported four days before he came home from jail and "everybody keeps on telling me to go to mental health, so I can restart my medicine."

5

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

He had been incarcerated from October 2021 to April 2022. While incarcerated he had been provided Remeron and Zyprexa, which he had been taking consistently and felt they were helpful, "even though he isn't sure what the Zyprexa is doing for him." He had been without his medication for 2 days. He reported "last time I started, I was a kid, and the medication didn't help me, I'm tired of getting in trouble." He reported a history of **ADHD, Bipolar, Schizophrenia, PTSD. He admitted to daily auditory and visual hallucinations, "paranoid all the time" and "still thinks most people are trying to kill him." He reported he was prone to get in trouble with the law because of his paranoia. He admitted to insomnia and increased energy.** He admitted his mental health problems also affected the quality of his family relationships. He was seeking work and very dissatisfied with being unemployed. Currently he was spending time with nieces and nephews, watching TV, playing outside, temporarily residing with his brother.

Mr. Brown last received outpatient mental health care through Charleston Mental Health Center in 2011. He reported prior treatment with Concerta, Remeron, Risperdal, Haldol, Thorazine, Cogentin. He reported **Haldol oral was helpful,** as well as Cogentin. He disliked the Haldol shot, because "didn't like the way it made him feel."

He claimed a history of being shot in the face September 2021. He also witnessed uncle being shot and killed. He witnessed his best friend being killed. He used to be beat and abused as a child. He was bullied for being in "slow class."

He reported use of cannabis since the age of 12 and cocaine since the age of 18 or 23 (unclear).  He reported daily use. He had been clean and sober since October 2021 because he had been incarcerated. He had attended AA while in jail.

He had two younger brothers and a younger sister, to whom he had "all right" relationship, and a mother who was frustrated due to his incarcerations. He had three children, ages, seven and seven and six years old, who he hadn't seen in "forever." His father was "dead to me. He's just a crackhead who abandoned me as a baby." His uncle had been shot in his presence when he was young and "that's when my PTSD first kicked in." He had cousins with schizophrenia.

On mental status exam, he was noted to be well groomed, with normal hygiene, cooperative, and calm, normal eye contact, with appropriate affect.

6

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

His mood was depressed. His thought process was logical and goal directed, and his speech was normal rate and tone. He had **occasional religious and paranoid and grandiose delusions. He thought God spoke through him, believed he had superpowers, and also had paranoia.** He had no prior history of suicidal or homicidal ideation. He had **auditory hallucinations of God speaking to him and through him, visual hallucinations daily, and tactile hallucinations of bugs.**

He was diagnosed with **Schizoaffective Disorder, Bipolar type** and PTSD. The plan was to continue his Remeron and Zyprexa. He was prescribed **Zyprexa 15 mg daily, Remeron 45 mg daily and Trazodone 100 mg at bedtime.**

When seen by Victoria Giblin via telemedicine on May 18, 2022, he admitted he was not taking his medication because he was not aware of the medication had been sent to his pharmacy. He was encouraged to call the pharmacy to get them filled. He reported anxiety and depression and difficulty sleeping. He admitted **he wanted to harm people if they irritated him. He was seeing signs from God and saw someone's name in the sky in green and found out later that person had died. He also was hearing noises like animals being butchered, which was keeping him awake at night**. He was stressed at work and wanted to change jobs because he disliked landscaping. He admitted to smoking weed at night to help him sleep. He denied any other substance use.

When seen by Ms. Giblin via telemedicine on June 20, 2022, he remained off his medication. He said it was because he went to the wrong pharmacy. He answered questions but was not very talkative. He had interviewed at Sonic, was moving from house to house because he did not have stable living, was trying to stay positive, discussed how his trauma impacted him, and reported lots of feelings of regret and low view of self. He denied substance use.

He missed his next appointment and did not respond to phone calls to reschedule. He was discharged from their care on August 5, 2022.

A treatment plan was signed by Victoria Giblin, MA, June 21, 2022 and Michael Kassur, MD June 22, 2022.

**Coroner's report for the D'Angelo Brown, date of death, December 29, 2022, investigator Stacey Toto**:

7

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

On December 29, 2022, the Charleston County corners office was notified by the medical University of South Carolina of a death in the ICU. Mr. Brown has been discovered unresponsive at the Al Cannon Detention Center, and his behavioral management unit cell on December 21, 2022. He arrived at the MUSC ED unresponsive, intubated, and hypothermic. Profuse brain swelling was noted. He tested positive for E. coli. He remained unresponsive until he was pronounced deceased on December 29, 2022. Records from several facilities, including the Al Cannon Detention Center (ACDC), Wellpath, and the medical University of South Carolina were reviewed, as well as video and body cam footage from ACDC. **Mr. Brown had a known history of hypertension and schizophrenia. During his incarceration, he refused medication and his condition worsened. Medical personnel and detention staff noted bizarre behavior, including smearing feces on the wall of his unit.** On November 8, 2022, medical personnel evaluated him and **recommended he be hospitalized.** His condition continues to deteriorate and on December 12, 2022 **medical personnel again recommended he be emergently hospitalized**. **Cause of death was determined to be E. coli sepsis with septic shock and multiple organ system failure due to gross medical neglect, and the manner of death was best deemed homicide.**

**Amended autopsy report for D'Angelo Brown, signed by Angelina Phillips, MD, dated February 2, 2023**:

The autopsy report was amended due to additional investigation by the coroner's office, which reflected that a component of neglect played a role in the decedents deteriorating health, which led to his death. The date of death was noted to be December 29, 2022 and date of autopsy was January 3, 2023. Cause of death remained E. coli sepsis with septic shock and multiple organ system failure, but the manner of death was changed from natural to homicide.

On autopsy, he was noted to have clinical presentation consistent with hypotension, dehydration, acute kidney and liver injury, and sepsis with septic shock and multiple organ system failure, with resultant anoxic brain injury and cerebral edema, pulmonary edema, temporal wasting, multifocal skin breakdown with a decubitus ulcer and erythema of his upper back and sacral region, hepatic congestion, gallbladder wall edema, pyomyositis at chest IV site, and ischemic bowel injury.

**Correspondence with Charleston County regarding D'Angelo Brown**:

8

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

On November 30, 2022, Megan Ehrlich, Chief Public Defender, emailed William Malcolm, Director of Mental Health for Charleston County Sheriff's office, regarding her concern about her client, Mr. Brown. **She stated she had gone to visit him in the BMU and he was naked in his room and it was smeared with feces and "my understanding is that this is how he has been living for quite some time based on talking to BMU officers." She reported he had never been seen by a psychiatrist** and she "did not have much luck" trying to speak to the psychiatrist while she was there.

On December 13, 2022, Mr. Malcolm responded to Ms. Ehrlich informing her he was still in the same cell and the condition was as she described. Previously, the deputies were able to get him into another empty cell and clean the old self but at this time there were no empty cells to move them to. They tried to take him to the medical unit to shower, but he refused.

On December 13, 2022 Ms. Ehrlich said **Dr. Patel may attempt to have him hospitalized based on her assessment of his condition.** The appointment for his competency evaluation was December 14, and it was going to be done by MUSC forensic psychiatry virtually. Ms. Ehrlich expressed concern that even if he were viewed incompetent the waiting list to get him admitted to the hospital for restoration was long and **"the quickest way to try and get him in a more healthy state would be if Dr. Patel is able to commit him."**

**Al Cannon Detention Center incident report records for D'Angelo Brown**:

On August 10, 2022, a mental health referral was placed because he was withdrawn, isolating and had poor hygiene and outside jail received mental health treatment, but would not disclose where or what treatment he was receiving.

On August 11, 12 and 13, 2022, Mr. Brown refused to attend a bond hearing.

On August 14, 2022, Detention Center staff attempted to get him to shower because his roommate complained he stinks. He claimed he could not ambulate and needed a wheelchair, but detention officer countered this by informing him he had been cleared by medical. Mr. Brown stated he wanted his mental health meds he was taking last time he was in the jail. They cleaned his cell.

9

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

On August 15, 2022, a Mental Health referral was placed because he was **belligerent, demanding, had poor hygiene, and was acting bizarre**. **He was refusing to shower, and "demanding to be put on mental health meds that he was on last time he was in jail."**

On September 10, 2022, the Emergency Response Team reported to the Behavioral Management Unit to provide security as detention and medical staff were attempting to transport him from his cell. He was resistant, but they were able to successfully get him strapped into a gurney for transport without any use of force. **The decision was made to transport him to the hospital, because he had been hostile, aggressive, exhibiting poor hygiene, confused, hallucinating, bizarre in his behavior, odd body movement, talking to himself and yelling, not eating, not responding to officers. He was noted to stand in his cell naked and play with water and not communicate with unit deputies. His mental state had been deteriorating for some time. The medical provider (Debbie) made the decision to send him to the hospital.**

On September 17, 2022, he asked to be removed from four-point restraints to use the bathroom. Once staff and officers did this and he was standing, he then refused to ambulate to the restroom. 5 to 10 minutes was spent trying to convince him to continue walking to the bathroom and ultimately the decision was made to use force to get him back into restraints. This required much effort by officers and MUSC security.

On September 19, 2022, Mr. Brown attempted to chew the dense cloth material of the spit mask to swallow it.

On September 25, 2022, Mr. Brown attempted to spit on the officers and they placed a spit mask on him. In the process he tried to swing an EKG device at them, and use of force was required.

On September 27, 2022, at approximately 0725 security had to respond to his MUSC room because he was threatening to throw urine on staff. He spit at the officer, and they had to use force to get a spit shield on his face. He also attempted to bite nurses as an attempted to clean him. He also attempted to bite nurses as they attempted to clean him. He was in four-point restraints.

On September 28, 2022, Mr. Brown was being fed lunch by the tech at MUSC because he was in four-point restraints due to his previous combative

10

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

behavior. When the officer attempted to get the TV remote from him, he spit in the officer's face. Bodily force was utilized to get the remote back. All actions were recorded on the body camera.

On September 29, 2022, at 12 PM, Mr. Brown resisted transport from MUSC back to jail. He was upset he was being discharged from the hospital and refused to get dressed or stand when the transport team arrived. They had to use restraints and bodily force to get him to comply. The incident was recorded on the body cam.

On December 16, 2022, in the Behavioral Management Unit at approximately 845 Mr. Brown was making random muttering and charged at one of the officers, Deputy Kyle Smith, in a violent manner. Other officers were called to assist and were able to get him back in his cell. The incident was captured on body camera.

On December 21, 2022, at approximately 0600 Sergeant Singleton and Sergeant Walker-Ryner were preparing to transfer Mr. Brown from his cell to another cell so they could inspect and clean the cell. When they approached his door and called out to him, he did not respond and they decided to call medical staff. Medical staff assessed him and transported him by wheelchair to the medical department for further assessment. EMS was subsequently called.

**Wellpath medical records for D'Angelo Brown, dated October 8, 2021 to December 29, 2022**:

Mr. Brown was noted to have schizophrenia on October 8, 2021.

When reincarcerated October 8, 2021, he refused screening by intake nurse, and became agitated. He was noted to be off of his medication. A Mental Health referral was placed. On October 10, 2021, nursing noted he was agitated, aggressive, banging on the door, screaming for help.

On October 14, 2021, Elizabeth Leonard noted he had a diagnosis of **schizophrenia,** and he was **"known to me from previous incarcerations."** She noted he was on Remeron, Risperdal and Cogentin, and was requesting his psychiatric medications to be provided while incarcerated because he was "having problems with responding appropriately to deputy orders." She **ordered Risperdal 3 mg twice daily, Remeron 45 mg at bedtime, and Benztropine 1 mg twice daily**.

11

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

On October 18, 2021, he cooperated with a mental health assessment. In 2010 he had been hospitalized for psychiatric purposes at MUSC. His outpatient psychotropic regimen included Risperdal, Remeron, Concerta, Zoloft, Cogentin.

Between October 9 and October 30, 2021, there were **numerous days he refused medication.**

On October 22, 2021, staff noted he was sleeping poorly and was complaining of depression and anxiety. He was noted to have **manic behavior with pressured speech and loose associations in his thought process**. He reported **Haldol had helped him in the past, and he asked for this medication.** On October 22, 2021, Elizabeth Leonard added **Haldol 10 mg at bedtime and Depakote 500 mg twice daily. On October 27, 2021, she ordered Haldol decanoate 150 mg to be injected monthly.**

On October 24, 2021, he submitted a request to medical that his medication be given with food because it made him sick on an empty stomach.

On October 29, 2021, he received a **Haldol decanoate 150 mg injection in his right deltoid. He received the injection again on November 24, 2021**.

On November 7, 2021, Elizabeth Leonard increased the Benztropine to 1 mg twice daily.

On November 20, 2021, he stated he had questions about his mental health medication and R. Serohi, nurse practitioner, stated she would send an email to Dr. Leonard regarding this. He also requested a snack bag at night due to the medication upsetting his stomach.

On November 23, 2021, he submitted a grievance to medical because he didn't get his medication the previous night. He was on **mirtazapine 45 mg, Benztropine 1 mg twice daily, Risperdal 3 mg twice daily, Depakote 500 mg twice daily, Haldol 10 mg at bedtime, and haldol decanoate 150 mg injected monthly.**

Between November 3, 2021 and November 27, 2021 there were numerous days he refused medication.

12

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

Between December 1 and December 30, 2021 there were numerous days he refused medication. It tended to be Risperdal, Depakote, Cogentin.

Between January 1 and January 31, 2022 there were a number of days he refused Risperdal, Depakote, Cogentin.

On February 17, 2022, he was noted to be on Haldol 10 mg at bedtime, mirtazapine 45 mg at bedtime, Benztropine 2 mg at bedtime, Depakote, 1000 mg at bedtime, and Risperdal 6 mg at bedtime.

In the month of February, he refused a number of doses of Risperdal, Depakote, and Cogentin, and occasionally refused Remeron and haldol.

On March 9, 2022, he reported, paranoia, anxiety, and decreased appetite. He was upset that his medication had been "doubled" without his consent, which seemed to be related to Elizabeth Leonard changing all of his medication to be given at bedtime. He complained of side effects from his medication. he asked his medication to be reduced. He **admitted to paranoia, and also hearing voices "screaming" at times.**

In the month of March, he refused numerous doses of Risperdal and Haldol. He refused only three doses of Depakote, and two doses of Remeron.

On April 1, 2022, he was noted to be on Haldol 10 mg at bedtime, Remeron 45 mg at bedtime, and Risperdal 6 mg at bedtime.

On April 8, 2022, Risperdal and Depakote and Haldol seemed to have been discontinued by Elizabeth Leonard, and he was started on Zyprexa 15 mg at bedtime.

In the month of April 2022, he refused numerous doses of Zyprexa, and only a few doses of Haldol, Remeron, and Risperdal (which might have been related to them being discontinued early in the month).

On August 10, 2022, **an emergency mental health referral was initiated because he informed staff he had schizophrenia and had not taken medication since he was last incarcerated**. He appeared **slightly disorganized and paranoid**. He reported he had been on Risperidone, Remeron, and Cogentin.

On August 14, 2022, R. Serohi, nurse practitioner, attempted to interview him, but he was **combative, paranoid, poor historian. He was rambling**

13

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

**and guarded.** He claimed he could not walk, and it appeared to her he just wanted to stay in the infirmary instead of returning to his unit. He stated he had mental health issues but had not been taking his medication because "you need money for those medicines." **She noted he had an emergent mental health referral placed on August 10, 2022, but had not been evaluated yet.**

On August 15, 2022, Chi Anderson, MHP, evaluated Mr. Brown. He was noted to have a **psychiatric history of schizophrenia, and not taking any of the medications he had been prescribed when last incarcerated, which included Risperdal, Cogentin, and Remeron.** He requested to be seen by mental health. He was noted to be **rambling and mumbling and difficult to understand. He was calling the MHP by another person's name. He had disorganized speech and disorganized thoughts and was exhibiting bizarre behavior with a flat facial expression**. The impression was he had **schizophrenia** and Anderson referred him to be seen by the psychiatrist.

On September 6, 2022, Chi Anderson, MHP, noted officers reported Mr. Brown **smearing feces all over his cell door, and exhibiting odd and unusual behavior. He continued to have disorganized speech and thought and was rambling and mumbling and difficult to understand. He was referred to the psychiatrist for further evaluation.**

On September 7, 2022, Dr. Johanes Dalmasy attempted to interview him in his BMU cell, but he was **yelling, uncooperative, paranoid and unable to provide any useful information**. **He began banging on the wall and "yelling/rambling unintelligible words and phrases… psychotic presentation."** Dr. Dalmasy noted that he would likely benefit from antpsychotic medication's but "his community psychiatric history is unknown at this time." **Dr. Dalmasy planned to obtain community mental health records.**

On September 11, 2022, D. Igwilo, nurse practitioner, was called by security to assess Mr. Brown in the BMU. **He was lying in water and urine. He appeared disorganized and disoriented. Staff reported he had not eaten for three days. He could not respond and would not follow commands or maintain eye contact. He was noted to have a history of schizophrenia and not on any psychotropic medication since admission. He was combative and agitated. He was sent to the ED due to "altered mental status and acute psychosis."**

14

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

On September 13, 2022, he was noted to have unspecified disorder of adult personality and behavior, as well as encephalopathy and altered mental status and rhabdomyolysis and UTI.

The MUSC hospital records and discharge summary dated September 29, 2022 were included in Wellpath records. It noted his diagnosis of **schizophrenia and his initial presentation with auditory and visual hallucinations, delusions, and threats to kill those in his room**. He was **followed by psychiatry throughout his hospitalization**. A correctional officer who reportedly knew Mr. Brown well stated he had not behaved this way in the past. **The psychiatric providers contacted Charleston mental health and his mother for collateral information. They also attempted to contact medical staff at Charleston County detention center using the phone number provided by the correctional officer but "no one has been able to be reached at this number so far." The psychiatric consultants reviewed the records they obtained from the correctional facility and determined his behavior was due to primary psychosis and being off of antipsychotics.** He initially had required **intramuscular Haldol and soft restraints and initiation of Zyprexa and Klonopin.** During his hospitalization he was **weaned off Klonopin and transitioned to Depakote**. His agitation significantly improved. The **recommended plan was maintaining oral Zyprexa 10 mg twice daily with intramuscular Zyprexa to be provided as back up if he refused and continue Depakote 1000 mg twice daily. His discharge meds were Depakote 1000 mg twice daily, Zyprexa Zydis 10 mg twice daily, Zyprexa 10 mg injection twice daily, and trazodone 50 mg at bedtime. It was recommended he be seen on follow up by the correctional physician for schizophrenia**.

On September 29, 2022, he returned from the hospital where he had been treated for Schizophrenia, acute encephalopathy, hypertension, acute renal insufficiency, rhabdomyolysis, ketoacidosis, and hepatitis. **He returned with a prescription for Zyprexa 10 mg twice daily and Divalproex 500 mg twice daily.** it was noted he had not been compliant with medication as he had **"questionable ability to understand disease process**." It was noted by the nurse practitioner D. Scuderi that it was **likely he was not going to be compliant** as he stated he doesn't need medication and **"questionable if patient can understand disease process and risk that were explained today."**

15

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

On September 29, 2022, Kathleen Potter, nurse practitioner, evaluated him. **He refused to give any details about his mental illness, instead saying that she could look in the records because "it's all in there."** Ms. Potter reviewed the medication she was taking while hospitalized at MUSC. It does not appear from her note that she reviewed the MUSC records themselves. She also did not review his past records as **she diagnosed him with "psychosis unspecified with unspecified substance use" and stated his "more primary diagnosis at this time is antisocial personality disorder."** She ordered Depakote 1000 mg twice daily and olanzapine 10 mg twice daily. On September 30, 2022 she ordered trazodone 50 mg at bedtime.

On September 29, 2022, the Zyprexa order was changed to 10 mg intramuscularly to be given if he refused oral dose of Zyprexa. Also, detention center staff was to contact medical staff if he refused oral medication. Depakote and trazodone were discontinued. He never received Zyprexa intramuscular injections.

On October 3, 2022 Chi Anderson MHP conducted a face-to-face wellness check. Mr. Brown had just returned from MUSC. **Mr. Brown didn't want to talk with anyone unless it regarding going back to the hospital. He was noted to be very aggressive and agitated.**

On October 6, 2022, he was observed by staff standing up naked in his BMU cell. He waved off staff and refused to answer questions.

In the months of September, October, and November many doses of Trazodone, Zyprexa, and Depakote were refused.

On November 8, 2022, Dr. Patel evaluated Mr. Brown. She was asked to see him **for initial psychiatric evaluation to consider emergent hospitalization. She noted he had been in the BMU for several months due to bizarre behavior.** She noted a **disorganized thought process with bizarre presentation each time mental health had evaluated him.** She reviewed Kathleen Potter's progress notes on September 7 and September 29, 2022. **Ms. Potter had believed his primary illness was personality disorder and provided trazodone, Depakote, Zyprexa. Dr. Patel noted intramuscular Zyprexa had been ordered if he refused oral medication but intramuscular Zyprexa was not in the MAR and a second opinion from an MD had not been obtained and IM Zyprexa had never been administered.** Dr. Patel noted there was no forced medication protocol in the facility and given his

16

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

MAR reflected consistent refusal of medication **she discontinued all psychotropics. She recommended involuntary commitment to the state hospital. Dr. Patel made no mention, and it's unclear if she even recognized, that Mr. Brown had been involuntarily committed to MUSC in September due to his severe mental illness.**

On December 11, 2022, staff initiated **an urgent mental health referral because Security was concerned over his emaciated appearance.**

On December 12, 2022, Chi Anderson, MHP, saw Mr. Brown at request of security due to his odd and unusual behavior. He was **exhibiting bizarre behavior, confused, delusional, disorganized in his thinking, and was in a cell covered by urine and feces. He was referred to the psychiatrist for further evaluation.**

On December 12, 2022, Dr. Patel saw Mr. Brown. She noted she had last seen him November 8, 2022. When she had seen him in **November she had determined he met criteria for emergency hospitalization secondary to medication refusal, poor hygiene and suspected psychosis.** She had completed commitment papers to the state hospital, but he was denied. She had also discontinued his psychotropic medication in November due to his refusal and no forced medication protocol at Charleston County Detention Center. She noted she was seen him again that day because of **"continued deterioration" and staff had reported he was smearing feces and had significant weight loss**. When she evaluated him that day, **she observed him through the window of his cell** rather than entering his cell. He was laying on the floor and initially out of view, but then sat up and came over when asked. He stared at her with a fixed eye contact and stated, "I already know you are Victoria." When she asked him who that was his **response was incomprehensible**. He did not respond to commands. He had a flat affect and fixed eye contact and occasionally looked around the room and she suspected he was responding to internal stimuli. She **noted he continued to appear psychotic and to be responding to internal stimuli. He continued to display bizarre behavior with poor hygiene and believed Dr. Patel was "Victoria." She noted he would likely benefit from psychotropic medications, but he continued to refuse. She noted "will continue to recommend emergent hospitalization for acute stabilization of psychosis" and "will follow up as needed."**

On December 21, 2022, he was **found in his cell on the floor lying in feces and urine, which was all over the room. Thick mucus was**

17

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

**coming from his nares. He was frail, thin, cold to touch. Staff was unable to get vital signs**. He was unresponsive. He was sent to MUSC ED.

**Medical University of South Carolina competency evaluation by Sheresa Christopher, Ph.D., and Alicia Gibson, Psy.D., dated December 15, 2022**:

Dr. Anderson and Dr. Gibson evaluated Mr. Brown via Telehealth. Their evaluation of him was under 15 minutes given the severe nature of his condition rendering him unable to participate in their evaluation. They reviewed collateral sources, such as his records at Charleston Dorchester Mental Health Center from May 28, 2003 to August 5, 2022, in which he was diagnosed with Depressive Disorder, Not Otherwise Specified, Oppositional Defiant Disorder, Attention Deficit Hyperactivity Disorder, Post-traumatic Stress Disorder, and ultimately Schizoaffective Disorder, Bipolar type. Officer M. Stanley of the Charleston County sheriff's office informed the evaluators that Mr. Brown **was extremely agitated, often naked in his cell, smearing feces on himself and throughout his cell, stared at the wall for hours, inconsistently complied with directives, and was aggressive**. The evaluators reviewed CCDC records and noted from August 2022 he had been **disorganized, paranoid, bizarre, or nonsensical, combative, yelling, unintelligible at times, acting odd, eating poorly, with poor hygiene, and smearing feces and laying in urine**. **They noted on November 8, 2022 when seen by psychiatry he was naked, growling, hypersexual, disorganized, with flight of ideas, talking about his grandmother, Kevin Hart, and Mariah Carey, not sleeping for prolonged periods, erratic, bizarre, smearing feces, clogging the toilet, and his cell was covered in urine and feces**. MUSC records were reviewed, and the examiners noted he had been hospitalized on September 11, 2022 due to **laying in his urine, not eating or drinking, severe agitation, and picking paint off the walls**. While at MUSC, he was experiencing **auditory and visual hallucinations, grandiose and paranoid delusions, homicidal ideation, exhibited incoherent speech, was highly distracted, and had impaired insight and judgment. His father was noted to have schizophrenia. His mother reported to MUSC staff that he had been diagnosed with schizophrenia in prison and had stabilized with psychotropics**. They noted at MUSC he **stabilized with a combination of Depakote and Zyprexa**.

The examiners diagnosed him with **Schizophrenia, multiple episodes, currently in acute episode**. They deemed it highly unlikely that he would be able to appropriately behave in court, understand the legal process, work

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

with his attorney, and make rational and reality-based legal decisions. They noted he was currently experiencing several symptoms of psychosis that were **treatable with psychiatric medication and opined that with treatment his competency he was likely to be restored.**

**Medical University of South Carolina records for D'Angelo Brown, dated September 9, 2021 to September 29, 2022**:

On September 9, 2021, Mr. Brown was brought to the ED by EMS after suffering a gunshot wound to the face. During this hospitalization MUSC he underwent oral surgery. He ultimately left against medical advice on September 13, 2021.

When Mr. Brown presented to the ED on September 11, 2022, he was extremely agitated, with disorganized and bizarre behavior, paranoid delusions, and **required four-point restraints and involuntary psychotropics, including two injections of Haldol 5 mg, due to agitation and refusing medication**. His urine drug screen was positive only for cannabinoids. The emergency department staff attempted to contact medical staff at Charleston County Detention Center (843-529-7346) for collateral with no answer. He was admitted to the internal medicine service given his significant medical needs and psychiatry provided consultative services. On September 12, 2022, Sean Brady, MD with internal medicine spoke with a physician at the detention center who reported **he was only receiving wound care at the facility despite a history of taking Zyprexa and Risperdal and Depakote and diagnosed with schizophrenia by Psychiatry on August 15. Mr. Brown had not been receiving psychiatric treatment for two months and psychiatry had terminated their evaluation of him on September 7 as "patient was banging the walls, yelling, and unable to cooperate."** David Beckert, M.D., provided a consultative psychiatric evaluation on September 12, 2022. **Dr. Beckert reviewed correctional records, spoke with Mr. Brown's mother, and sought information from correctional officers.** His **mother reported that he had been diagnosed with schizophrenia 5 years previously** and had taken Risperdal, Haldol, Depakote, and Remeron. **Dr. Beckert believed his presentation likely was a product of a "primary thought disorder" and concurred with the initiation of antipsychotic treatment.** Mr. Brown was **involuntarily committed to MUSC on September 13, 2022 for "untreated, schizophrenia" and "agitation and psychosis, deemed to be a threat to self and others." The medical team contacted his mother on September 13, 2022 and she gave permission for scheduled**

19

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

**Risperidone and Zyprexa injection as back up if needed. Psychiatry assessed his condition daily. On September 13, 2022, he told Dr. Beckert his thoughts were on television and he was the President. Dr. Beckert contacted Charleston Mental Health for additional collateral information.** On September 14, 2022, he was compliant with oral Risperdal and was less agitated and on exam was teary. He remained **tangential, illogical and delusional**. He **thought the guard in the room was trying to kill him. He was sleeping minimally. He was prone to spit out food or liquids when staff attempted to feed him**. On September 15, 2022, it was noted he no longer had medical issues and his continued stay at MUSC was solely due to a psychiatric condition. Dr. Beckert noted he remained **agitated and delusional and violent and was sleeping poorly and eating poorly**. He was naked and **exposing genitals** to staff. His thoughts were tangential and disorganized. **He remained on involuntary medication protocol which included Risperdal 1 mg three times a day or Zyprexa 5 mg injected three times a day.** He was not able to go to the psychiatric unit, however, as he required full-time accompaniment by a Detention Center officer.

**On September 19, 2022, he remained paranoid and would go into "rage" due to his delusions, multiple times making statements about his intent to hurt Dr. Beckert. He continued to believe his thoughts were on the TV. A court hearing was scheduled for September 20, 2022. He remained agitated and aggressive and delusional, claiming he was the President and refusing food, "saying his homies are bringing him food soon." On September 20, Dr. Becker spoke with Dr. Paul Drago, informing him the mental health probate court ordered continued hospitalization and ongoing involuntary medication treatment. He had been referred to the state hospital forensics inpatient unit.** He remained agitated, paranoid, bizarre, hypersexual, disorganized, nonsensical but occasionally did allow staff to feed him. **On September 21, 2022, he remained in restraints because he was threatening and yelling at staff. He was talking to people who weren't in the room, was clearly experiencing visual hallucinations, "very paranoid" people were going to harm him, believed he was the President, his corrections officer was Jesus, and referred to staff member as his wife. He continued to require Zyprexa injections.** On September 23, 2022, it was reported he slept well the night before and they were no acute events overnight. His regimen had been adjusted to Zyprexa 5 mg twice a day and 10 mg at bedtime. He took all of his PO medication and ate all of his meals. He remained agitated but was more coherent in his statements. He was now able to state he was it in

20

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

the USA, and in the hospital because the jail "thought I was acting crazy." He was able to provide a coherent history and stated he wanted to get better "for his kids." He was no longer straining against his restraints. He did not attempt to spit or bite and ate his meals calmly. He remained paranoid and grandiose and responding occasionally to internal stimuli, however. **He stated he was God and that his wife lived in the White House. He also asked when Cardi B would call and spoke about water on the roof of the neighboring building being used to baptize those who wronged him.** On September 24, 2022, it was noted that overnight he became agitated and security was called to the bedside and he required an extra dose of intramuscular Zyprexa. However, that morning he was doing well. On September 24, 2022 he was "in a state of confusion all day" and **attempting to bite and spit at staff**. He was **swinging his urine-soaked sheets around**. Security was called often. The injectable Zyprexa was not helping to calm him. Thomas Brenzel, MD with internal medicine, **administered 10 mg of intramuscular Haldol.** Thereafter, he slept through the night. On September 25, 2022, it was noted he had become agitated and threatening the night before and required Haldol 10 mg injection by the on-call resident. Klonopin and **intramuscular Zyprexa doses were increased**. **Dr. Drago at CCDC contacted MUSC staff** on September 26, 2022 and asked if there **was "any kind of long acting, like 4-5 days or a week per dose medication that could be prescribed for psychosis."** It was noted by the treatment team on September 26, 2022, that he continued to be agitated, especially at night, but was without complaints that morning. When evaluated by Dr. Beckert on September 26, 2022 he was polite and greeted him by name. He responded appropriately to most questions. He stated he had slept well the last night. He was more linear in his thought process. **Depakote was started on September 27, 2022 and Dr. Beckert's plan was to use Depakote to target agitation and augment Zyprexa and allow a discontinuation of benzodiazepines.** On September 27, 2022 Dr. Beckert noted he continue to be agitated overnight requiring an injection of Zyprexa and remained agitated and actively delusional and hallucinating that morning, but "**per conversation with facility physician, patient can be accepted once patient is stable on PO medications with intramuscular backups."** On September 28, 2022, it was noted that he had required one injection of Zyprexa the day before and had refused his Depakote but accepted all oral medications that morning. He was covered by a sheet, and unlike other days was not exposing himself. He endorsed less psychotic symptoms than days previously and was not responding to internal stimuli but remained "somewhat delusional." He was eating and hydrating well. The dietitian noted over the past 1 to 2 weeks he had been eating 100% of all meals and

21

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

he was receptive to advancing to a high-protein high calorie diet. He agreed to continue taking his oral medication. He was now noted to be on Depakote 1000 mg twice daily, and Zyprexa 10 mg twice daily with 10 mg injectable Zyprexa back up if he refused oral Zyprexa. **It was clear in the note prepared by Harrison Quaal, M.D. on September 28, 2022 and cosigned by Dr. Beckert that the "regimen to continue once transferred back to correctional facility" was Zyprexa 10 mg twice daily with Zyprexa 10 mg given intramuscularly for every oral dose refused and Depakote 1000 mg twice daily.** It was also made clear that he was to undergo a taper off Klonopin over the next three days, to be discontinued entirely October 1, 2022. On September 28, 2022 at 1754 Madison Smith RN paged the MD on call (Margaret Kimzey) to inform her that **Mr. Brown had drunk his urine from the urinal**. On September 29, 2022, Dr. Beckert noted he had taken all of his oral medications in the last 24 hours and his thought process was goal directed and superficially linear and he no longer was overtly responding to internal stimuli. He was **deemed by staff stable enough for discharge back to the detention center and was discharged on Zyprexa Zydis 10 mg twice daily, Depakote 1000 mg twice daily, Zyprexa 10 mg injected twice daily if he refused oral Zyprexa, and trazodone 50 mg at bedtime. Dr. Beckert noted that the facility was willing to take Mr. Brown back "based off of phone call yesterday with CF [correctional facility] medical Director."**

**Wellpath mortality report for D'Angelo Brown, dated January 17, 2023**:

His death was noted to be unexpected, and it occurred at the hospital. He was pre-sentence status. His diagnosis was Schizophrenia. He was noted to have a history of cannabis and crack cocaine use, with October 2021 being his last use. He was housed at Charleston County Detention Center. During his first incarceration at Charleston County Detention Center he had been mostly compliant with medication. This incarceration he refused all his medication and refused to speak with mental health or his psychiatric provider. The patient's mother, who was supportive, reported he was "not the same person." When screened in Intake on August 10, 2022, an emergent mental health referral was made. He was immediately admitted into the infirmary for aggressive behavior and a left shoulder abrasion. On August 14, 2022, he was discharged to the behavioral management unit. On September 7, 2022, he was seen by the psychiatric nurse practitioner. On September 11, 2022, he was found in his BMU cell lying in water and urine and had not been eating or drinking for three days with significant weight

22

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

loss and change in mental status observed and was hospitalized involuntarily at MUSC until September 29, 2022. He was seen by the psychiatric nurse practitioner, Kathleen Potter, on his return to Charleston County Detention Center. On October 6, 2022, Dr. Patel attempted to see him but was waved off. On November 8 and December 12, 2022, he was seen by Dr. Patel. On December 11, 2022, an officer placed an urgent mental health referral because "security staff concerned, patient emaciated." Dr. Patel attempted to have him placed in the state hospital by completing emergent hospitalization paperwork, but was denied.

**Wellpath mental health nursing protocol, dated April 2022**:

The protocol called for a detailed assessment of the patient and ascertaining both subjective and objective information. The protocol described the presentation of psychosis in the form of visual/auditory hallucinations or paranoia and spoke to necessary steps to take. This **included contacting mental health provider immediately and placing the patient on mental health watch without delay until seen by provider and obtaining provider orders, which included mental health watch, medication, diet, and any other restrictions.**

**Wellpath hospital and specialty care policy, dated May 13, 2021:**

The purpose of the policy was to **ensure patient who required hospital care were provided appropriate and timely access to such facility**. This included transport by ambulance to local hospitals and specialty providers who were available to meet the healthcare needs of the patient.

**Wellpath informed consent and rights to refuse policy, dated November 16, 2020:**

The intention of the policy was to ensure that patients have the right to make informed decisions regarding their healthcare. **Exceptions to obtaining informed consent included emergency care patients who do not have the capacity to understand the information given.** If a **patient missed four doses in a seven day or established a pattern of refusal, the patient was to be referred to the prescriber**. The referral was to be submitted after the fourth missed dose. **Patients receiving mental health treatment services and refusing scheduled treatment after three documented refusals were to be referred to a QMHP.** Patient refusing emergent offsite emergency department care were

23

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

to be transported immediately and not allowed to refuse transportation under any circumstances.

**Wellpath emergency services policy, dated November 16, 2020:**

The intention of the policy was to ensure that the facility provided 24 hour emergency medical, dental, and mental health services. A medical emergency included many scenarios, **including "otherwise clinically unstable."**

Upon returning from the the hospital, healthcare staff **were required to have the patient evaluated by a qualified health care professional, enter a hospital return progress note, and to house the patient in the infirmary until cleared by the provider.**

Health care staff were to be oriented to emergency services with annual training to **include the signs and symptoms of mental illness.**

**Wellpath emergency psychotropic medication policy, dated November 16, 2020:**

The purpose of the policy was to ensure that health care staff followed policies developed for the emergency use of forced psychotropic medication. **Involuntary emergency psychotropic medications were not to be given unless a psychiatric emergency exists, and the legally authorized psychiatric provider gave orders for their use. Administration was to be for a specified duration and less restrictive intervention options had to be exercised previously without success**. Psychiatric emergency was defined as a Behavioral Health condition that was manifested by symptoms of sufficient severity, in which **serious bodily harm to the patient or others is occurring** or that a prudent layperson could reasonably expect that **an absence of immediate medical attention would result in the health of such person to be in serious jeopardy.** Emergency psychotropic medication was defined as the administration of psychotropic medication to a patient without his expressed consent in response to a psychiatric emergency in which the main aim was to reduce the dangerousness of such episodes. **If qualified healthcare staff determined a Psychiatric emergency existed, the psychiatric provider was to be contacted immediately. If the psychiatric provider determined an immediate threat of serious physical harm due to violence or an immediate threat to the patient of deteriorating physical well-being with risk to life or long-term health**

24

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

**caused by the effects of mental illness, the psychiatric provider could utilize emergency involuntary psychotropic medication and refer to a higher level of care. Patients exhibiting serious clinical deterioration at any time during involuntary therapy were to be transferred immediately to a clinically appropriate treatment facility. Patients whose condition indicated the need for psychotropic medication and continued to refuse to take such medications were to be transferred to a clinically appropriate treatment facility.** The use of long-acting injectable psychotropic medication was not deemed appropriate for emergency situations and could only be administered in accordance to a valid court order. **A contemporaneous psychiatric evaluation of the patient was preferred when feasible. However, an order could be given if the provider was not on site and risk was so imminent that any delay in treatment placed the patient in jeopardy. The prescriber was to follow up orders by completing an evaluation of the patient as soon as possible.**

**Wellpath medication services policy, dated December 29, 2021:**

The purpose of the policy was to ensure medication services that were clinically appropriate were provided in a timely, safe, and sufficient manner. The QHP was responsible to ensure the patient was not cheeking or palming their medication. After four refusals in a seven-day period or if the patient had a pattern of refusals they were to be referred to the provider for evaluation.

**OPINION:**

It is my opinion, with a reasonable degree of medical certainty, D'Angelo Brown undoubtedly suffered from a severe mental illness, Schizoaffective Disorder, Bipolar type. To remain well and free from harm to self or others, this illness requires ongoing compliance with effective antipsychotic and mood stabilizing medication. It is a gross deviation from the standard of care to fail to provide necessary treatment to an individual suffering from Schizoaffective Disorder, Bipolar Type. Necessary treatment includes crafting a safe and effective treatment plan, which includes appropriate medication, proper monitoring of efficacy and compliance, proper monitoring and assessment of their condition, and placement in the appropriate and safe treatment setting. In the absence of appropriate treatment the reasonably prudent physician recognizes the affected individual will decompensate, with deterioration of their mental and physical health leading to marked distress

25

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

and suffering and a high likelihood of harm. Tragically and inexcusably, CCDC and Wellpath staff failed to recognize and appropriately treat Mr. Brown's illness while he was in Charleston County Detention Center August 10, 2022 to December 21, 2022. The following evidence supports this opinion:

1. Mr. Brown was floridly psychotic and faring poorly physically and mentally when he was admitted involuntarily to MUSC on September 11, 2022. Over the next 18 days of being hospitalized he required daily psychiatric care, coordination of care between multiple specialties, involvement of his family and pursuing his mental health history, and extensive medication adjustments to improve his mental health. During this hospitalization and at many other times during his incarceration he exhibited clear signs and symptoms of mania and psychosis, which is diagnostic for Schizoaffective Disorder, Bipolar type diagnosis based on DSM-V-TR criteria.

2. When Kathleen Potter, APRN assessed Mr. Brown after his return from being hospitalized at MUSC, she promptly mislabeled Mr. Brown's primary illness to be a personality disorder; an assertion that was contradicted by well documented manic and psychotic symptoms and the diagnoses of the MUSC psychiatric and medical team, and clearly a product of Ms. Potter failing to properly review his records and assess Mr. Brown's condition. Ms. Potter's dismissive approach was emblematic of the overall dismissive approach the entire Wellpath and CCDC staff took to Mr. Brown's condition.

3. The standard of care demands the mental health clinician perform a thorough review of the DSM criteria for past or present major depressive episodes and manic or hypomanic or mixed episodes and auditory or visual hallucinations and paranoid or persecutory delusions and review of information from collateral sources, yet the Charleston County and Wellpath staff failed to explore his current or past symptomatology, review his psychiatric records from outside CCDC, perform a detailed review of his mental health complaints while incarcerated which were readily available in the EMR, or seek collateral information from his family, and, therefore, failed to fully grasp the severity of his condition, improperly labeling him a primary personality disorder. In order to craft a safe and effective treatment plan, including initiation of the proper medication regimen, degree of monitoring, frequency of assessment, and proper level of care, the mental health provider must properly diagnose and understand the condition they are treating. This inexcusable failure to properly evaluate and diagnose Mr. Brown very likely contributed to improper care, which included attributing his behaviors to manipulation or his personality, seeing him less frequently than necessary, providing

26

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

cursory and inadequate assessments, failure to diligently ensure compliance with treatment, taking a permissive approach to him refusing medication, stopping psychotropic medication, and not moving him to a higher level of care.

4. In a gross deviation from the standard of care and a product of deliberate indifference, Paul Drago, MD, Priya Patel, MD, and Kathleen Potter, APRN and the remainder of Wellpath medical staff and CCDC staff accepted Mr. Brown back to the detention center yet failed to continue what was effective and necessary treatment, including crucially close, careful assessment of Mr. Brown's condition and the administration of intramuscular Zyprexa if he refused oral Zyprexa. The psychiatric and medical providers at MUSC expended effort to connect with the medical staff at Charleston County Detention Center to ensure they would continue the mental health treatment plan when Mr. Brown was discharged back to jail, including continuing his medication regimen, which included injectable antipsychotics, and being followed closely by the correctional psychiatrist. They were assured by Paul Drago, M.D., the medical director of CCDC, this would be the case. Indeed, Dr. Drago requested provision of an injectable medication that would alleviate his symptoms for several days and allow staff to not have to provide oral medication.

5. It was clearly documented in the MUSC progress note prepared on September 28, 2022 by Harrison Quaal, M.D., Psychiatry PGY-2 and cosigned by Dr. Beckert that the "regimen to continue once transferred back to correctional facility" was Zyprexa 10 mg twice daily with Zyprexa 10 mg given intramuscularly for every oral dose refused and Depakote 1000 mg twice daily. It was also made clear that he was to undergo a taper off Klonopin over the next three days, to be discontinued entirely October 1, 2022. On September 29, 2022, Mr. Brown was deemed by Dr. Beckert stable enough for discharge back to the detention center and was discharged on Zyprexa Zydis 10 mg twice daily, Depakote 1000 mg twice daily, Zyprexa 10 mg injected twice daily if he refused oral Zyprexa, and trazodone 50 mg at bedtime. Dr. Beckert noted that the facility was willing to take Mr. Brown back "based off of phone call yesterday with CF medical Director." Mr. Brown's discharge medication regimen was clearly documented in his discharge paperwork.

6. This failure of Wellpath and CCDC staff to comply with Mr. Brown's necessary treatment was compounded by the fact Dr. Drago had spoken with Dr. Beckert just days prior in which this medication regimen was discussed and he agreed Wellpath medical staff would continue the treatment plan. It is clear Dr. Drago, Ms. Potter, and Dr. Patel, and the remainder of the medical staff for Wellpath and CCDC failed to

27

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

appropriately communicate or work effectively and collaboratively with each other, to the detriment of Mr. Brown's health.

7. This failure was further compounded by Ms. Potter and Dr. Patel evidently not reviewing the discharge paperwork which made clear his primary severe psychotic disorder and the necessity of continuing the injectable antipsychotic if he refused the oral antipsychotic, and their failure to closely monitor his condition and assess him sufficiently. Instead, the medical and mental health providers evaluated him infrequently, deemed his primary problem to be behavioral, and discontinued psychotropics. On September 29, 2022, Kathleen Potter, nurse practitioner, evaluated Mr. Brown. He refused to give any details about his mental illness, instead, saying that she could look in the records, because "it's all in there." Ms. Potter reviewed the medication he was taking while hospitalized at MUSC but her note leaves no doubt that she failed to review the MUSC records themselves. She also clearly did not review his past Wellpath and Charleston Mental Health records as she diagnosed him with "psychosis unspecified with unspecified substance use" and stated his "more primary diagnosis at this time is antisocial personality disorder." It is a gross deviation from the standard of care that Ms. Potter failed to review his past records, which were readily available to her through the detention center EMR, his family, and Charleston Mental Health, and failed to review the details of his MUSC hospitalization. If Ms. Potter had acted like the reasonably prudent mental health clinician and reviewed necessary collateral information, she would have determined he suffered from severe mental illness, including Schizoaffective Disorder, Bipolar type. She would have noted from his past incarceration his stabilization with Haldol, Risperdal, Depakote and how he had required Haldol decanoate. She would have noted input from his mother to MUSC staff regarding his stable baseline when on effective medication. She would have noted his evident mania and psychosis while at MUSC improved with oral Zyprexa, Depakote, and injectable Zyprexa. Instead in a reckless and imprudent fashion, Ms. Potter was dismissive of his claim he had mental illness and declared his primary diagnosis to be antisocial personality disorder, which led to her considering his actions behavioral instead of a dire sign of severe mental illness that demanded continuation of the treatment plan initiated at MUSC and diligent and careful attention and treatment by the mental health staff. The reasonably prudent clinician would recognize from his presentation to MUSC and hospital course, that Mr. Brown would undoubtedly deteriorate and again become severely psychotic if a safe and effective treatment plan was not followed in CCDC and, indeed, this is precisely what happened. Due to his severe mental illness compromising his insight and judgment and as a direct product of the

28

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

poor quality of care provided to Mr. Brown during his incarceration, it is not surprising he refused psychotropic treatment upon his return to CCDC.

8. Given he was refusing medication, Dr. Patel ordered his medication be discontinued. The reasonably prudent clinician would recognize he absolutely needed medication, and his refusal was a product of deteriorating mental health condition, which had led to worsening paranoia and mood instability, and decreased insight and judgment. Furthermore, the reasonably prudent clinician would recognize his already deplorable condition would continue to worsen without necessary treatment and would foreseeably lead to severe harm.

9. The reasonably prudent clinician would recognize an individual with severe mental illness that goes untreated has foreseeable risk of self-harm through an act or self-neglect and even if they are refusing psychotropics they require frequent psychiatric assessment to assess condition and safety and establish rapport and trust, which is well known to foster greater insight, bolster, feeling of support and cultivation of hope, and increase the likelihood of compliance with treatment. Furthermore, regular psychiatric assessment is necessary to determine whether the individual's condition warrants seeking involuntary hospitalization and court ordered treatment.

10. In this absence of treatment, it would be anticipated Mr. Brown would become manic and psychotic and revert to not eating, not hydrating, and living in abysmal conditions.

11. In the months that passed without careful assessment and necessary treatment, Mr. Brown's condition worsened, his insight and judgment became even more compromised, his risk of harm heightened, and he suffered unnecessarily.

12. His condition and refusal of medication should have and would have prompted alarm in the reasonably prudent clinician as they would recognize the likelihood of further progression of his severe illness, ongoing marked distress and suffering, and high likelihood of self-harm. The reasonably prudent clinician would have intervened and sent Mr. Brown to a higher level of care yet, in a gross deviation from the standard of care, Ms. Potter, Dr. Patel, Dr. Drago and Wellpath and CCDC staff failed to do so.

13. On November 8, 2022, Dr. Patel evaluated Mr. Brown. She was asked to see him for initial psychiatric evaluation to consider emergent hospitalization given the severity of his condition. She noted he had been in the BMU for several months due to bizarre behavior. She noted a disorganized thought process with bizarre presentation each time mental health had evaluated him. She reviewed Kathleen Potter's

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

progress notes on September 7 and September 29, 2022 and her conclusion his primary problem was a personality disorder. Dr. Patel noted intramuscular Zyprexa had been ordered if he refused oral medication, but intramuscular Zyprexa was not in the MAR and a second opinion from an MD had not been obtained and IM Zyprexa had never been administered. Despite Dr. Drago assuring the MUSC psychiatric team that the effective treatment plan they had initiated would be continued at CCDC, Dr. Patel claimed there was no forced medication protocol in the facility and given his MAR reflected consistent refusal of medication she discontinued all psychotropics.

14.     It is a gross deviation from the standard of care for Ms. Potter and Dr. Patel to deem an individual with evident hallucinations, delusions, disorganized, thought process, bizarre behavior to be a "personality disorder." The reasonably prudent mental health clinician would recognize Mr. Brown clearly had a psychotic disorder and his behavior was driven by severe mental illness. The records available to Ms. Potter and Dr. Patel and the rest of the mental health staff clearly demonstrated Mr. Brown's established history of severe mental illness, including Schizophrenia and Schizoaffective Disorder, Bipolar type, and his past responsiveness to psychotropics, including Haldol, Risperdal, Depakote. The reasonably prudent clinician would review those records and conclude he must be provided medication that had been proven effective in the past and foregoing such treatment would inevitably lead to harm. The reasonably prudent clinician would recognize the dangerousness of active psychosis being left untreated for months and would have acted with urgency and concern. Instead, Ms. Potter and Dr. Patel deemed his condition behavioral, chose to assess Mr. Brown monthly, provided treatment that the reasonably prudent clinician would recognize would be ineffective and then chose to stop providing treatment entirely, and left Mr. Brown actively psychotic for months with consequent severe mental and physical deterioration.

15.     When Dr. Patel evaluated Mr. Brown for the first time November 8, 2022, her assertion she could not provide injectable antipsychotics contradicted what was agreed by the CCDC medical director and, indeed, treatment that had been provided Mr. Brown in past incarceration at CCDC. Further, she made no mention Mr. Brown had been involuntarily committed to MUSC in September due to his severe mental illness. Her failure to comment on his MUSC hospitalization, Dr. Drago's promise to Dr. Beckert to continue injectable antipsychotic treatment or note Elizabeth Leonard in the past provided Mr. Brown treatment with Haldol decanoate were clear signs that Dr. Patel failed in her duty to review Mr. Brown's records.

30

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

16.    Reviewing those records would have been helpful to the reasonably prudent clinician, making it clear that a readmission to MUSC was a very appropriate course of action, rather than seeking to admit him to a state hospital, which was impractical as the reasonably prudent physician recognizes even if the patient is accepted the waiting list for state hospital is many months long and not the proper course of action for acute, severe mania and psychosis. Dr. Patel made clear Mr. Brown needed emergency hospitalization to treat his severe illness, and in these cases the standard course of action is for mental health professionals to involuntarily commit the individual to a local psychiatric hospital for safe and effective treatment. It is incomprehensible and inexcusable that Dr. Patel did not take this necessary course of action and, instead, solely pursued an impractical and ineffective plan of hospitalization at the state hospital, which would typically take months to accomplish and, therefore, is not a proper or safe course of action for an acutely, severely ill individual.

17.    To compound Dr. Patel's error and in a gross deviation from the standard of care, following emergently referring Mr. Brown to the state hospital on November 8, 2022, Dr. Patel and Ms. Potter and, indeed, any Wellpath or CCDC mental health or medical clinician failed to re-assess Mr. Brown's condition for over a month. The reasonably prudent clinician would recognize an untreated psychotic and manic individual whose condition required emergency hospitalization would undoubtedly deteriorate further and by December 12 their condition would be very likely dire. To fail to see Mr. Brown urgently and frequently and, instead, to opt to see him monthly and only when asked by concerned CCDC staff is an act that defies logic and explanation other than that of calloused indifference.

18.    On December 12, 2022, Dr. Patel saw Mr. Brown again, viewing him from outside through the window of his closed cell door. She noted she had last seen him November 8, 2022 and at that time she had determined he met criteria for emergency hospitalization secondary to medication refusal, poor hygiene and suspected psychosis. She had completed commitment papers to the state hospital, but he was denied as they were concerned his condition was behavioral. She had also discontinued his psychotropic medication in November due to his refusal and no forced medication protocol at Charleston County Detention Center. When she evaluated him that day, she noted he continue to appear psychotic and to be responding to internal stimuli. He continued to display bizarre behavior with poor hygiene and believed Dr. Patel was "Victoria." She noted he would likely benefit from psychotropic medications, but he continued to refuse. She noted "will continue to recommend emergent

31

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

hospitalization for acute stabilization of psychosis" and "will follow up as needed." It is an inexplicable and inexcusable gross deviation from the standard of care that Dr. Patel failed to put her words into action and with necessary urgency and concern have him brought immediately to the nearest emergency room. The reasonably prudent physician would recognize the need for emergent hospitalization for acute stabilization of psychosis demanded involuntary commitment to a psychiatric facility and the proper course of action would involve transferring Mr. Brown to the nearest hospital ED to facilitate medical clearance and admission to a psychiatric unit as had been done in September when Mr. Brown was admitted to MUSC. The reasonably prudent clinician would recognize his dire condition demanded emergency action, and he was incapacitated to consent or refuse such action and the standard of care and the law demanded the clinician to act despite any refusal or resistance by Mr. Brown. Indeed, in less dire circumstances on September 11, 2022, D. Igwilo, nurse practitioner, proceeded to do precisely this, sending Mr. Brown to the MUSC Emergency Department. In the same fashion, Dr. Patel could have and should have involuntarily committed Mr. Brown again to MUSC and her failure to act defies logic and explanation other than deliberate indifference.

19.  The reasonably prudent clinician would recognize absence of action would lead directly to a very poor outcome, including suffering and death, and Dr. Patel's plan to "follow up as needed" without any initiation of a safe and effective treatment plan was a gross deviation from the standard of care and would inevitably lead to significant morbidity and mortality. The reasonably prudent physician would recognize choosing to "follow up as needed" an individual who demanded emergency treatment defies logic and explanation other than deliberate indifference. Mr. Brown's dire condition was such that he needed to be emergently hospitalized and followed by a physician daily in the hospital, not assessed "as needed." Tragically, in failing to act as a reasonably prudent clinician, Dr. Patel allowed Mr. Brown to languish in unsanitary and unsafe conditions suffering from severe and untreated mental illness, which soon directly led to him developing sepsis, brain injury, and multiple organ failure.

20.  Dr. Patel's failure to hospitalize Mr. Brown in November and December 2022 is not her failure alone. Any of the Wellpath and CCDC medical and mental health providers and staff were capable and empowered to contact EMS and send a suffering and evidently severely ill individual to the Emergency Department for proper assessment and treatment, and their failure to act individually and collectively reflected a gross deviation from the standard of care explained most charitably as a grossly underestimation of the severity of his condition and at worst a product of

32

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

deliberate indifference by the Wellpath and CCDC mental and medical providers and staff.

21.    Wellpath emergency psychotropic medication policy, dated November 16, 2020, stipulated that health care staff could provide involuntary emergency psychotropic medications in a psychiatric emergency if the legally authorized psychiatric provider gave orders for their use. Administration was to be for a specified duration and less restrictive intervention options had to be exercised previously without success. Psychiatric emergency was defined as a Behavioral Health condition that was manifested by symptoms of sufficient severity, in which serious bodily harm to the patient or others is occurring or that a prudent layperson could reasonably expect that an absence of immediate medical attention would result in the health of such person to be in serious jeopardy. Emergency psychotropic medication was defined as the administration of psychotropic medication to a patient without his expressed consent in response to a psychiatric emergency in which the main aim was to reduce the dangerousness of such episodes. If qualified healthcare staff determined a Psychiatric emergency existed, the psychiatric provider was to be contacted immediately. If the psychiatric provider determined an immediate threat of serious physical harm due to violence or an immediate threat to the patient of deteriorating physical well-being with risk to life or long-term health caused by the effects of mental illness, the psychiatric provider could utilize emergency involuntary psychotropic medication and refer to a higher level of care. Patients exhibiting serious clinical deterioration at any time during involuntary therapy were to be transferred immediately to a clinically appropriate treatment facility. Patients whose condition indicated the need for psychotropic medication and continued to refuse to take such medications were to be transferred to a clinically appropriate treatment facility. A contemporaneous psychiatric evaluation of the patient was preferred when feasible, but an order could be given if the provider was not on site and risk was so imminent that any delay in treatment placed the patient in jeopardy and the prescriber was to follow up orders by completing an evaluation of the patient as soon as possible. In a gross deviation from the standard of care and in violation of Wellpath policy and procedure, Dr. Patel believed she was unable to provide involuntary psychotropic treatment to Mr. Brown, even though he had been provided injectable antipsychotic treatment at CCDC his prior incarceration, his condition clearly warranted such given his dire and deteriorating condition and severe mental health needs, the court had granted involuntary treatment during his hospitalization at MUSC, and Dr. Drago had asserted to Dr. Beckert the facility was capable of continuing involuntary injectable

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

antipsychotic treatment. The reasonably prudent clinician would recognize Mr. Brown's severely ill state demanded administration of an injectable antipsychotic, such as Haldol or Zyprexa, when refusing oral antipsychotic and this would be anticipated to improve his insight and judgment, ability to comply with staff instructions, his self-care, hydration and nourishment, and the sanitary conditions of his cell. If involuntary psychotropic administration had been appropriately provided by Dr. Patel and Ms. Potter soon after returning to Charleston County Detention Center when his condition was at risk of deteriorating, and per the standard of care and Wellpath protocol they had carefully monitored his condition and evaluated him frequently, it is very likely his decline would have been reversed, he would have stabilized, and he would not have become emaciated, dehydrated, and septic.

If Mr. Brown's active and progressing severe mental illness had been treated with appropriate gravity, he would have been provided necessary psychiatric treatment, which would include admission to a higher level of psychiatric care, providing the safe environment his condition demanded, and provision of effective treatment.    In such an environment he would have been thoroughly assessed by mental health professionals, provided emergency treatment medications when necessitated by active mania and psychosis, started on routine medication with monitored compliance and efficacy, and provided daily therapy. If this had been provided, it is highly likely his condition and insight and judgment would have improved, and he would have been ultimately safely released to a less restrictive environment. Indeed, this is the process that daily occurs in countless correctional settings and hospitals throughout the United States. Instead of help, however, Mr. Brown's poor mental health state was dismissed, deemed manipulative or behavioral, minimized, inexcusably ignored, or ineffectively or inappropriately treated, which led to further worsening of his mood state and paranoia, directly reducing his insight, judgment, and self-care and, ultimately, led to his demise.

Please note my opinion is subject to change if further information comes to light.



34

ELECTRONICALLY FILED - 2024 Mar 28 3:47 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

D'Angelo Brown Report

David S. Husted, M.D., M.S.
Board Certified Psychiatrist
Psychiatrist and President
Psychiatry of the Palm Beaches
Palm Beach Gardens and Boynton Beach, FL

Chairman, Department of Psychiatry
JFK Main and JFK North
Atlantis and West Palm Beach, FL

Medical Director
Banyan Treatment Centers
Stuart, FL and Boca Raton, FL and Pompano Beach, FL

Affiliated Assistant Professor of Psychiatry
Psychiatry Clerkship Director
University of Miami Miller School of Medicine
Regional Medical Campus
Boca Raton, FL

ELECTRONICALLY FILED - 2024 Apr 15 4:06 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | THE NINTH JUDICIAL CIRCUIT |
| COUNTY OF CHARLESTON | ) | CASE NO.: 2023-CP-10-01166 |
| | ) | |
| Nekeya Jones, as Special Administrator of the Estate of D'Angelo D. Brown, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | **DEFENDANT WELLPATH, LLC'S** |
| | ) | **ANSWER TO SECOND AMENDED** |
| v. | ) | **COMPLAINT** |
| | ) | **(JURY TRIAL DEMANDED)** |
| Charleston County; Charleston County | ) | |
| Sheriff's Office; Wellpath, LLC; Paul Drago, | ) | |
| MD; Priya Patel, MD; William Malcolm; | ) | |
| Kathleen H. Potter, NP; Roxanne Serohi, NP; | ) | |
| Tamisha Johns; Cathy Mazyck; Jamal M. | ) | |
| Singleton; Shannell T. McKellar; Lakeesha M. | ) | |
| Palmer; Trent M. Evans; and Merete Enbusk, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

COMES NOW, Defendant Wellpath, LLC (this Defendant), by and through its undersigned counsel, and hereby Answers Plaintiff's Second Amended Complaint, and shows the Court as follows:

**FIRST DEFENSE**

Plaintiff has failed to state a claim upon which relief may be granted by this Court and this Defendant should be dismissed pursuant to SCRCP 12(b)(6).

**SECOND DEFENSE**

This Defendant exercised that degree of skill and care required of it by law at all times relevant to the matters complained of in the Second Amended Complaint. This Defendant and its employees did not deviate from any generally-accepted standards, practices, and procedures exercised by competent professionals in their respective fields of correctional medicine acting under the same or similar circumstances.

ELECTRONICALLY FILED - 2024 Apr 15 4:06 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**THIRD DEFENSE**

Any recovery by Plaintiff must be reduced or offset by amounts Plaintiff has received or will receive from others for the same injuries/damages claimed in this lawsuit.

**FOURTH DEFENSE**

This Defendant did not deviate from any generally-accepted standards, practices, and procedures exercised by similar competent professionals in the field acting under the same or similar circumstances.

**FIFTH DEFENSE**

Any alleged negligence or deviations from the standard of care (which are expressly denied) were not a direct, proximate, or legal cause of some or all of the injuries or death of Plaintiff's decedent or damages claimed by Plaintiff.

**SIXTH DEFENSE**

Plaintiff's claims for non-economic damages are limited in amount under South Carolina law by the statutory limits contained in the Noneconomic Damages Awards Act of 2005, South Carolina Code Ann. §15-32-200, *et. seq.* as amended, specifically including South Carolina Code Ann. §15-32-220.

**SEVENTH DEFENSE**

Any punitive damages awarded in this case would be subject to the limitations described in S.C. Code §15-32-530, or otherwise as limited under South Carolina statutory and case law, and this Defendant specifically pleads these limitations as a defense and requests a bifurcation of the punitive damages phase of trial.

**EIGHTH DEFENSE**

The claims for punitive damages, and the statutes of the State of South Carolina purporting to authorize imposition of those damages, violate this Defendant's rights under the United States

ELECTRONICALLY FILED - 2024 Apr 15 4:06 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

Constitution and South Carolina Constitution. Furthermore, those damages are limited in amount under South Carolina law.

**NINTH DEFENSE**

Any alleged error by this Defendant and/or its employees (which are expressly denied), were *bona fide* errors of professional judgment for which this Defendant cannot be liable.

**TENTH DEFENSE**

This Defendant exercised reasonable judgment and followed reasonable courses of care and/or treatment if and when required.

**ELEVENTH DEFENSE**

There is no causal connection between any alleged act or omission on the part of this Defendant and the injuries and damages claimed by Plaintiff.

**TWELFTH DEFENSE**

To the extent any or all Defendants may be considered state agents and to the extent that they are sued in any official capacity, they are immune from suit under the doctrine of sovereign immunity and under the Eleventh Amendment of the United States Constitution.

**THIRTEENTH DEFENSE**

This Defendant did not perform any acts or fail to perform acts in bad faith, in a malicious manner, or with corrupt motives. This Defendant acted in good faith and is immune from suit.

**FOURTEENTH DEFENSE**

This Defendant shows that at all times alleged in the Second Amended Complaint, this Defendant and its employees acted reasonably under the circumstances, in good faith, had no knowledge that any of the alleged acts or omissions were illegal and/or unconstitutional, nor in violation of Plaintiff's decedent's clearly established federal, statutory, or constitutional rights at the time they were allegedly committed. Therefore, this Defendant is immune from liability under the doctrine of qualified immunity.

ELECTRONICALLY FILED - 2024 Apr 15 4:06 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

### FIFTEENTH DEFENSE

The claims for punitive damages, and the statutes of the State of South Carolina purporting to authorize imposition of those damages, violate this Defendant's rights under the United States Constitution and South Carolina Constitution, as well as the holding of State Farm Mutual Automobile Insurance Company v. Campbell, 538 U.S. 408 (2003), and its progeny.

### SIXTEENTH DEFENSE

To the extent shown by the evidence and law, this Defendant and its employees acted as governmental officials performing discretionary functions and actions which could reasonably have been thought consistent with the rights of Plaintiff's decedent, for which they are alleged to have violated. Therefore, they are entitled to immunity as a matter of law.

### SEVENTEENTH DEFENSE

The acts of a person other than this Defendant and/or its employees may be the sole and proximate cause of the injuries complained of in the Second Amended Complaint. If this Defendant is deemed responsible to the Plaintiff for any damages or injuries, which is strictly denied, then this Defendant is entitled to contribution from all joint tortfeasors pursuant to the South Carolina Contribution Among Joint Tortfeasors Act, South Carolina Code of Laws § 15-38-10 et, Seq. (Cum. Supp. 1989). The acts or omissions of a person, persons, or entity other than this Defendant is at least the partial, and may be the sole and proximate cause of the incident complained of in the Second Amended Complaint. This Defendant's negligence, if any, was less than fifty percent of the total fault for the Plaintiff's alleged damages as compared with the total fault of all the Defendants, named or un-named. As such, this Defendant should only be responsible for that percentage of the Plaintiff's alleged damages, to be determined by the jury or trier of fact.

ELECTRONICALLY FILED - 2024 Apr 15 4:06 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

## EIGHTEENTH DEFENSE

The acts of a person other than this Defendant are the sole and proximate cause of the incident complained of in the Second Amended Complaint.

## NINETEENTH DEFENSE

In the event that Plaintiff is awarded punitive or exemplary damages and to the extent that such an award is not in violation of this Defendant's rights under the United States Constitution and the South Carolina Constitution, an award of punitive or exemplary damages is subject to the limitations as set forth in South Carolina Code Ann. § 15-32-530(A).

## TWENTIETH DEFENSE

The acts of a third party wholly unrelated to this Defendant were the sole cause of Plaintiff's decedent's injuries and these acts were not foreseeable.  Therefore, this matter should be dismissed as a matter of law.

## TWENTY-FIRST DEFENSE

Any claims for non-economic damages are limited in amount under South Carolina law. This Defendant invokes all applicable statutory caps on damages Plaintiffs may claim.

## TWENTY-SECOND DEFENSE

If this Defendant was negligent in the manner described in the Second Amended Complaint, which negligence is specifically denied, the injuries allegedly suffered by Plaintiff's decedent and damages claimed by Plaintiff were the direct and proximate result of the intervening and superseding negligence of third parties, for whose conduct this Defendant bears no responsibility. Therefore, Plaintiff is barred from recovery against this Defendant.

## TWENTY-THIRD DEFENSE

The medical condition and illness of Plaintiff's decedent was the result of disease processes and/or medical conditions not negligently caused, contributed to, aggravated or exacerbated by any act or omission on the part of this Defendant.

ELECTRONICALLY FILED - 2024 Apr 15 4:06 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

## TWENTY-FOURTH DEFENSE

To the extent the evidence shows Plaintiff's decedent did not follow the reasonable medical instructions of his respective healthcare providers, then some or all of Plaintiff's claims are barred in whole or in part by the doctrines of comparative negligence and failure to mitigate damages. Further, to the extent shown by the evidence, that negligence may be the sole and proximate cause of the alleged injuries suffered.

## TWENTY-FIFTH DEFENSE

Venue of this case is appropriate in South Carolina District Court, Charleston Division due to federal question jurisdiction and supplemental jurisdiction.

## TWENTY-SIXTH DEFENSE

This Defendant responds to the numbered allegations of the Second Amended Complaint as follows:

1.      This Defendant lacks sufficient information to form a belief as to the truthfulness of the allegations of Paragraphs 1, 2 and 3 of the Second Amended Complaint. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

2.      In response to Paragraph 4, this Defendant admits that Wellpath, LLC is an entity organized under the laws of Delaware with a principal place of business in Nashville, Tennessee and maintains a registered agent in South Carolina as set forth in the South Carolina Secretary of State's business filings. This Defendant further shows that Wellpath, LLC is a private correctional healthcare provider that had a contract to operate certain aspects of the provision of medical care at the Al Cannon Detention Center located at 3841 Leeds Avenue, North Charleston, and pursuant to that contract employs medical personnel at the Detention Center. All other allegations of Paragraph 4 inconsistent herewith are denied.

ELECTRONICALLY FILED - 2024 Apr 15 4:06 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

3.      In response to Paragraph 5, this Defendant admits it employed Dr. Drago as a medical director and that upon information and belief, he is a resident of South Carolina. The remainder of Paragraph 5 contains legal conclusions to which no response is required. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

4.      In response to Paragraph 6, this Defendant admits Dr. Patel provided psychiatric care at the Al Cannon Detention Center through its contract with LocumTenens during portions of the period at issue in the Complaint.  This Defendant lacks sufficient knowledge as to whether or not Dr. Patel is a South Carolina resident and therefore, is unable to respond to the same. The remainder of Paragraph 6 contains legal conclusions to which no response is required. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

5.      This Defendant lacks sufficient information to form a belief as to the truthfulness of the allegations of Paragraph 7 of the Second Amended Complaint. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

6.      In response to Paragraph 8, this Defendant admits it employed Kathleen Potter as a psychiatric nurse practitioner and that upon information and belief, she is a resident of South Carolina. The remainder of Paragraph 8 contains legal conclusions to which no response is required. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

ELECTRONICALLY FILED - 2024 Apr 15 4:06 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

7.      In response to Paragraph 9, this Defendant admits it employed Roxanne Serohi as a nurse practitioner and that upon information and belief, she is a resident of South Carolina. The remainder of Paragraph 9 contains legal conclusions to which no response is required. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

8.      In response to Paragraph 10, this Defendant admits Tamisha Johns was a nurse at the Al Cannon Detention Center and was employed either through an agency contract or directly by Wellpath, but lacks sufficient knowledge as to whether she is a South Carolina resident. The remainder of Paragraph 10 contains legal conclusions to which no response is required. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

9.      In response to Paragraph 11, this Defendant admits it employed Cathy Mazyck as a nurse practitioner and that upon information and belief, she is a resident of South Carolina. The remainder of Paragraph 11 contains legal conclusions to which no response is required. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

10.      This Defendant lacks sufficient information to form a belief as to the truthfulness of the allegations of Paragraphs 12, 13, 14, 15 and 16 of the Second Amended Complaint. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

ELECTRONICALLY FILED - 2024 Apr 15 4:06 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

11.     The allegations contained in Paragraphs 17, 18 and 19 of the Second Amended Complaint are legal conclusions and no response is required.  Answering further as to Paragraph 18, this Defendant admits that it and Plaintiff participated in the mandatory South Carolina pre-suit requirements for medical malpractice actions, but denies the contents, allegations and conclusions of Dr. O'Bryan's affidavit attached as Exhibit 1 and Dr. Husted's affidavit attached as Exhibit 2, especially the allegations of negligence. In as much as any further response is required by this Defendant as to Paragraphs 17, 18 and 19, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages or failed to comply with the standard of care.

12.     In responding to Paragraph 20, this Defendant denies that Plaintiff's decedent was in its custody, but admits that certain aspects of Plaintiff's decedent's medical care was under its healthcare provider's purview while Mr. Brown was incarcerated by the Charleston County Sheriff's Office at the Al Cannon Detention Center. All other allegations of Paragraph 20 are denied as stated.

13.     This Defendant lacks sufficient information to form a belief as to the truthfulness of the allegations of Paragraphs 21 and 22 of the Second Amended Complaint. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

14.     The allegations contained in Paragraph 23 of the Second Amended Complaint are legal conclusions and no response is required.  In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

15.     In responding to Paragraph 24 of the Second Amended Complaint, this Defendant admits that Wellpath, LLC had a contract to operate certain aspects of the provision of medical

ELECTRONICALLY FILED - 2024 Apr 15 4:06 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

care at the Al Cannon Detention Center located at 3841 Leeds Avenue, North Charleston, and pursuant to that contract employed medical personnel at the Detention Center. This Defendant lacks sufficient information to form a belief as to the truthfulness of the remaining allegations of Paragraph 24 of the Second Amended Complaint. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

16.    In response to Paragraph 25, this Defendant admits that Wellpath, LLC is a private, correctional healthcare provider organized under the laws of Delaware with a principal place of business in Nashville, Tennessee. This Defendant further shows that Wellpath, LLC has contracts to operate certain aspects of the provision of medical care at multiple detention center facilities across the nation. This Defendant shows that in carrying out its contractual duties, Wellpath, LLC has been involved in disputed, contested litigation. All other allegations of Paragraph 25 inconsistent herewith are denied.

17.    In response to Paragraph 26, this Defendant admits that CNN wrote an online article from the perspective of various plaintiffs in disputed litigation. This Defendant further shows that it has contracts to operate certain aspects of the provision of medical care at multiple detention center facilities across the nation, and in carrying out its contractual duties, it has been involved in disputed, contested litigation. This Defendant is unable to answer what information was available to Co-Defendants when it contracted with it in 2022. All other allegations of Paragraph 26 inconsistent herewith are denied.

18.    In response to Paragraph 27, this Defendant lacks sufficient information to respond as to what "became apparent" to Co-Defendants, but this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care. This Defendant also denies any allegations or implications contained within Paragraph 27 that this Defendant and/or its employees were not

ELECTRONICALLY FILED - 2024 Apr 15 4:06 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

providing appropriate medical care to inmates at the Charleston County Detention Center or that its contract with the County should have been, or ever was, terminated due to allegedly inappropriate care. All other allegations of Paragraph 27 inconsistent herewith are denied.

19. In response to Paragraph 28, this Defendant denies the services it provided was "woefully inadequate" but admits that Sheriff Graziano, who is not a medical professional and lacks medical training, is quoted in the news article identified in Footnote 2.

20. In response to Paragraphs 29 and 30 of the Second Amended Complaint, this Defendant admits that Dr. Drago obtained a security clearance and was the Medical Director at the CCDC during portions of Mr. Brown's incarceration, and that the quoted information in Paragraph 29 is contained on the SCLLR's website. This Defendant denies that Dr. Drago was incompetent, unfit, impaired, dangerous, engaged in excessive use or abuse of any drugs or alcohol, or otherwise unfit to practice medicine when hired by Wellpath, and as evidenced by the SCLLR's reinstatement of his medical license. Wellpath also denies that it did not submit reports to the Board of Medical Examiners. By way of further response, Dr. Drago's arrest charges were legally expunged prior to being hired by Wellpath.

21. In response to the allegations of Paragraphs 31, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46,47,48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, and 70 of the Second Amended Complaint, this Defendant shows that the medical records, policies, jail records, court filings, video footage, and the testimony of the healthcare providers and detention center staff involved in Mr. Brown's care and incarceration will more accurately set forth the circumstances and events surrounding his incarceration and hospitalizations, including the impacts of the Court Order to which Wellpath was not a party, nor ever served. Therefore, the allegations of Paragraphs 31, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46,47,48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, and 70 are denied at this time.

ELECTRONICALLY FILED - 2024 Apr 15 4:06 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

22.      This Defendant denies Paragraphs 32, 71, 72, 73 and 74 of the Second Amended Complaint.

23.      In response to Paragraph 75, this Defendant admits that Charleston County Coroner Bobbi Jo O'Neal released a report stating the items delineated in Paragraph 75, but denies the accuracy of the report, including the cause and manner of death.

24.      In response to the allegations of Paragraph 76, this Defendant incorporates as if fully set forth herein its responses to Paragraphs 1 – 75.

25.      The allegations contained in Paragraphs 77 and 78, including their subparts, are not directed at this Defendant and therefore no response is required. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

26.      In response to the allegations of Paragraph 79, this Defendant incorporates as if fully set forth herein its responses to Paragraphs 1 – 78.

27.      The allegations contained in Paragraphs 80, 81, 82 and 83, including their subparts, are not directed at this Defendant and therefore no response is required. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

28.      In response to the allegations of Paragraph 84, this Defendant incorporates as if fully set forth herein its responses to Paragraphs 1 – 83.

29.      This Defendant denies the allegations of Paragraphs 85 and 86, including all subparts.

30.      In response to the allegations of Paragraph 87, this Defendant incorporates as if fully set forth herein its responses to Paragraphs 1 – 86.

ELECTRONICALLY FILED - 2024 Apr 15 4:06 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

31.    The allegations contained in Paragraph 88 of the Second Amended Complaint are legal conclusions and no response is required.  In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

32.    This Defendant denies the allegations of Paragraphs 89, 90, and 91, including all subparts.

33.    In response to the allegations of Paragraph 92, this Defendant incorporates as if fully set forth herein its responses to Paragraphs 1 – 91.

34.    The allegations contained in Paragraphs 93, 94, 95, 96, 97, 98, 99, and 100, including their subparts, are not directed at this Defendant and therefore no response is required. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

35.    In response to the allegations of Paragraph 101, this Defendant incorporates as if fully set forth herein its responses to Paragraphs 1 – 100.

36.    This Defendant denies the allegations of 102, 103, 104, 105, 106, 107, 108 and 109, including their subparts.

37.    This Defendant denies the "WHEREFORE" Paragraph of Plaintiff's Second Amended Complaint, including all its subparts.

WHEREFORE, having fully answered the Second Amended Complaint, this Defendant demands to be dismissed with costs taxed against the Plaintiff.

*[SIGNATURE PAGE TO FOLLOW]*

ELECTRONICALLY FILED - 2024 Apr 15 4:06 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

This 15th day of April 2024.

Respectfully submitted,

COPELAND, STAIR, VALZ & LOVELL, LLP


By: *s/Kristen K. Thompson*
    KRISTEN K. THOMPSON
    State Bar No.: 100659
    NELSON POST
    State Bar No.: 106080
    ***Attorneys for Defendant Wellpath, LLC***

40 Calhoun Street, Suite 400
Charleston, SC 29401
*kthompson@csvl.law*
*npost@csvl.law*
Ph: (843) 727-0307

ELECTRONICALLY FILED - 2024 Apr 18 11:31 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | CIVIL ACTION 2023-CP-10-01166 |

| | |
|---|---|
| NEKEYA JONES, as Special Administrator of the Estate of D'ANGELO D. BROWN, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| CHARLESTON COUNTY, CHARLESTON COUNTY SHERIFF'S OFFICE, WELLPATH LLC, PAUL DRAGO, MD, PRIYA PATEL, MD, WILLIAM MALCOLM, KATHLEEN H. POTTER, NP, ROXANNE SEROHI, NP, TAMISHA JOHNS, CATHY MAZYCK, JAMAL M. SINGLETON, SHANNELL T. MCKELLAR, LAKEESHA M. PALMER, TRENT M. EVANS, and MERETE ENBUSK, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

**ACCEPTANCE OF SERVICE**

I hereby certify acknowledge receipt of and accept service of the above captioned **SECOND AMENDED SUMMONS & COMPLAINT** on behalf of the Defendant, **PAUL DRAGO, MD** on this ___18___ day of ___April_____, 2024.

_Halle Kilburn_ _____
Signature

_____Halle Kilburn, Legal Assistant_____
Printed Name and Title

ELECTRONICALLY FILED - 2024 Apr 25 1:17 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | |
| | ) | |
| Nekeya Jones, as Special Administrator of the Estate of D'Angelo D. Brown, | ) | C/A No. 2023-CP-10-01166 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| Versus | ) | **DEFENDANT CHARLESTON COUNTY SHERIFF'S OFFICE'S ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT** |
| | ) | |
| Charleston County, Charleston County Sheriff's Office, Wellpath LLC, Paul Drago, MD, Priya Patel, MD, William Malcolm, Kathleen H. Potter, NP, Roxanne Serohi, NP, Tamisha Johns, Cathy Mazyck, Jamal M. Singleton, Shannell T. McKellar, Lakeesha M. Palmer, Trent M. Evans, and Merete Enbusk, | ) | (***Jury Trial Requested***) |
| | ) | |
| *Defendants.* | ) | |

The Defendant, Charleston County Sheriff's Office (hereinafter "this Defendant"), hereby answers the Plaintiff's Second Amended Complaint, subject to any and all affirmative defenses, qualifications, motions and any other pleadings as follows:

1.      This Defendant denies each and every allegation contained in Plaintiff's Second Amended Complaint which is not specifically admitted herein.

## AS TO PARTIES, JURISDICTION AND VENUE

2.      This Defendant lacks sufficient knowledge or information at this time to form a belief as to the truth of the allegations contained in Paragraph 1 of Plaintiff's Second Amended Complaint.

3.      The allegations contained in Paragraphs 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18 and 19 of Plaintiff's Second Amended Complaint state conclusions of law to which no response is required.

ELECTRONICALLY FILED - 2024 Apr 25 1:17 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

## AS TO FACTS

4.       In response to the allegations contained in Paragraphs 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 66, 68, 69, 70 (including subparts a, b, c, d, e, f and g) and 71 of the Plaintiff's Second Amended Complaint, this Defendant admits, upon information and belief, only so much as alleges that D'Angelo Brown was housed at the Sheriff Al Cannon Detention Center beginning on or about August 10, 2022, that he passed away December 29, 2022 and that Wellpath LLC was contracted for providing medical care to residents of Sheriff Al Cannon Detention Center at the time. Further responding, this Defendant refers to all records, documentation and evidence related to the D'Angelo Brown's detainment and the contract with Wellpath for a more detailed and complete description of his detainment and health history and the agreement between the Detention Center and Wellpath. All remaining and inconsistent allegations contained in Paragraphs 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 66, 68, 69, 70 (including subparts a, b, c, d, e, f and g) and 71 of the Plaintiff's Second Amended Complaint are denied as they are written.

5.       This Defendant denies the allegations contained in Paragraph 72 of the Plaintiff's Second Amended Complaint as they are written.

6.       In response to the allegations contained in Paragraph 73 of the Plaintiff's Second Amended Complaint, this Defendant refers to the autopsy records for a more complete description of the records referenced. All remaining and inconsistent allegations contained in Paragraph 73 of the Plaintiff's Second Amended Complaint are denied.

ELECTRONICALLY FILED - 2024 Apr 25 1:17 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

7.      This Defendant denies the allegations contained in Paragraph 74 of the Plaintiff's Second Amended Complaint as they are written.

8.      In response to the allegations contained in Paragraph 75 of the Plaintiff's Second Amended Complaint, this Defendant refers to the medical records of Mr. Brown for a more complete description of the issues referenced.  All remaining and inconsistent allegations contained in Paragraph 75 of the Plaintiff's Second Amended Complaint are denied.

**ANSWERING THE FIRST CAUSE OF ACTION AGAINST DEFENDANTS
CHARLESTON COUNTY AND CHARLESTON COUNTY SHERIFF'S OFFICE
(Negligence/ Gross - Survival)**

9.      In response to the allegations contained in Paragraph 76 of the Plaintiff's Second Amended Complaint, this Defendant repeats and re-alleges its responses contained in Paragraphs 1-8 above as if set forth fully herein.

10.     This Defendant denies the allegations contained in Paragraphs 77, (including subparts a, b, c, d, e, f, g, h, i, j, k, l, m, n, o, p, q, r, s, t, u, v, w, and x) and 78 of the Plaintiff's Second Amended Complaint.

**ANSWERING THE SECOND CAUSE OF ACTION AGAINST DEFENDANTS
CHARLESTON COUNTY AND CHARLESTON COUNTY SHERIFF'S OFFICE
(Wrongful Death)**

11.     In response to the allegations contained in Paragraph 79 of the Plaintiff's Second Amended Complaint, this Defendant repeats and re-alleges its responses contained in Paragraphs 1-10 above as if set forth fully herein.

12.     The allegations contained in Paragraph 80 of the Plaintiff's Second Amended Complaint state conclusions of law to which no response is required.

13.     This Defendant denies the allegations contained in Paragraphs 81, 82 (including subparts a, b, c, d, e and f) and 83 of the Plaintiff's Second Amended Complaint.

ELECTRONICALLY FILED - 2024 Apr 25 1:17 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

## ANSWERING THE THIRD CAUSE OF ACTION AGAINST DEFENDANT
## WELLPATH LLC
### (Negligence/ Medical Malpractice- Survival)

14.     In response to the allegations contained in Paragraph 84 of the Plaintiff's Second
Amended Complaint, this Defendant repeats and re-alleges its responses contained in Paragraphs
1-13 above as if set forth fully herein.

15.     The allegations contained in Paragraphs 85 (including subparts a, b, c, d, e, f, g, h,
i, j, k, l, m, n, o, p, q, r, s, t, u, v, w, x, y, z, aa, bb, cc, dd, ee, ff, gg, hh, ii, jj, kk, ll and mm) and
86 of the Plaintiff's Second Amended Complaint are not directed toward this Defendant and
therefore no response is required.

## ANSWERING THE FOURTH CAUSE OF ACTION AGAINST DEFENDANT
## WELLPATH LLC
### (Wrongful Death)

16.     In response to the allegations contained in Paragraph 87 of the Plaintiff's Second
Amended Complaint, this Defendant repeats and re-alleges its responses contained in Paragraphs 1-
15 above as if set forth fully herein.

17.     The allegations contained in Paragraph 88 of the Plaintiff's Second Amended
Complaint state conclusions of law to which no response is required.

18.     The allegations contained in Paragraphs 89, 90 (including subparts a, b, c, d, e and
f) and 91 of the Plaintiff's Second Amended Complaint are not directed toward this Defendant and
therefore no response is required.

ELECTRONICALLY FILED - 2024 Apr 25 1:17 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**ANSWERING THE FIFTH CAUSE OF ACTION AGAINST DEFENDANTS WILLIAM MALCOM, JAMAL SINGLETON, SHANNEL T. MCKELLAR, LAKEESHA M. PALMER, TRENT M. EVANS AND MERETE ENBUSK,** *each in their individual capacity*
**(Violation of Federal Civil Rights 42 U.S.C. § 1983- Violation of Due Process / Failure to Provide Medical Care for a Serious Medical Need/ Cruel and Unusual Punishment)**

19.    In response to the allegations contained in Paragraph 92 of the Plaintiff's Second Amended Complaint, this Defendant repeats and re-alleges its responses contained in Paragraphs 1-18 above as if set forth fully herein.

20.    The allegations contained in Paragraph 93 and 94 of the Plaintiff's Second Amended Complaint state conclusions of law to which no response is required.

21.    The allegations contained in Paragraphs 95, 96 (including subparts a, b, c, d, e, f, g, h, i, j, k, l, m and n), 97, 98, 99 and 100 of the Plaintiff's Second Amended Complaint are not directed toward this Defendant and therefore no response is required.

**ANSWERING THE SIXTH CAUSE OF ACTION AGAINST DEFENDANTS KATHLEEN POTTER, NP, ROXANNE SEROHI, NP, TAMISHA JOHNS, AND CATHY MAZYCK,** *each in their individual capacity*
**(Violation of Federal Civil Rights 42 U.S.C. § 1983- Violation of Due Process / Failure to Provide Medical Care for a Serious Medical Need/ Cruel and Unusual Punishment)**

22.    In response to the allegations contained in Paragraph 101 of the Plaintiff's Second Amended Complaint, this Defendant repeats and re-alleges its responses contained in Paragraphs 1-21 above as if set forth fully herein.

23.    The allegations contained in Paragraphs 102, 103 (including subparts a, b, c, d, e, f, and g), 104, 105 (including subparts a, b, c, d, e, f, g, h and i), 106, 107, 108 and 109 of the Plaintiff's Second Amended Complaint are not directed toward this Defendant and therefore no response is required.

ELECTRONICALLY FILED - 2024 Apr 25 1:17 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

## AS TO DEMAND FOR JURY TRIAL

24.     This Defendant also requests a jury trial in this case. This Defendant denies the Plaintiff's WHEREFORE Paragraph (including subparts a, b, c, d, e and f), being the remaining allegations of the Plaintiff's Second Amended Complaint.

### FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE, THIS DEFENDANT ALLEGES:
#### (No Proximate Cause)

25.     That, even if this Defendant was negligent, as alleged in the Complaint, which is specifically denied, the negligence of this Defendant was not the direct or proximate cause of any injury or damages alleged by Plaintiff and therefore this Defendant is not liable for any damages allegedly sustained by the Plaintiff.

### FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE, THIS DEFENDANT ALLEGES:
#### (Governmental Immunity/South Carolina Tort Claims Act)

26.     This action is governed by the terms, provisions and affirmative defenses set forth in the South Carolina Tort Claims Act which *inter alia* provide a limit on the amount of actual damages that can be recovered, a prohibition on the recovery of punitive damages and this Defendant plead these limitations as a cap on actual damages and a bar to any punitive damages. S.C. Code Ann. §15-78-120.

### FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE, THIS DEFENDANT ALLEGES:
#### (Eleventh Amendment Immunity)

27.     Eleventh Amendment Immunity in accordance with the Constitution of the United States of America and the State of South Carolina bars Plaintiff's claims in totality against this Defendant.

ELECTRONICALLY FILED - 2024 Apr 25 1:17 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:
(Comparative Negligence)**

28.     This defendant alleges that any injuries received by Plaintiff, as alleged in the Complaint, if any, were due to and caused by and were the direct and proximate result of acts of negligence on the part of the Plaintiff or a third party, over whom this Defendant had no control, so as to bar the claims of Plaintiff against this Defendant.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:
(Lack of Foreseeability)**

29.     That upon information and belief, even if the damages alleged in Plaintiff's Complaint, if any, were proximately caused by the acts and/or omissions of this Defendant, which is otherwise denied except for the purpose of these affirmative defenses, this Defendant did not and could not have foreseen that Plaintiff's damages, if any, could have proximately resulted from this Defendant's alleged acts or omissions.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:
(Reasonableness and Good Faith)**

30.     This Defendant alleges that it acted reasonably and in good faith at all times material herein, based on all relevant facts and circumstances known by them at the time they so acted.  Accordingly, Plaintiff is not entitled to the recovery of any damages whatsoever.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:
(Unforeseeable Intervening or Superseding Events)**

31.     The damages complained of were solely the result of unforeseeable intervening or superseding events over which this Defendant had no control.

ELECTRONICALLY FILED - 2024 Apr 25 1:17 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

## FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE
## THIS DEFENDANT ALLEGES:
### (No Breach)

32.     This Defendant did not breach any purported duty owed to Plaintiff so as to bar the Plaintiff from recovery against this Defendant.

## FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
## THIS DEFENDANT ALLEGES:
### (Assumption of the Risk)

33.     This Defendant alleges that the perils and dangers existing at the time of Plaintiff's actions, if any, were open, obvious, and known to the Plaintiff, who nevertheless conducted himself in such a manner so as to voluntarily assume all risks pertaining thereto.

## FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
## THIS DEFENDANT ALLEGES:
### (Pre-Existing Medical Condition)

34.     Whatever injuries the Plaintiff sustained, which are specifically denied herein, were the result of pre-existing medical conditions of the decedent, whether disclosed or undisclosed, and were not related to the incidents complained of in the Complaint.

## FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
## THIS DEFENDANT ALLEGES:
### (Predisposition of Medical Condition)

35.     Whatever injuries the Plaintiff sustained, which are specifically denied herein, were the result of the decedent's predisposition to medical conditions, whether disclosed or undisclosed, and were not related to the incidents complained of in the Complaint.

ELECTRONICALLY FILED - 2024 Apr 25 1:17 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:**
**(Natural Disease Process)**

36.     That this Defendant would allege, upon information and belief, that any injuries or damages sustained by Plaintiff were due to, caused and occasioned by the natural disease process over which this Defendant had no control and as such, this Defendant pleads such a natural disease process as a complete bar to this action.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:**
**(Punitive Damages Unconstitutional)**

37.     That any award or assessment of punitive damages as prayed for by the Plaintiff would violate this Defendant's Constitutional rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and comparable provisions of the South Carolina Constitution.

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:**
**(Application of S.C. Code Ann. § 15-38-15)**

38.     That, upon information and belief, even if this Defendant was negligent as described in the Amended Complaint, which is specifically denied, this Defendant was less than fifty percent liable for the total fault alleged.  Accordingly, joint and several liability should not apply to this action as it relates to this Defendant and this Defendant should be held liable only for the percentage of fault, which is specifically denied, to be determined by the trier of fact.  Additionally, the answering defendant hereby reserves the right to seek all remedies, rights and privileges available to them pursuant to S.C. Code Ann. §15-38-15.

ELECTRONICALLY FILED - 2024 Apr 25 1:17 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**FURTHER ANSWERING AND AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:**
**(Reservation and Non-Waiver)**

39.     This Defendant reserves any additional and further defenses as may be revealed by additional information during the course of discovery and investigation, as is consistent with the South Carolina Rules of Civil Procedure.

WHEREFORE, having fully answered the Plaintiff's Second Amended Complaint, and having asserted these affirmative defenses, the Defendant, Charleston County Sheriff's Office, prays that the Plaintiff's Second Amended Complaint be dismissed with prejudice and that they be awarded the costs and reasonable fees associated with this matter, and such other relief as the Court may deem just and proper.

HOOD LAW FIRM, LLC
172 Meeting Street
Post Office Box 1508
Charleston, SC  29402
Phone: (843) 577-4435
Facsimile: (843) 722-1630

**April 25, 2024**                    **/s/ Elloree A. Ganes**
Charleston, South Carolina        Elloree A. Ganes (SC #70509)
                                  elloree.ganes@hoodlaw.com
                                  Evan M. Sobocinski (SC #104259)
                                  evan.sobocinski@hoodlaw.com

                                  *Attorneys for the Defendants*
                                  *Charleston County Sheriff's Office*

ELECTRONICALLY FILED - 2024 Apr 26 12:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF CHARLESTON | C/A NO.: 2023-CP-10-01166 |
| Nekeya Jones, as Special Administrator of the Estate of D'Angelo D. Brown, | |
| Plaintiff, | |
| v. | **ANSWER TO SECOND AMENDED COMPLAINT ON BEHALF OF DEFENDANT CHARLESTON COUNTY** |
| Charleston County, Charleston County Sheriff's Office, Wellpath LLC, Paul Drago, MD, Priya Patel, MD, William Malcom, Kathleen H. Potter, NP, Roxanne Serohi, NP, Tamisha Johns, Cathy Mazyck, Jamal M. Singleton, Shannell T. McKellar, Lakeesha M. Palmer, Trent M. Evans, and Merete Enbusk, | **(JURY TRIAL DEMANDED)** |
| Defendants. | |

Defendant Charleston County (hereinafter "this Defendant") answers the Second Amended Complaint of Plaintiff as follows:

**FOR A FIRST DEFENSE**

1)     The Second Amended Complaint fails to state facts sufficient to constitute a claim against this Defendant, and therefore, this Defendant must be dismissed pursuant to Rule 12(b)(6) of the South Carolina Rules of Civil Procedure.

**FOR A SECOND DEFENSE**

2)     This Defendant denies each and every allegation of the Second Amended Complaint not hereinafter specifically admitted, qualified, or explained.

1

ELECTRONICALLY FILED - 2024 Apr 26 12:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

3)     As to the allegations set forth in Paragraph 1 of the Second Amended Complaint, this Defendant lacks sufficient information upon which to form a belief as to the truth and veracity of those allegations, and therefore denies those allegations as stated.

4)     As to the allegations set forth in Paragraph 2 of the Second Amended Complaint, this Defendant admits that Charleston County is a state agency pursuant to the South Carolina Constitution and the Laws of the State of South Carolina. As to the remaining allegations, this Defendant asserts that such allegations set forth legal conclusions which can neither be admitted nor denied. In so far as such allegations attempt to establish liability on the part of this Defendant, this Defendant denies those allegations as stated and demands strict proof thereof.

5)     As to the allegations set forth in Paragraphs 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, and 18 of the Second Amended Complaint, this Defendant asserts those allegations are directed to a co-defendant and require no response on the part of this Defendant. In so far as such allegations attempt to establish liability on the part of this Defendant, this Defendant would deny those allegations as stated and demand strict proof thereof.

6)     As to the allegations set forth in Paragraph 19 of the Second Amended Complaint, this Defendant asserts those allegations are jurisdictional in nature and do not require a response from this Defendant. Further answering, to the extent those allegations attempt to establish liability on the part of this Defendant, those allegations are denied.

7)     As to the allegations set forth in Paragraphs 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70 (including all

ELECTRONICALLY FILED - 2024 Apr 26 12:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

subparts) and 71 of the Second Amended Complaint, this Defendant admits, upon information and belief, only that D'Angelo Brown was housed at the Sheriff Al Cannon Detention Center beginning on or about August 10, 2022, that he passed away on December 29, 2022, and that Wellpath LLC was contracted for providing medical care to residents of Sheriff Al Cannon Detention Center at the time.  Further answering, this Defendant refers to all records, documentation and evidence related to D'Angelo Brown's detainment and health history as well as the agreement between the Detention Center and Wellpath LLC.  All remaining allegations in the above-referenced paragraphs that are inconsistent with the records, documentation and evidence are denied as stated.

8)     As to the allegations set forth in Paragraph 72 of the Second Amended Complaint, this Defendant denies those allegations as stated.

9)     As to the allegations set forth in Paragraph 73 of the Second Amended Complaint, this Defendant craves reference to the autopsy records of D'Angelo Brown. This Defendant denies all allegations not supported by those autopsy records.

10)     As to the allegations set forth in Paragraph 74 of the Second Amended Complaint, this Defendant denies those allegations as stated and demands strict proof thereof.

11)     As to the allegations set forth in Paragraph 75 of the Second Amended Complaint, this Defendant craves reference to the applicable medical records and autopsy report of D'Angelo Brown.  This Defendant denies all allegations not supported by those records.

ELECTRONICALLY FILED - 2024 Apr 26 12:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

12)     As to the allegations set forth in Paragraphs 76, 79, 84, 87, 92, and 101 of the Second Amended Complaint, this Defendant repeats and realleges each and every paragraph and affirmative defense set forth herein.

13)     As to the allegations set forth in Paragraphs 77 (including all subparts) and 78 of the Second Amended Complaint, this Defendant denies those allegations as stated and demands strict proof thereof.

14)     As to the allegations set forth in Paragraph 80 of the Second Amended Complaint, this Defendant asserts that such allegations set forth legal conclusions which can neither be admitted nor denied.  In so far as such allegations attempt to establish liability on the part of this Defendant, this Defendant denies those allegations as stated and demands strict proof thereof.

15)     As to the allegations set forth in Paragraphs 81, 82 (including all subparts) and 83 of the Second Amended Complaint, this Defendant denies those allegations as stated and demands strict proof thereof.

16)     As to the allegations set forth in Paragraphs 85 (including all subparts), 86, 88, 89, 90 (including all subparts), 91, 93, 94, 95, 96 (including all subparts), 97, 98, 99, 100, 102, 103, 104, 105 (including all subparts), 106, 107, 108, and 109 of the Second Amended Complaint, this Defendant asserts those allegations are directed to a co-defendant and require no response on the part of this Defendant.  In so far as such allegations attempt to establish liability on the part of this Defendant, this Defendant would deny those allegations as stated and demand strict proof thereof.

ELECTRONICALLY FILED - 2024 Apr 26 12:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

17)      As to the unnumbered paragraph of the Second Amended Complaint beginning "WHEREFORE" (including all subparts), this Defendant denies that Plaintiff is entitled to the relief requested, or any other relief from this Defendant.  This Defendant specifically denies that Plaintiff is entitled to any type of costs or attorney fees under South Carolina law or punitive damages.

### FOR A THIRD DEFENSE

18)      This Defendant alleges, upon information and belief, that any injuries or damages allegedly suffered by Plaintiff or Plaintiff's decedent, without admitting same to be true, were due to and caused entirely by the negligence of Plaintiff and Plaintiff's decedent or that Plaintiff and Plaintiff's decedent's negligence which is more than this Defendant's negligence, and that such is a complete bar to Plaintiff's recovery herein. Further, this Defendant alleges, upon information and belief, that if Plaintiff or Plaintiff's decedent's negligence was less than this Defendant's negligence, that such negligence should be compared to that negligence of this Defendant, so as to apportion the relative fault as to each party.

### FOR A FOURTH DEFENSE

19)      This Defendant alleges, upon information and belief, that any injuries or damages alleged in the Second Amended Complaint were due to, occasioned by, or caused by intervening acts or  omissions on the part of someone other than this Defendant or this Defendant's employees, without which acts and/or omissions Plaintiff and Plaintiff's decedent would not have sustained any injuries or damages as set forth in the Second Amended Complaint, all of which this Defendant pleads as a complete bar to this action.

ELECTRONICALLY FILED - 2024 Apr 26 12:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

## FOR A FIFTH DEFENSE

20)     This Defendant would allege, upon information and belief, that any damages alleged to have been caused by this Defendant, which are specifically denied, must be apportioned between this Defendant and other tortfeasors pursuant to S.C. Code Ann. § 15-78-100(c).

## FOR A SIXTH DEFENSE

21)     This Defendant asserts that the injuries and damages alleged in the Second Amended Complaint were due to and caused by Plaintiff's decedent's underlying medical conditions and did not result from any departure of generally accepted standards of care by this Defendant.  As a result, this Defendant is in no way liable for the matters alleged in the Second Amended Complaint.

## FOR A SEVENTH DEFENSE

22)     This Defendant would allege, upon information and belief, that any injuries or damages sustained by Plaintiff's decedent was due to and caused by the natural disease process over which this Defendant had no control and, as such, this Defendant pleads such a natural disease process as a bar, in whole or in part, to this action.

## FOR AN EIGHTH DEFENSE

23)     This Defendant asserts the defense of sovereign immunity pursuant to the terms and conditions of the South Carolina Tort Claims Act, including the definition of "loss" as set forth in S.C. Code Ann. § 15-78-30(f), and damages caps set forth in S.C. Code Ann. § 15-78-120 and the bar on punitive damages.

ELECTRONICALLY FILED - 2024 Apr 26 12:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

## FOR A NINTH DEFENSE

24)     This Defendant is immune from suit pursuant to the South Carolina Tort Claims Act, S.C. Code Ann. §15-78-60 (1), (2), (3), (4), (5), (20) and (25), and therefore, must be dismissed.

## FOR A TENTH DEFENSE

25)     This Defendant is immune from suit pursuant to S.C. Code Ann. §§ 15-78-40 and/or 15-78-50(b).

## FOR AN ELEVENTH DEFENSE

26)     Plaintiff cannot seek punitive damages against this Defendant pursuant to public policy, as well as the South Carolina and United States Constitutions, and therefore, all claims for punitive damages should be stricken from the Second Amended Complaint.

## FOR A TWELFTH DEFENSE

27)     Plaintiff cannot seek attorneys' fees and costs against this Defendant, pursuant to the South Carolina Tort Claims Act, and therefore, all such claims for attorneys' fees and costs must be stricken from the Second Amended Complaint.

## FOR A THIRTEENTH DEFENSE

28)     This Defendant asserts that it is not the proper party defendant in this case since it is not liable for the actions of the Sheriff of Charleston County or her deputies, pursuant to the laws of South Carolina.

## FOR A FOURTEENTH DEFENSE

29)     This Defendant would plead as a complete bar to this action Plaintiff's decedent's assumption of the risk of his actions.

ELECTRONICALLY FILED - 2024 Apr 26 12:51 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

### FOR A FIFTEENTH DEFENSE

30)     This Defendant asserts the Public Duty Rule as a bar to Plaintiff's allegations, in whole or in part.


WHEREFORE, having fully answered the Second Amended Complaint of Plaintiff, this Defendant prays that the Second Amended Complaint be dismissed with prejudice, for the costs of this action, and for such other and further relief as the Court deems just and proper.


RILEY POPE & LANEY, LLC


_s/David A. DeMasters_
_____
DAVID A. DEMASTERS          #79860
2838 Devine Street
Columbia, South Carolina 29205
DDeMasters@rplfirm.com
T: 803-799-9993
F: 803-239-1414


_Counsel for Defendant Charleston County_

Columbia, South Carolina

April 26, 2024

8

ELECTRONICALLY FILED - 2024 Apr 29 2:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | CIVIL ACTION NO.: 2023-CP-10-01166 |
| | ) | |
| NEKEYA JONES, as Special Administrator of the Estate of D'ANGELO D. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **DEFENDANT PRIYA PATEL, MD'S** |
| CHARLESTON COUNTY, CHARLESTON COUNTY SHERIFF'S OFFICE, WELLPATH, LLC, PAUL DRAGO, MD, PRIYA PATEL, MD, WILLIAM MALCOLM, KATHLEEN H. POTTER, NP, ROXANNE SEROKI, NP, TAMISHA JOHNS, CATHY MAZYCK, JAMAL M. SINGLETON, SHANNELL T. MCKELLAR, LAKEESHA M. PALMER, TRENT M. EVANS, and MERETE ENBUSK, | ) | **ACCEPTANCE OF SERVICE FOR PLAINTIFF'S SECOND AMENDED SUMMONS & COMPLAINT** |
| | ) | |
| Defendants. | ) | |

Without waiving any affirmative defenses, I hereby acknowledge receipt of and accept service for the above captioned Second Amended Summons & Complaint on behalf of Defendant Priya Patel, MD on this 19 day of _____April_____, 2024.

_____
Jack G. Gresh, Esq. as attorney for
Defendant Priya Patel, MD

ELECTRONICALLY FILED - 2024 Apr 29 2:33 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

STATE OF SOUTH CAROLINA    )   IN THE COURT OF COMMON PLEAS
    )
COUNTY OF CHARLESTON    )   CIVIL ACTION 2023-CP-10-01166

NEKEYA JONES, as Special )
Administrator of the Estate of D'ANGELO )
D. BROWN, )
    )
        Plaintiff, )
    )
v. )
    )
CHARLESTON COUNTY, )
CHARLESTON COUNTY SHERIFF'S )
OFFICE, WELLPATH LLC, PAUL )    **ACCEPTANCE OF**
DRAGO, MD, PRIYA PATEL, MD, )    **SERVICE**
WILLIAM MALCOLM, KATHLEEN H. )
POTTER, NP, ROXANNE SEROHI, NP, )
TAMISHA JOHNS, CATHY MAZYCK, )
JAMAL M. SINGLETON, SHANNELL T. )
MCKELLAR, LAKEESHA M. PALMER, )
TRENT M. EVANS, and MERETE )
ENBUSK, )
    )
        Defendants. )

    I hereby certify acknowledge receipt of and accept service of the above captioned

**SECOND AMENDED SUMMONS & COMPLAINT** on behalf of the Defendants, **WILLIAM**

**MALCOLM, JAMAL M. SINGLETON, SHANNELL T. McKELLER, LAKEESHA M.**

**PALMER, TRENT M. EVANS and MERETE ENBUSK** on this _29th_ day of

_____April_____, 2024.

 

_____
Signature

_____
Printed Name and Title

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF CHARLESTON | ) | CIVIL ACTION NO.: 2023-CP-10-01166 |
| | ) | |
| NEKEYA JONES, as Special Administrator of the Estate of D'ANGELO D. BROWN, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **DEFENDANT PRIYA PATEL, MD'S** |
| CHARLESTON COUNTY, CHARLESTON | ) | **ANSWER TO PLAINTIFF'S SECOND** |
| COUNTY SHERIFF'S OFFICE, | ) | **AMENDED COMPLAINT** |
| WELLPATH, LLC, PAUL DRAGO, MD, | ) | |
| PRIYA PATEL, MD, WILLIAM | ) | |
| MALCOLM, KATHLEEN H. POTTER, NP, | ) | |
| ROXANNE SEROKI, NP, TAMISHA | ) | |
| JOHNS, CATHY MAZYCK, JAMAL M. | ) | |
| SINGLETON, SHANNELL T. | ) | |
| MCKELLAR, LAKEESHA M. PALMER, | ) | |
| TRENT M. EVANS, and MERETE | ) | |
| ENBUSK, | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW, PRIYA PATEL, MD, (hereinafter "This Defendant"), by and through her undersigned counsel, answering Plaintiff's Second Amended Complaint subject to all affirmative defenses and motions, would allege unto this Honorable Court as follows:

1. This Defendant is without sufficient information at this time to admit or deny the allegations contained in Paragraph 1 of the Plaintiff's Second Amended Complaint and therefore denies the same.

2. The allegations and averments made within Paragraph 2 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond. To the extent such a response is required to those averments, this Defendant would deny the same.

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

3.  The allegations and averments made within Paragraph 3 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond. To the extent such a response is required to those averments, this Defendant would deny the same.

4.  The allegations and averments made within Paragraph 4 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond. To the extent such a response is required to those averments, this Defendant would deny the same.

5.  The allegations and averments made within Paragraph 5 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond. To the extent such a response is required to those averments, this Defendant would deny the same.

6.  In response to Paragraph 6 of Plaintiff's Second Amended Complaint, this Defendant would admit that she is a resident of South Carolina and a licensed psychiatrist, who, for a time, provided psychiatric services at Charleston County Detention Center. It is further admitted that this Defendant was an independent contractor with Wellpath LLC, and during her shifts at the CCDC, had a physician-patient relationship with D'Angelo Brown. All other allegations or averments contained in Paragraph 6 of Plaintiff's Second Amended Complaint not specifically admitted above are denied.

7.  The allegations and averments made within Paragraph 7 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond. To the extent such a response is required to those averments, this Defendant would deny the same.

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

8.  The allegations and averments made within Paragraph 8 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond.  To the extent such a response is required to those averments, this Defendant would deny the same.

9.  The allegations and averments made within Paragraph 9 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond.  To the extent such a response is required to those averments, this Defendant would deny the same.

10. The allegations and averments made within Paragraph 10 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond.  To the extent such a response is required to those averments, this Defendant would deny the same.

11. The allegations and averments made within Paragraph 11 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond.  To the extent such a response is required to those averments, this Defendant would deny the same.

12. The allegations and averments made within Paragraph 12 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond.  To the extent such a response is required to those averments, this Defendant would deny the same.

13. The allegations and averments made within Paragraph 13 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

respond. To the extent such a response is required to those averments, this Defendant would deny the same.

14. The allegations and averments made within Paragraph 14 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond. To the extent such a response is required to those averments, this Defendant would deny the same.

15. The allegations and averments made within Paragraph 15 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond. To the extent such a response is required to those averments, this Defendant would deny the same.

16. The allegations and averments made within Paragraph 16 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond. To the extent such a response is required to those averments, this Defendant would deny the same.

17. The allegations and averments made within Paragraph 17 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond. To the extent such a response is required to those averments, this Defendant would admit the same.

18. In response to Paragraph 18 of Plaintiff's Second Amended Complaint, this Defendant would admit that Plaintiff has complied with the pre-lawsuit procedural requirements provided for by the South Carolina Medical Malpractice Act. This Defendant would deny generally the allegations and averments within the pleadings and affidavits incorporated by reference or attached to Plaintiff's Second Amended Compliant.

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

19. In response to Paragraph 19 of Plaintiff's Second Amended Complaint, this Defendant would admit that this Court has jurisdiction over this matter; however, this Defendant would deny any acts or omissions giving rise to liability are attributable to her.

## FACTS

20. As to the allegations contained in Paragraph 20 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

21. As to the allegations contained in Paragraph 21 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

22. This Defendant is without sufficient information at this time to admit or deny the allegations contained in Paragraph 22 of the Plaintiff's Second Amended Complaint and therefore denies the same.

23. The allegations and averments made within Paragraph 23 of the Plaintiff's Second Amended Complaint call for legal conclusions which do not require a response from this Defendant. To the extent that this defendant is required to respond, this Defendant would generally admit the same.

24. The allegations and averments made within Paragraph 24 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond.  To the extent such a response is required to those averments, this Defendant would deny the same.

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

25. The allegations and averments made within Paragraph 25 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond. To the extent such a response is required to those averments, this Defendant would deny the same.

26. The allegations and averments made within Paragraph 26 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond. To the extent such a response is required to those averments, this Defendant would deny the same.

27. The allegations and averments made within Paragraph 27 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond. To the extent such a response is required to those averments, this Defendant would deny the same.

28. This Defendant is without sufficient information at this time to admit or deny the allegations contained in Paragraph 28 of the Plaintiff's Second Amended Complaint and therefore denies the same.

29. This Defendant is without sufficient information at this time to admit or deny the allegations contained in Paragraph 29 of the Plaintiff's Second Amended Complaint and therefore denies the same.

30. This Defendant is without sufficient information at this time to admit or deny the allegations contained in Paragraph 30 of the Plaintiff's Second Amended Complaint and therefore denies the same.

31. Upon information and belief, it is admitted that Mr. Brown was arrested and booked at the Charleston County Detention Center on or about August 10, 2022. All other allegations

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

and averments contained in Pragraph 31 of Plaintiff's Second Amended Complaint are denied as stated.

32. In response to Paragraph 32 of Plaintiff's Second Amended Complaint, this Defendant would deny that she subjected Mr. Brown to inhumane treatment and deplorable living conditions, or that she contributed to his death. All other allegations and averments contained within this Paragraph of Plaintiff's Second Amended Complaint are denied.

33. As to the allegations contained in Paragraph 33 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

34. As to the allegations contained in Paragraph 34 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

35. As to the allegations contained in Paragraph 35 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

36. As to the allegations contained in Paragraph 36 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

37. As to the allegations contained in Paragraph 37 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

38. As to the allegations contained in Paragraph 38 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

39. As to the allegations contained in Paragraph 39 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

40. As to the allegations contained in Paragraph 40 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

41. As to the allegations contained in Paragraph 41 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

42. As to the allegations contained in Paragraph 42 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

43. As to the allegations contained in Paragraph 43 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the referenced Wellpath policies and deposition testimony for an accurate recitation of the policies and denies any allegations contained in this Paragraph inconsistent with the same.

44. As to the allegations contained in Paragraph 44 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the referenced CCSO policies and deposition testimony for an accurate recitation of the policies and denies any allegations contained in this Paragraph inconsistent with the same.

45. As to the allegations contained in Paragraph 45 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

46. This Defendant is without sufficient information at this time to admit or deny the allegations contained in Paragraph 46 of the Plaintiff's Second Amended Complaint and therefore denies the same.

47. As to the allegations contained in Paragraph 47 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

48. As to the allegations contained in Paragraph 48 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

49. As to the allegations contained in Paragraph 49 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

50. As to the allegations contained in Paragraph 50 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

51. As to the allegations contained in Paragraph 51 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

52. In response to Paragraph 52 of Plaintiff's Second Amended Complaint, this Defendant would deny that she placed Mr. Brown in a restraint chair for any amount of time for being uncooperative. As to the remaining allegations contained in Paragraph 52 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

53. As to the allegations contained in Paragraph 53 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same. By way of further response, this Defendant would state that the emergent referral to the state hospital was accomplished emergently, but the state hospital declined to accept Mr. Brown as a patient.

54. As to the allegations contained in Paragraph 54 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same. By way of further response, this Defendant would deny that it was reported to her that Mr. Brown had been observed by staff eating feces, nor that he had it all in his teeth.

55. As to the allegations contained in Paragraph 55 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

56. As to the allegations contained in Paragraph 56 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

57. As to the allegations contained in Paragraph 57 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

58. As to the allegations contained in Paragraph 58 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same. By way of further response, this Defendant denies any allegation that the care and treatment she provided to Mr. Brown was negligent, or that her treatment of Mr. Brown caused or contributed to his death.

59. As to the allegations contained in Paragraph 59 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

60. As to the allegations contained in Paragraph 60 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

61. As to the allegations contained in Paragraph 61 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same. By way of further response, this Defendant would state that the concerns referenced in this Paragraph were not reported to her.

62. As to the allegations contained in Paragraph 62 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

63. As to the allegations contained in Paragraph 63 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

64. As to the allegations contained in Paragraph 64 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

65. As to the allegations contained in Paragraph 65 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

66. As to the allegations contained in Paragraph 66 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

67. As to the allegations contained in Paragraph 67 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same; however, this Defendant would further state that weight documented by EMS on December

21, 2022 is likely incorrect as MUSC thereafter documents Mr. Brown's weight as 166 pounds.

68. As to the allegations contained in Paragraph 68 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

69. As to the allegations contained in Paragraph 69 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same.

70. As to the allegations contained in Paragraph 70 of the Plaintiff's Second Amended Complaint, this Defendant craves reference to the medical records, custody records and deposition testimony for an accurate recitation of the medical treatment provided to the Plaintiff and denies any allegations contained in this Paragraph inconsistent with the same. By way of further response, this Defendant denies any allegation that the care and treatment she provided to Mr. Brown was negligent, or that her treatment of Mr. Brown caused or contributed to his death.

71. As to the allegations contained in Paragraph 71 of the Plaintiff's Second Amended Complaint, this Defendant would deny the same.

72. As to the allegations contained in Paragraph 72 of the Plaintiff's Second Amended Complaint, this Defendant would deny the same.

73. As to the allegations contained in Paragraph 73 of the Plaintiff's Second Amended Complaint, this Defendant would deny the same.

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

74. This Defendant denies the allegations and averments contained in Paragraph 74 of Plaintiff's Second Amended Complaint to the extent they are directed towards her.

75. In response to Paragraph 75, this Defendant admits that Charleston County Coroner Bobbi Jo O'Neal released a report stating the items delineated in Paragraph 75, but denies the accuracy of the report and the conclusions reached in the report, including the cause and manner of death.

**FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS CHARLESTON COUNTY AND CHARLESTON COUNTY SHERIFF'S OFFICE**
**(Negligence / Gross Negligence – Survival)**

76. This Defendant restates and reaffirms every response set forth above as if stated herein verbatim.

77. This Defendant denies the allegations and averments contained in Paragraph 77 of Plaintiff's Second Amended Complaint to the extent they are directed towards her; however, it appears that the allegations and averments made within Paragraph 77 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond.

78. This Defendant denies the allegations and averments contained in Paragraph 78 of Plaintiff's Second Amended Complaint to the extent they are directed towards her; however, it appears that the allegations and averments made within Paragraph 78 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond.

**FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS CHARLESTON COUNTY AND CHARLESTON COUNTY SHERIFF'S OFFICE**
**(Wrongful Death)**

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

79. This Defendant restates and reaffirms every response set forth above as if stated herein verbatim.

80. This Defendant denies the allegations and averments contained in Paragraph 80 of Plaintiff's Second Amended Complaint to the extent they are directed towards her.

81. This Defendant denies the allegations and averments contained in Paragraph 81 of Plaintiff's Second Amended Complaint to the extent they are directed towards her.

82. This Defendant denies the allegations and averments contained in Paragraph 82 of Plaintiff's Second Amended Complaint to the extent they are directed towards her.

83. This Defendant denies the allegations and averments contained in Paragraph 83 of Plaintiff's Second Amended Complaint to the extent they are directed towards her.

## FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS WELLPATH LLC, PAUL DRAGO, MD AND PRIYA PATEL, MD
### (Negligence / Medical Malpractice– Survival)

84. This Defendant restates and reaffirms every response set forth above as if stated herein verbatim.

85. This Defendant denies the allegations and averments (including all subparts) contained in Paragraph 85 of Plaintiff's Second Amended Complaint to the extent they are directed towards her.

86. This Defendant denies the allegations and averments contained in Paragraph 86 of Plaintiff's Second Amended Complaint to the extent they are directed towards her.

## FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS WELLPATH LLC, PAUL DRAGO, MD AND PRIYA PATEL, MD
### (Wrongful Death)

87. This Defendant restates and reaffirms every response set forth above as if stated herein verbatim.

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

88. This Defendant denies the allegations and averments contained in Paragraph 88 of Plaintiff's Second Amended Complaint to the extent they are directed towards her.

89. This Defendant denies the allegations and averments contained in Paragraph 89 of Plaintiff's Second Amended Complaint to the extent they are directed towards her.

90. This Defendant denies the allegations and averments contained in Paragraph 90 of Plaintiff's Second Amended Complaint (including all subparts) to the extent they are directed towards her.

91. This Defendant denies the allegations and averments contained in Paragraph 91 of Plaintiff's Second Amended Complaint to the extent they are directed towards her.

**FOR A FIFTH CAUSE OF ACTION AGAINST DEFENDANTS WILLIAM MALCOM, JAMAL SINGLETON, SHANNEL T. MCKELLER, LAKEESHA M. PALMER, TRENT M. EVANS AND MERETE ENBUSK, EACH IN THEIR INDIVIDUAL CAPACITY**
**(Violation of Federal Civil Rights 42 U.S.C. § 1983 – Violation of Due Process / Failure to Provided Medical Care for A Serious Medical Need / Cruel and Unusual Punishment)**

92. This Defendant restates and reaffirms every response set forth above as if stated herein verbatim.

93. The allegations and averments made within Paragraph 93 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond.  To the extent such a response is required to those averments, this Defendant would deny the same.

94. The allegations and averments made within Paragraph 94 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond.  To the extent such a response is required to those averments, this Defendant would deny the same.

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

95. The allegations and averments made within Paragraph 95 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond. To the extent such a response is required to those averments, this Defendant would deny the same.

96. The allegations and averments made within Paragraph 96 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond. To the extent such a response is required to those averments, this Defendant would deny the same.

97. The allegations and averments made within Paragraph 97 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond. To the extent such a response is required to those averments, this Defendant would deny the same.

98. This Defendant denies the allegations and averments contained in Paragraph 98 of Plaintiff's Second Amended Complaint to the extent they are directed towards her.

99. The allegations and averments made within Paragraph 99 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond. To the extent such a response is required to those averments, this Defendant would deny the same.

100.    The allegations and averments made within Paragraph 100 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond. To the extent such a response is required to those averments, this Defendant would deny the same.

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**FOR A SIXTH CAUSE OF ACTION AGAINST DEFENDANTS KATHLEEN POTTER, NP, ROXANNE SEROHI, NP, TAMISHA JOHNS, AND CATHY MAZYCK, EACH IN THEIR INDIVIDUAL CAPACITY**
**(Violation of Federal Civil Rights 42 U.S.C. § 1983 – Violation of Due Process / Failure to Provided Medical Care for A Serious Medical Need / Cruel and Unusual Punishment)**

101.     This Defendant restates and reaffirms every response set forth above as if stated herein verbatim.

102.     The allegations and averments made within Paragraph 102 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond.  To the extent such a response is required to those averments, this Defendant would deny the same.

103.     The allegations and averments made within Paragraph 103 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond.  To the extent such a response is required to those averments, this Defendant would deny the same.

104.     The allegations and averments made within Paragraph 104 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond.  To the extent such a response is required to those averments, this Defendant would deny the same.

105.     The allegations and averments made within Paragraph 105 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond.  To the extent such a response is required to those averments, this Defendant would deny the same.

106.     The allegations and averments made within Paragraph 106 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

to respond. To the extent such a response is required to those averments, this Defendant would deny the same.

107.    This Defendant denies the allegations and averments contained in Paragraph 107 of Plaintiff's Second Amended Complaint to the extent they are directed towards her.

108.    The allegations and averments made within Paragraph 108 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond. To the extent such a response is required to those averments, this Defendant would deny the same.

109.    The allegations and averments made within Paragraph 109 of Plaintiff's Second Amended Complaint are not directed at this Defendant such that this Defendant is required to respond. To the extent such a response is required to those averments, this Defendant would deny the same.

110.    This Defendant joins the plaintiff in demanding a jury trial.

111.    In response to the unnumbered "WHEREFORE" Paragraph of Plaintiff's Second Amended Complaint, this Defendant would deny the same.

112.    All other allegations and averments made within Plaintiff's Second Amended Complaint not specifically admitted above are hereby denied.

**FURTHER ANSWERING AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:**
**(Failure to State a Claim)**

113.    Plaintiff's Second Amended Complaint fails to state a claim upon which relief can be granted. Therefore, all claims made against this Defendant fail as a matter of law.

**FURTHER ANSWERING AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:**
**(Compliance With the Standard of Care)**

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

114.    That the care and treatment administered by this Defendant conformed to and was in full compliance with the standard of care. All care and treatment administered by this Defendant was within acceptable medical standards and methods, and, at no time pertinent hereto, did this Defendant deviate from any medical standard while caring for or tending to the Plaintiff. Consequently, the Plaintiff is barred from recovery against this Defendant.

<u>**FURTHER ANSWERING AS AN AFFIRMATIVE DEFENSE, THIS DEFENDANT ALLEGES:**</u>
**(No Proximate Cause)**

115.    That, even if this Defendant was negligent, as alleged in the Second Amended Complaint, which this Defendant specifically denies, the negligence of this Defendant is not the direct or proximate cause of any injury alleged by the Plaintiff and therefore this Defendant is not liable for any damages allegedly sustained by the Plaintiff.

<u>**FURTHER ANSWERING AS AN AFFIRMATIVE DEFENSE, THIS DEFENDANT ALLEGES:**</u>
**(Superseding / Intervening Causes)**

116.    Whatever injuries and damages, if any, may have been sustained by the Plaintiff, were due to superseding and/or intervening causes beyond the control of this Defendant.

<u>**FURTHER ANSWERING AS AN AFFIRMATIVE DEFENSE, THIS DEFENDANT ALLEGES:**</u>
**(Superseding / Intervening Negligence)**

117.    Should it be determined that this Defendant was negligent, careless, reckless or grossly negligent, which the allegations are expressly denied by this Defendant, then this Defendant would show this Court that the damages sustained by the Plaintiff, if any, were proximately caused by the intervening and superseding negligence of others, which intervening and superseding negligence proximately caused any damages alleged to have been suffered by the Plaintiff.

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**FURTHER ANSWERING AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:
(Intervening Negligence / Negligence of a Third Party)**

118.    That, upon information and belief, even if this Defendant was negligent in the manner described in the Plaintiff's Second Amended Complaint, which is specifically denied, whatever injuries and damages, if any, which may have been sustained by the Plaintiff was the direct and proximate result of the intervening and superseding negligence of third parties, for whose conduct this Defendant bears no responsibility. Therefore, the Plaintiff is barred from recovery against this Defendant.

**FURTHER ANSWERING AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:
(Natural Disease Process)**

119.    That this Defendant would allege, upon information and belief, that any injuries or damages sustained by this Plaintiff were due to, caused and occasioned by the natural disease process over which this Defendant had no control and as such, this Defendant pleads such a natural disease process as a complete bar to this action.

**FURTHER ANSWERING AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:
(Comparative Negligence)**

120.    To the extent the evidence shows Plaintiff's decedent did not follow the reasonable medical instructions of his respective healthcare providers, then some or all of Plaintiff's claims are barred in whole or in part by the doctrines of comparative negligence and failure to mitigate damages. Further, to the extent shown by the evidence, that negligence may be the sole and proximate cause of the alleged injuries suffered.

**FURTHER ANSWERING AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:
(Pre-Existing Medical Condition)**

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

121.        Whatever injuries the Plaintiff sustained, which are specifically denied, were the result of pre-existing medical conditions of the Plaintiff, whether disclosed or undisclosed, and were not related to the incidents complained of in the Plaintiff's Second Amended Complaint.

**FURTHER ANSWERING AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:
(Statutory Damages Caps)**

122.        This Defendant pleads all applicable statutory caps on punitive damages, including but not limited to, the caps described in S.C. Code Ann. §15-32-530, et seq., as amended.

**FURTHER ANSWERING AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:
(Noneconomic Damages Awards)**

123.        No award for noneconomic damages shall exceed the statutory limits contained in the Noneconomic Damages Awards Act of 2005, South Carolina Code Ann. §15-32-200, et. seq. This Defendant is a health care provider as defined by S.C. Code Ann. § 15-32-210 and pursuant to §15-32-220 of the Noneconomic Damage Awards Act of 2005, any potential recovery of noneconomic damages is limited to the amounts stated therein effective as of the time the care and treatment was rendered to the Plaintiff.

**FURTHER ANSWERING AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:
(Punitive Damages Award Limitations)**

124.        No award for punitive damages against this Defendant shall exceed the statutory limits contained in S.C. Code Ann § 15-32-510, *et seq*.

**FURTHER ANSWERING AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:
(Punitive Damages Unconstitutional)**

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

125.     That any award or assessment of punitive damages as prayed for by the Plaintiff would violate this Defendant's Constitutional rights under the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and comparable provisions of the South Carolina Constitution as well as the holding of <u>State Farm Mutual Automobile Insurance Company v. Campbell</u>, 538 U.S. 408 (2003).

**FURTHER ANSWERING AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:
(Bifurcation of Punitive Damages)**

126.     As punitive damages are sought from this Defendant, for which liability is specifically denied, a trial on those issues must be bifurcated pursuant to S.C. Ann. § 15-32-520(A). As such, only if a jury were to determine that this Defendant owed actual or compensatory damages to the Plaintiff, would a second phase of trial begin to determine whether punitive damages were appropriate.

**FURTHER ANSWERING AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:
(Setoff)**

127.     Any recovery by Plaintiff must be reduced or offset by amounts Plaintiff has received or will receive from others for the same injuries/damages claimed in this lawsuit.

**FURTHER ANSWERING AS AN AFFIRMATIVE DEFENSE,
THIS DEFENDANT ALLEGES:
(Contribution Among Joint Tortfeasors)**

128.     The acts of a person other than this Defendant and/or its employees may be the sole and proximate cause of the injuries complained of in the Second Amended Complaint. If this Defendant is deemed responsible to the Plaintiff for any damages or injuries, which is strictly denied, then this Defendant is entitled to contribution from all joint tortfeasors pursuant to the South Carolina Contribution Among Joint Tortfeasors Act, S.C. Ann. § 15-

ELECTRONICALLY FILED - 2024 May 07 9:58 AM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

38-10 *et seq*. The acts or omissions of a person, persons, or entity other than this Defendant is at least the partial, and may be the sole and proximate cause of the incident complained of in the Second Amended Complaint. This Defendant's negligence, if any, was less than fifty percent of the total fault for the Plaintiff's alleged damages as compared with the total fault of all the Defendants, named or un-named. As such, this Defendant should only be responsible for that percentage of the Plaintiff's alleged damages, to be determined by the jury or trier of fact.

<u>**FURTHER ANSWERING AS AN AFFIRMATIVE DEFENSE,**</u>
<u>**THIS DEFENDANT ALLEGES:**</u>
**(Reservation and Non-Waiver)**

129.     This Defendant reserves any additional and further defenses as may be revealed by additional information during the course of discovery and investigation, as is consistent with the South Carolina Rules of Civil Procedure.

130.     WHEREFORE, having fully answered the Plaintiff's Second Amended Complaint, and having asserted these affirmative defenses, Defendant Priya Patel, M.D., prays that the Plaintiff's Second Amended Complaint be dismissed with prejudice and that she be awarded the costs and reasonable fees associated with this matter, and such other relief as the Court may deem just and proper.

Dodds Hennessy & Stith, LLC

By:  */s/ Jack G. Gresh*_____
       Jack G. Gresh, SC Bar No. 75188
       Email:  jack@dhs-lawfirm.com
       1012 eWall Street, Suite A
       Mount Pleasant, SC 29464
       (843) 881-1022
       *Attorneys for Priya Patel, MD*

May _7_, 2024
Mount Pleasant, South Carolina

ELECTRONICALLY FILED - 2024 May 17 2:39 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF CHARLESTON | THE NINTH JUDICIAL CIRCUIT |
| | CASE NO.: 2023-CP-10-01166 |

STATE OF SOUTH CAROLINA )
COUNTY OF CHARLESTON )
)
Nekeya Jones, as Special Administrator of the )
Estate of D'Angelo D. Brown, )
)
           Plaintiff, )
v. )
)
Charleston County; Charleston County )
Sheriff's Office; Wellpath, LLC; Paul Drago, )
MD; Priya Patel, MD; William Malcolm; )
Kathleen H. Potter, NP; Roxanne Serohi, NP; )
Tamisha Johns; Cathy Mazyck; Jamal M. )
Singleton; Shannell T. McKellar; Lakeesha M. )
Palmer; Trent M. Evans; and Merete Enbusk, )
)
           Defendants. )
_____ )

**DEFENDANT PAUL DRAGO, MD'S
ANSWER TO SECOND AMENDED
COMPLAINT
(JURY TRIAL DEMANDED)**

      COMES NOW, Defendant Paul Drago, M.D. (this Defendant), by and through his undersigned counsel, and hereby Answers Plaintiff's Second Amended Complaint, and shows the Court as follows:

**<u>FIRST DEFENSE</u>**

      Plaintiff has failed to state a claim upon which relief may be granted by this Court and this Defendant should be dismissed pursuant to SCRCP 12(b)(6).

**<u>SECOND DEFENSE</u>**

      This Defendant exercised that degree of skill and care required of him by law at all times relevant to the matters complained of in the Second Amended Complaint. This Defendant did not deviate from any generally-accepted standards, practices, and procedures exercised by competent professionals in his respective field of correctional medicine acting under the same or similar circumstances.

ELECTRONICALLY FILED - 2024 May 17 2:39 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

### THIRD DEFENSE

Any recovery by Plaintiff must be reduced or offset by amounts Plaintiff has received or will receive from others for the same injuries/damages claimed in this lawsuit.

### FOURTH DEFENSE

This Defendant did not deviate from any generally-accepted standards, practices, and procedures exercised by similar competent professionals in the field acting under the same or similar circumstances.

### FIFTH DEFENSE

Any alleged negligence or deviations from the standard of care (which are expressly denied) were not a direct, proximate, or legal cause of some or all of the injuries or death of Plaintiff's decedent or damages claimed by Plaintiff.

### SIXTH DEFENSE

Plaintiff's claims for non-economic damages are limited in amount under South Carolina law by the statutory limits contained in the Noneconomic Damages Awards Act of 2005, South Carolina Code Ann. §15-32-200, *et. seq.* as amended, specifically including South Carolina Code Ann. §15-32-220.

### SEVENTH DEFENSE

Any punitive damages awarded in this case would be subject to the limitations described in S.C. Code §15-32-530, or otherwise as limited under South Carolina statutory and case law, and this Defendant specifically pleads these limitations as a defense and requests a bifurcation of the punitive damages phase of trial.

### EIGHTH DEFENSE

The claims for punitive damages, and the statutes of the State of South Carolina purporting to authorize imposition of those damages, violate this Defendant's rights under the United States

ELECTRONICALLY FILED - 2024 May 17 2:39 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

Constitution and South Carolina Constitution. Furthermore, those damages are limited in amount under South Carolina law.

### NINTH DEFENSE

Any alleged errors by this Defendant (which are expressly denied), were *bona fide* errors of professional judgment for which this Defendant cannot be liable.

### TENTH DEFENSE

This Defendant exercised reasonable judgment and followed reasonable courses of care and/or treatment if and when required.

### ELEVENTH DEFENSE

There is no causal connection between any alleged act or omission on the part of this Defendant and the injuries and damages claimed by Plaintiff.

### TWELFTH DEFENSE

To the extent any or all Defendants may be considered state agents and to the extent that they are sued in any official capacity, they are immune from suit under the doctrine of sovereign immunity and under the Eleventh Amendment of the United States Constitution.

### THIRTEENTH DEFENSE

This Defendant did not perform any acts or fail to perform acts in bad faith, in a malicious manner, or with corrupt motives. This Defendant acted in good faith and is immune from suit.

### FOURTEENTH DEFENSE

This Defendant shows that at all times alleged in the Second Amended Complaint, this Defendant acted reasonably under the circumstances, in good faith, had no knowledge that any of the alleged acts or omissions were illegal and/or unconstitutional, nor in violation of Plaintiff's decedent's clearly established federal, statutory, or constitutional rights at the time they were allegedly committed. Therefore, this Defendant is immune from liability under the doctrine of qualified immunity.

ELECTRONICALLY FILED - 2024 May 17 2:39 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

## FIFTEENTH DEFENSE

The claims for punitive damages, and the statutes of the State of South Carolina purporting to authorize imposition of those damages, violate this Defendant's rights under the United States Constitution and South Carolina Constitution, as well as the holding of <u>State Farm Mutual Automobile Insurance Company v. Campbell</u>, 538 U.S. 408 (2003), and its progeny.

## SIXTEENTH DEFENSE

To the extent shown by the evidence and law, this Defendant acted as a governmental official performing discretionary functions and actions which could reasonably have been thought consistent with the rights of Plaintiff's decedent, for which he is alleged to have violated. Therefore, he is entitled to immunity as a matter of law.

## SEVENTEENTH DEFENSE

The acts of a person other than this Defendant may be the sole and proximate cause of the injuries complained of in the Second Amended Complaint. If this Defendant is deemed responsible to the Plaintiff for any damages or injuries, which is strictly denied, then this Defendant is entitled to contribution from all joint tortfeasors pursuant to the South Carolina Contribution Among Joint Tortfeasors Act, South Carolina Code of Laws § 15-38-10 <u>et</u>, <u>Seq</u>. (Cum. Supp. 1989). The acts or omissions of a person, persons, or entity other than this Defendant is at least the partial, and may be the sole and proximate, cause of the incident complained of in the Second Amended Complaint. This Defendant's negligence, if any, was less than fifty percent of the total fault for the Plaintiff's alleged damages as compared with the total fault of all the Defendants, named or un-named. As such, this Defendant should only be responsible for that percentage of the Plaintiff's alleged damages, to be determined by the jury or trier of fact.

ELECTRONICALLY FILED - 2024 May 17 2:39 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

## EIGHTEENTH DEFENSE

The acts of a person other than this Defendant are the sole and proximate cause of the incident complained of in the Second Amended Complaint.

## NINETEENTH DEFENSE

In the event that Plaintiff is awarded punitive or exemplary damages and to the extent that such an award is not in violation of this Defendant's rights under the United States Constitution and the South Carolina Constitution, an award of punitive or exemplary damages is subject to the limitations as set forth in South Carolina Code Ann. § 15-32-530(A).

## TWENTIETH DEFENSE

The acts of a third party wholly unrelated to this Defendant were the sole cause of Plaintiff's decedent's injuries and these acts were not foreseeable.  Therefore, this matter should be dismissed as a matter of law.

## TWENTY-FIRST DEFENSE

Any claims for non-economic damages are limited in amount under South Carolina law. This Defendant invokes all applicable statutory caps on damages Plaintiff may claim.

## TWENTY-SECOND DEFENSE

If this Defendant was negligent in the manner described in the Second Amended Complaint, which negligence is specifically denied, the injuries allegedly suffered by Plaintiff's decedent and damages claimed by Plaintiff were the direct and proximate result of the intervening and superseding negligence of third parties, for whose conduct this Defendant bears no responsibility. Therefore, Plaintiff is barred from recovery against this Defendant.

## TWENTY-THIRD DEFENSE

The medical condition and illness of Plaintiff's decedent was the result of disease processes and/or medical conditions not negligently caused, contributed to, aggravated or exacerbated by any act or omission on the part of this Defendant.

ELECTRONICALLY FILED - 2024 May 17 2:39 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

**TWENTY-FOURTH DEFENSE**

To the extent the evidence shows Plaintiff's decedent did not follow the reasonable medical instructions of his respective healthcare providers, then some or all of Plaintiff's claims are barred in whole or in part by the doctrines of comparative negligence and failure to mitigate damages. Further, to the extent shown by the evidence, that negligence may be the sole and proximate cause of the alleged injuries suffered.

**TWENTY-FIFTH DEFENSE**

Venue of this case may be appropriate in South Carolina District Court, Charleston Division due to federal question jurisdiction and supplemental jurisdiction.

**TWENTY-SIXTH DEFENSE**

This Defendant responds to the numbered allegations of the Second Amended Complaint as follows:

1.     This Defendant lacks sufficient information to form a belief as to the truthfulness of the allegations of Paragraphs 1, 2 and 3 of the Second Amended Complaint. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

2.     In response to Paragraph 4, this Defendant lacks sufficient knowledge as to Wellpath, LLC's organization, principal place of business or registered agent and, therefore, is unable to respond to the same. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

3.     In response to Paragraph 5, this Defendant admits Wellpath employed him as a medical director and that he is a resident of South Carolina. The remainder of Paragraph 5 contains legal conclusions to which no response is required. In as much as a response is required by this

ELECTRONICALLY FILED - 2024 May 17 2:39 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

4.      In response to Paragraph 6, this Defendant lacks sufficient knowledge as to Dr. Patel's employment at the Al Cannon Detention Center and as to whether or not Dr. Patel is a South Carolina resident and, therefore, is unable to respond to the same. The remainder of Paragraph 6 contains legal conclusions to which no response is required. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

5.      This Defendant lacks sufficient information to form a belief as to the truthfulness of the allegations of Paragraph 7 of the Second Amended Complaint. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

6.      In response to Paragraph 8, this Defendant lacks sufficient knowledge as to the employment of Kathleen Potter and as to whether or not Kathleen Potter is a resident of South Carolina and, therefore, is unable to respond the same. The remainder of Paragraph 8 contains legal conclusions to which no response is required. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

7.      In response to Paragraph 9, this Defendant lacks sufficient knowledge as to the employment of Roxanne Serohi and as to whether or not Roxanne Serohi is a resident of South Carolina and, therefore, is unable to respond the same. The remainder of Paragraph 9 contains legal conclusions to which no response is required. In as much as a response is required by this

ELECTRONICALLY FILED - 2024 May 17 2:39 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

8.    In response to Paragraph 10, this Defendant lacks sufficient knowledge as to Tamisha Johns' employment and as to whether or not Tamisha Johns is a South Carolina resident and, therefore, is unable to respond the same. The remainder of Paragraph 10 contains legal conclusions to which no response is required. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

9.    In response to Paragraph 11, this Defendant lacks sufficient knowledge as to Cathy Mazyck's employment and as to whether or not Cathy Mazyck is a resident of South Carolina and, therefore, is unable to respond the same. The remainder of Paragraph 11 contains legal conclusions to which no response is required. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

10.    This Defendant lacks sufficient information to form a belief as to the truthfulness of the allegations of Paragraphs 12, 13, 14, 15 and 16 of the Second Amended Complaint. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

11.    The allegations contained in Paragraphs 17, 18 and 19 of the Second Amended Complaint are legal conclusions and no response is required.  Answering further as to Paragraph 18, this Defendant admits that it and Plaintiff participated in the mandatory South Carolina pre-suit requirements for medical malpractice actions, but denies the contents, allegations and conclusions of Dr. O'Bryan's affidavit attached as Exhibit 1 and Dr. Husted's affidavit attached as Exhibit 2, especially the allegations of negligence. In as much as any further response is required

ELECTRONICALLY FILED - 2024 May 17 2:39 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

by this Defendant as to Paragraphs 17, 18 and 19, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages or failed to comply with the standard of care.

12.     In responding to Paragraph 20, this Defendant denies that Plaintiff's decedent was in his custody, but admits that certain aspects of Plaintiff's decedent's medical care was under his purview while Mr. Brown was incarcerated by the Charleston County Sheriff's Office at the Al Cannon Detention Center. All other allegations of Paragraph 20 are denied as stated.

13.     This Defendant lacks sufficient information to form a belief as to the truthfulness of the allegations of Paragraphs 21 and 22 of the Second Amended Complaint. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

14.     The allegations contained in Paragraph 23 of the Second Amended Complaint are legal conclusions and no response is required.  In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

15.     In responding to Paragraph 24 of the Second Amended Complaint, this Defendant lacks sufficient knowledge as to Wellpath, LLC's contract to operate certain aspects of the provision of medical care at the Al Cannon Detention Center located at 3841 Leeds Avenue, North Charleston and, therefore, is unable to respond to the same. This Defendant lacks sufficient information to form a belief as to the truthfulness of the remaining allegations of Paragraph 24 of the Second Amended Complaint. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

ELECTRONICALLY FILED - 2024 May 17 2:39 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

16.     This Defendant lacks sufficient information to form a belief as to the truthfulness of the allegations of Paragraph 25 of the Second Amended Complaint. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

17.     This Defendant lacks sufficient information to form a belief as to the truthfulness of the allegations of Paragraph 26 of the Second Amended Complaint. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

18.     In response to Paragraph 27, this Defendant lacks sufficient information to respond as to what "became apparent" to Co-Defendants, but this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care. This Defendant also denies any allegations or implications contained within Paragraph 27 that this Defendant was not providing appropriate medical care to inmates at the Charleston County Detention Center. All other allegations of Paragraph 27 inconsistent herewith are denied.

19.     In response to Paragraph 28, this Defendant denies the services this Defendant provided were "woefully inadequate" but admits that Sheriff Graziano, who is not a medical professional and lacks medical training, is quoted in the news article identified in Footnote 2.

20.     In response to Paragraphs 29 and 30 of the Second Amended Complaint, this Defendant admits that this Defendant obtained a security clearance and was the Medical Director at the CCDC during portions of Mr. Brown's incarceration, and that the quoted information in Paragraph 29 is contained on the SCLLR's website. This Defendant denies that he was incompetent, unfit, impaired, dangerous, engaged in excessive use or abuse of any drugs or

ELECTRONICALLY FILED - 2024 May 17 2:39 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

alcohol, or otherwise unfit to practice medicine when hired by Wellpath, LLC and as evidenced by the SCLLR's reinstatement of his medical license. This Defendant also denies that Wellpath, LLC did not submit reports to the Board of Medical Examiners. By way of further response, this Defendant's arrest charges were legally expunged prior to being hired by Wellpath, LLC.

21.     In response to the allegations of Paragraphs 31, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46,47,48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69 and 70 of the Second Amended Complaint, this Defendant shows that the medical records, policies, jail records, court filings, video footage, and the testimony of the healthcare providers and detention center staff involved in Mr. Brown's care and incarceration will more accurately set forth the circumstances and events surrounding his incarceration and hospitalizations, including the impacts of the Court Order to which Wellpath was not a party, nor ever served. Therefore, the allegations of Paragraphs 31, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46,47,48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69 and 70 are denied at this time.

22.     This Defendant denies Paragraphs 32, 71, 72, 73 and 74 of the Second Amended Complaint.

23.     In response to Paragraph 75, this Defendant admits that Charleston County Coroner Bobbi Jo O'Neal released a report stating the items delineated in Paragraph 75, but denies the accuracy of the report, including the cause and manner of death.

24.     In response to the allegations of Paragraph 76, this Defendant incorporates as if fully set forth herein, his responses to Paragraphs 1 – 75.

25.     The allegations contained in Paragraphs 77 and 78, including their subparts, are not directed at this Defendant and therefore no response is required. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent

ELECTRONICALLY FILED - 2024 May 17 2:39 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

26.      In response to the allegations of Paragraph 79, this Defendant incorporates as if fully set forth herein, his responses to Paragraphs 1 – 78.

27.      The allegations contained in Paragraphs 80, 81, 82 and 83, including their subparts, are not directed at this Defendant and therefore no response is required. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

28.      In response to the allegations of Paragraph 84, this Defendant incorporates as if fully set forth herein, his responses to Paragraphs 1 – 83.

29.      This Defendant denies the allegations of Paragraphs 85 and 86, including all subparts.

30.      In response to the allegations of Paragraph 87, this Defendant incorporates as if fully set forth herein its responses to Paragraphs 1 – 86.

31.      The allegations contained in Paragraph 88 of the Second Amended Complaint are legal conclusions and no response is required.  In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

32.      This Defendant denies the allegations of Paragraphs 89, 90 and 91, including all subparts.

33.      In response to the allegations of Paragraph 92, this Defendant incorporates as if fully set forth herein his responses to Paragraphs 1 – 91.

34.      The allegations contained in Paragraphs 93, 94, 95, 96, 97, 98, 99 and 100, including their subparts, are not directed at this Defendant and therefore no response is required.

ELECTRONICALLY FILED - 2024 May 17 2:39 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

35.       In response to the allegations of Paragraph 101, this Defendant incorporates as if fully set forth herein his responses to Paragraphs 1 – 100.

36.       The allegations contained in Paragraphs 102, 103, 104, 105, 106, 107, 108 and 109, including their subparts, are not directed at this Defendant and therefore no response is required. In as much as a response is required by this Defendant, this Defendant denies all allegations that this Defendant was negligent in any way, was the proximate cause of Plaintiff's alleged damages, or failed to comply with the standard of care.

37.       This Defendant denies the "WHEREFORE" Paragraph of Plaintiff's Second Amended Complaint, including all its subparts.

WHEREFORE, having fully answered the Second Amended Complaint, this Defendant demands to be dismissed with costs taxed against the Plaintiff.

This 17th day of May 2024.

Respectfully submitted,

COPELAND, STAIR, VALZ & LOVELL, LLP

40 Calhoun Street, Suite 400
Charleston, SC 29401
*kthompson@csvl.law*
*npost@csvl.law*
Ph: (843) 727-0307

By: *s/Kristen K. Thompson*
KRISTEN K. THOMPSON
State Bar No.: 100659
NELSON POST
State Bar No.: 106080
***Attorneys for Defendant Wellpath, LLC***

ELECTRONICALLY FILED - 2024 May 23 5:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) IN THE COURT OF COMMON PLEAS |
| | ) |
| COUNTY OF CHARLESTON | ) CIVIL ACTION 2023-CP-10-01166 |

|  |  |
|---|---|
| NEKEYA JONES, as Special Administrator of the Estate of D'ANGELO D. BROWN, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| CHARLESTON COUNTY, CHARLESTON COUNTY SHERIFF'S OFFICE, WELLPATH LLC, PAUL DRAGO, MD, PRIYA PATEL, MD, WILLIAM MALCOLM, KATHLEEN H. POTTER, NP, ROXANNE SEROHI, NP, TAMISHA JOHNS, CATHY MAZYCK, JAMAL M. SINGLETON, SHANNELL T. MCKELLAR, LAKEESHA M. PALMER, TRENT M. EVANS, and MERETE ENBUSK, | ) ) ) ) **ACCEPTANCE OF** ) **SERVICE** ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

I hereby certify acknowledge receipt of and accept service of the above captioned

**SECOND AMENDED SUMMONS & COMPLAINT** on behalf of the Defendants **CATHY**

**MAZYCK, KATHLEEN H. POTTER, NP and ROXANNE SEROHI, NP** on this 23rd day of

May, 2024.

Brittany T. Bihun (SC 102496)
GORDON REES SCULLY MANSUKHANI LLP
677 King Street, Suite 450
Charleston, SC 29403
Telephone: (843) 278-5900
E-mail: bbihun@grsm.com

ELECTRONICALLY FILED - 2024 May 23 5:20 PM - CHARLESTON - COMMON PLEAS - CASE#2023CP1001166

| | |
|---|---|
| STATE OF SOUTH CAROLINA | ) IN THE COURT OF COMMON PLEAS |
| | ) |
| COUNTY OF CHARLESTON | ) CIVIL ACTION 2023-CP-10-01166 |

| | |
|---|---|
| NEKEYA JONES, as Special Administrator of the Estate of D'ANGELO D. BROWN, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) |
| CHARLESTON COUNTY, CHARLESTON COUNTY SHERIFF'S OFFICE, WELLPATH LLC, PAUL DRAGO, MD, PRIYA PATEL, MD, WILLIAM MALCOLM, KATHLEEN H. POTTER, NP, ROXANNE SEROHI, NP, TAMISHA JOHNS, CATHY MAZYCK, JAMAL M. SINGLETON, SHANNELL T. MCKELLAR, LAKEESHA M. PALMER, TRENT M. EVANS, and MERETE ENBUSK, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**ACCEPTANCE OF SERVICE**

I hereby certify acknowledge receipt of and accept service of the above captioned **SECOND AMENDED SUMMONS & COMPLAINT** on behalf of the Defendants **CATHY MAZYCK, KATHLEEN H. POTTER, NP and ROXANNE SEROHI, NP** on this 23rd day of May, 2024.

Brittany T. Bihun (SC 102496)
GORDON REES SCULLY MANSUKHANI LLP
677 King Street, Suite 450
Charleston, SC 29403
Telephone: (843) 278-5900
E-mail: bbihun@grsm.com